# EXHIBIT A

| Approved, SCAO | | Original - Court<br>1st copy - Defendant | | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>37th    JUDICIAL CIRCUIT<br>Calhoun    COUNTY | SUMMONS | CASE NUMBER<br>2026 -           - AA |
|---|---|---|

**Court address**  
161 East Michigan Avenue Battle Creek, MI 49014

**Court telephone number**  
269-969-6518

| Plaintiff's name, address, and telephone number<br>AVENUE A HOLDINGS, INC.<br>c/o BODMAN PLC<br>Floyd E. Gates, Jr. (P54234); Debani T. Gordon Lehman (P83909)<br>99 Monroe Ave. NW, Suite 506, Grand Rapids, MI 49503<br>(616) 205-1960 | v | Defendant's name, address, and telephone number<br>CITY OF SPRINGFIELD,<br>a Michigan municipal corporation<br><br>Susan L. Anderson Municipal Building<br>601 Avenue A<br>Springfield, MI 49037<br>Phone: (269) 965-2354 |
|---|---|---|
| Plaintiff's attorney bar number, address, and telephone number<br>BODMAN PLC<br>Floyd E. Gates, Jr. (P54234); Debani T. Gordon Lehman (P83909)<br>99 Monroe Ave. NW, Suite 506, Grand Rapids, MI 49503<br>(616) 205-1960 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ _____ Court, where

it was given case number _____ and assigned to Judge _____ _____

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| | | |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (3/23)  **SUMMONS**  
SRA

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

Summons   (3/23)                                      Case Number 2026 -_____ - AA

## PROOF OF SERVICE

**TO PROCESS SERVER:** You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served    ☐ personally    ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)    a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| **Place or address of service** | |
| **Attachments (if any)** | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee S | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee S | **TOTAL FEE** $ | Name (type or print) |

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and complaint, together with

Attachments (if any) _____ on _____
                                              Date and time

_____ on behalf of _____
Signature

Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF CALHOUN**

AVENUE A HOLDINGS, INC.,                    Case No. 2026-            -AA

  Plaintiff-Appellant,                      Hon.

v.                                          **CLAIM OF APPEAL AND**
                                            **COMPLAINT**
CITY OF SPRINGFIELD,
a Michigan municipal corporation,

  Defendant-Appellee.

---

BODMAN PLC
By: Floyd E. Gates, Jr. (P54234)
    Debani T. Gordon Lehman (P83909)
99 Monroe Ave. NW, Suite 506
Grand Rapids, MI 49503
(616) 205-1960
fgates@bodmanlaw.com
dgordon@bodmanlaw.com
*Attorneys for Plaintiff-Appellant*

---

**There is no other civil action between these parties arising out of the same transactions as alleged in this complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.**

## CLAIM OF APPEAL AND COMPLAINT

Plaintiff Avenue A Holdings, Inc. ("Plaintiff"), states as follows for its Claim of Appeal and Complaint:

## PARTIES

1.     Plaintiff-Appellant Avenue A Holdings, Inc. is a Michigan corporation and owner of the Property located at 4100 W. Dickman Road, Springfield, Michigan.

2.     Defendant-Appellee City of Springfield is a Michigan municipal corporation organized and existing under the laws of the State of Michigan whose address is 601 Avenue A Springfield, MI 49037. The City's Council was established pursuant to applicable state law, and has such duties and responsibilities as are set for in the City's zoning and other ordinances including authority to grant re-zoning requests.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to MCL 600.605.

4.     This action constitutes a claim of appeal and challenge to a municipal zoning decision pursuant to MCL 125.3606, Const 1963, art 6, § 28, MCR 7.122, and MCR 7.123.

5.     This Court also has jurisdiction over Plaintiff's constitutional and declaratory judgment claims pursuant to MCL 600.601, MCL 600.605, and MCR 2.605.

6.     Under applicable Michigan law, Plaintiff may join with its appeal any other original claims it may have arising out of the City's decision at issue here. *See, e.g., Choe v Charter Twp of Flint,* 240 Mich App 662, 668, n 2 (2000); *See also* MCR 7.122(A)(2). Thus, jurisdiction of this Court also exists in that this action arises under the Constitution and laws of the State of Michigan, and the matter in controversy exceeds the sum or value of $25,000, exclusive of interest and costs.

1

7.     Venue is proper in Calhoun County because the Property is located in Calhoun County, the City of Springfield is in Calhoun County, and the challenged actions occurred within Calhoun County.

## COMMON ALLEGATIONS

### A. The Property

8.     Plaintiff owns approximately 9.92 acres located at 4100 W. Dickman Road in Springfield, Michigan.

9.     The Property is currently zoned B-2 General Commercial ("B-2").

10.     The Property is vacant and contains no structures.

11.     The Property has remained vacant and underutilized for approximately ten years.

12.     Despite active marketing efforts for the last ten years, the Property failed to attract viable development opportunities under its current zoning classification.

13.     Plaintiff received its first offer to purchase the Property in 2026.

14.     The proposed purchase was expressly contingent upon rezoning the Property to Industrial/Research/Technology ("IRT").

15.     The proposed development represented the first realistic and viable opportunity to return the Property to productive use.

### B. The Rezoning Application

16.     Plaintiff submitted an application requesting rezoning of the Property from B-2 to IRT. **Exhibit 1 - Re-Zoning Application and Supplemental Information.**

17.     The proposed purchaser intends to develop the Property with high-end enclosed storage and warehousing facilities designed for recreational vehicles, boats, and similar large assets:

2





**Exhibit 2 - Proposed Development**

18.     The proposed use differs substantially from traditional self-storage facilities.

19.     The proposed development is designed to serve a specialized market segment not otherwise served within the immediate area.

4913-3205-5734_5

20.     The development would return a long-vacant property to productive use.

21.     The development would generate investment, economic activity, tax revenue, and ancillary benefits for surrounding businesses.

C. **The City's Review**

32.     The City's Zoning Administrator prepared a formal report regarding the rezoning request. **Exhibit 3 - Re-Zoning Report Prepared by Zoning Administrator.**

33.     The report concluded that the Property's future land use designation is Industrial-Commercial. *Id.*

34.     The report concluded that the requested rezoning is consistent with the City's Future Land Use Map. *Id.*

35.     The report concluded that the Property is physically suitable for uses permitted within the IRT district. *Id.*

36.     The report concluded that surrounding land uses are compatible with the proposed district. *Id.*

37.     The report concluded that utilities and infrastructure are sufficient. *Id.*

38.     The report concluded that the requested rezoning would not create spot zoning. *Id.*

39.     The report concluded that IRT is the most appropriate zoning district for the proposed use. *Id.*

40.     Of the twelve applicable rezoning criteria, the report concluded that eleven supported approval. *Id.*

4

## D. **Plaintiff's Efforts to Address City Concerns**

41.    During the City's review of the rezoning application, the only concern identified by the City Manager and Zoning Administrator related to perceived saturation of storage facilities within the area. *Id.*

42.    Despite that concern, the City Manager and Zoning Administrator nevertheless recommended approval of the rezoning application. *Id.*

43.    In advance of the May 18, 2026 City Council meeting, Plaintiff undertook additional efforts to address the concern regarding market saturation and to provide City Council with information relevant to the rezoning request.

44.    On May 13, 2026, Plaintiff's counsel submitted a detailed letter to City Council and City staff regarding the rezoning request. **Exhibit 4 - May 13, 2026 Letter**.

45.    The May 13, 2026 letter explained that the proposed development differs substantially from traditional self-storage facilities operating within the area. *Id.*

46.    The letter explained that the proposed development is intended to serve a specialized market segment seeking enclosed storage for large recreational assets, including recreational vehicles, boats, and similar equipment, and functions more as a specialty warehousing facility than a conventional self-storage operation. *Id.*

47.    The letter further explained that the proposed development would serve a distinct and currently underserved market segment, attract users from outside the immediate area, and generate additional economic activity benefiting local businesses. *Id.*

48.    In addition to the written submission, representatives of Plaintiff attempted to communicate directly with members of City Council prior to the May 18, 2026 meeting in order to answer questions regarding the application. **Exhibit 5 - Emails to City Council**.

4913-3205-5734_5

49.    The majority of City Council members either declined to discuss the application or did not respond to Plaintiff's outreach.

### E.  City Council's May 18 2026 Denial

50.    The rezoning application was presented to the City Council on May 18, 2026.

51.    During the meeting, City Council voted to deny the application. **Exhibit 6 - May 18, 2026 City Council Minutes.**

52.    City Council did not identify any rezoning criteria that were allegedly unmet. *Id.*

53.    City Council did not explain the basis for its denial. *Id.*

54.    City Council did not make findings of fact supporting denial. *Id.*

55.    City Council did not explain why it was rejecting the recommendation of its own planning staff. *Id.*

56.    The minutes of the meeting reflect only the motion and vote denying the application and contain no findings, reasoning, or analysis supporting the denial. *Id.*

57.    The contemporaneous record contains no findings supporting denial. *Id.*

58.    To the contrary, the record before City Council consisted primarily of the City Manager's recommendation that the application be approved.

59.    During the May 18, 2026 City Council meeting, members of the public were provided an opportunity to comment regarding the rezoning request. *Id.*; *See also* **Exhibit 7 - May 18, 2026 Meeting Transcript.**

60.    Among those who addressed City Council was a neighboring business owner who operates self-storage facilities in close proximity to the Property. *Id.*

6

61.    During his comments, the neighboring business owner explained that, after obtaining a better understanding of the nature of the proposed development, he no longer believed the project would negatively affect his existing self-storage operations. *Id.*

62.    The neighboring business owner acknowledged that the proposed development differed from traditional self-storage facilities and served a different market segment than the facilities he operated. *Id.*

63.    During the May 18, 2026 meeting, Plaintiff's counsel informed City Council that he had contacted existing storage facility operators within the City of Springfield regarding the services they provide and the nature of the storage proposed for the Property. *Id.*

64.    Plaintiff's counsel further explained that existing storage operators contacted within the City did not provide the type of specialized, secured storage contemplated by the proposed development. *Id.*

65.    As a result, the evidence presented to City Council at the May 18, 2026 meeting further supported approval of the rezoning request.

66.    Additionally, community members contacted the City Council before the May 18, 2026 meeting to express support for the rezoning application and to explain that the proposed facility would serve an unmet need within the community. **Exhibit 8 - May 12, 2026 Email.**

67.    Despite receiving additional information that alleviated the sole concern identified by City staff, City Council nevertheless voted to deny the application without making findings of fact or identifying any evidentiary basis for denial. *Id.*

### F.    The City's After-the-Fact Findings

68.    Following the denial, City staff and the City Attorney prepared a written resolution purporting to justify the May 18, 2026 denial. **Exhibit 9 - Post Hoc Resolution of Denial.**

7

4913-3205-5734_5

69.     The resolution identified numerous alleged deficiencies that had not been discussed during the May 18, 2026 City Council meeting. *Id*; *See also* Ex. 6 & Ex. 7.

70.     The June 1, 2026 Resolution asserted, among other things, that insufficient evidence existed demonstrating efforts to market the Property under its existing zoning classification. Ex. 9.

71.     That assertion is contradicted by the record before City Council.

72.     During the May 18, 2026 public hearing, Stephanie Wiltgen of Callander Commercial addressed City Council and explained that Callander Commercial had actively marketed the Property for approximately nine years.

73.     Ms. Wiltgen further explained that, despite extensive marketing efforts, Plaintiff had received no offers to purchase the Property for development under its existing zoning classification and that all serious inquiries regarding the Property involved prospective purchasers seeking rezoning.

74.     Ms. Wiltgen also informed City Council that the proposed purchaser represented the most viable development opportunity presented for the Property during the nearly decade-long marketing period.

75.     Prior to the May 18, 2026 meeting, a representative of Plaintiff met with City officials regarding the Property. During those discussions, the City Manager acknowledged Callander Commercial's prominence and reputation as a leading commercial real estate brokerage serving the Springfield area.

76.     Plaintiff further utilized other marketing efforts before engaging Callander Commercial, including efforts undertaken through the City of Springfield's economic

8

4913-3205-5734_5

development resources. Those efforts likewise failed to generate a viable development opportunity for the Property.

77.    The June 1, 2026 Resolution's suggestion that no independent evidence of marketing efforts existed is therefore contrary to the evidence presented to City Council and further demonstrates the post hoc and unsupported nature of the findings adopted after the denial vote.

78.    Nonetheless, on June 1, 2026, City Council adopted those after-the-fact findings. **Exhibit 10 - June 1, 2026 Meeting Transcript; Exhibit 11 - June 1, 2026 Meeting Agenda; Exhibit 12 - June 1, 2026 Meeting Minutes.**[1]

79.    The June 1, 2026 findings materially expand upon and contradict the conclusions reached by the City's own zoning administrator. Ex. 3 & Ex. 9.

80.    The June 1 findings constitute a post hoc attempt to justify an arbitrary, capricious, and unlawful decision already made.

81.    The findings were not adopted contemporaneously with the decision made by council.

82.    The findings do not constitute competent evidence supporting the May 18, 2026 denial.

## G. City Council Members Recognized the Application Could Be Approved but Sought Alternatives to Prevent the Project

83.    Prior to the May 18, 2026 City Council meeting, members of City Council engaged in discussions concerning Plaintiff's rezoning application. **Exhibit 13 - City Council Messages.**

84.    Those communications reveal that Council members were not focused on whether the application satisfied the City's adopted rezoning criteria.

---

[1] Upon information and belief, as of the filing of this Complaint, signed minutes from the June 1, 2026 City Council meeting have not been made publicly available.

9

85.     The communications demonstrate that Council members believed the rezoning request itself was supportable under the City's planning framework.

86.     One Council member expressly stated, "So I think if they had just left off what they were planning on doing, it would have gotten passed." *Id.*

87.     That statement reflects an understanding that the application itself satisfied the applicable standards and that the obstacle to approval was not the rezoning request, but rather Council members' opposition to the particular user or use associated with the Property.

88.     Such reasoning is inconsistent with the City's obligation to evaluate rezoning requests under its adopted criteria and instead reflects a predetermined effort to prevent a particular project from proceeding regardless of whether the application satisfied the applicable standards.

89.     The communications further reveal that Council members discussed whether the City could approve the rezoning request while simultaneously adopting a moratorium designed to prevent Plaintiff's proposed development from moving forward. *Id.*

90.     One Council member specifically stated that they had asked whether the City could "pass the zoning request but put the moratorium in place before they could get their project approved." *Id.*

91.     That discussion demonstrates that Council members were actively exploring methods to prevent Plaintiff's project from proceeding even if the rezoning request itself warranted approval.

92.     The discussion of a moratorium is particularly significant because a moratorium would only be necessary if Council members believed the application could otherwise be approved under existing law.

10

4913-3205-5734_5

93. The communications also reveal that Council members viewed opposition from certain neighboring business owners as motivated by personal animus rather than legitimate land-use concerns.

94. One Council member stated that he did not wish to see the application denied "out of spite," while another Council member agreed and described those opponents as "spiteful people." *Id.*

95. Those statements reflect an awareness that at least some opposition to the application was not based upon legitimate planning considerations, public health, safety, welfare, compatibility concerns, or any of the City's adopted rezoning criteria.

96. Despite recognizing these issues, City Council nevertheless denied the application.

97. These contemporaneous communications stand in stark contrast to the extensive findings later adopted by City Council on June 1, 2026.

98. Notably absent from the communications is any discussion suggesting that Plaintiff failed the numerous criteria later identified in the June 1, 2026 Resolution.

99. Instead, the communications reveal concern with the identity of the proposed use, discussion regarding ways to prevent the project from proceeding despite its apparent compliance with applicable standards, and acknowledgement that the application likely would have been approved had Plaintiff not disclosed its intended use.

100. These communications provide further evidence that the reasons later advanced to justify denial were not the actual reasons motivating City Council's decision and support Plaintiff's contention that the denial was arbitrary, pretextual, and not based upon the standards governing rezoning decisions.

11

4913-3205-5734_5

## II. Plaintiff Was Never Given Notice of the Grounds Ultimately Relied Upon to Deny the Application.

101. The criteria ultimately relied upon in the June 1, 2026 resolution were never identified as deficient during the review process, were never disclosed to Plaintiff before the May 18, 2026 vote, and were never discussed, deliberated upon, or evaluated during the public hearing.

102. Plaintiff was therefore never provided notice that those criteria were allegedly at issue and was deprived of any meaningful opportunity to address, rebut, or present evidence concerning the grounds ultimately relied upon to deny the application.

103. Moreover, Plaintiff was never provided notice that City Council would consider or vote upon a resolution supplying the purported factual and legal justification for a decision that had already been made. As a result, Plaintiff was denied any opportunity to address the newly asserted grounds before City Council formally adopted them on June 1, 2026.

## I. The Pending Sale and Development Opportunity Jeopardized by Defendant's Actions.

104. As part of the rezoning application process, Plaintiff secured a bona fide purchaser for the Property.

105. The purchaser agreed to acquire the Property subject to approval of the requested rezoning.

106. The transaction represented the first viable development opportunity for the Property after years of unsuccessful marketing efforts.

107. Defendant's arbitrary, capricious, and unlawful denial of the rezoning application has jeopardized the sale of the Property.

108. In the event the transaction is terminated due to Defendant's arbitrary, capricious, and unlawful denial of the rezoning application, Plaintiff will suffer substantial damages, including

12

4913-3205-5734_5

but not limited to lost sale proceeds, carrying costs, lost development opportunities, additional marketing expenses, professional fees, and other consequential damages.

## CLAIM OF APPEAL

109. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

110. Pursuant to MCL 125.3202, the Springfield City Council possesses authority to determine and amend the City's zoning ordinance.

111. Plaintiff Avenue A Holdings, Inc. is aggrieved by and appeals the City Council's May 18, 2026 decision denying Plaintiff's application to rezone the Property located at 4100 W. Dickman Road, Springfield, Michigan, Parcel No. 54-005-070-60, from B-2 to IRT.

112. At the conclusion of the May 18, 2026 public hearing, City Council voted to deny the rezoning application. The May 18, 2026 vote constituted a final decision concerning Plaintiff's application. The May 18, 2026 meeting minutes are attached as Exhibit 6.

113. Following the May 18, 2026 denial, City staff and the City Attorney prepared a proposed resolution purporting to identify findings and reasons supporting the denial. On June 1, 2026, City Council adopted the proposed resolution. The June 1, 2026 meeting transcript, minutes, and resolution are attached as Exhibit 9, Exhibit 10 and Exhibit 12.

114. Plaintiff owns the Property that is the subject of the rezoning application and is directly affected by the City's decision. Plaintiff is therefore an aggrieved party with standing to seek review of the denial pursuant to MCL 125.3605, MCL 125.3606, MCL 125.3607, MCR 7.122, and/or MCR 7.123.

115. Plaintiff's claim of appeal is timely under MCL 125.3606(3)(b), MCR 7.122, and/or MCR 7.123.

116. Venue is proper in Calhoun County because the Property is located in Calhoun County, the challenged actions occurred in Calhoun County, and the City Council was acting on

13

behalf of the City of Springfield in rendering the decision.  The administrative record established that the Property's Future Land Use designation is Industrial-Commercial and that the requested IRT zoning classification is consistent with the City's Future Land Use Map and Master Plan. After evaluating the application under the City's rezoning criteria, the City Manager and Zoning Administrator recommended that the application be approved.

117.    The sole criterion identified as potentially weighing against approval involved concerns regarding the alleged saturation of storage facilities within the area.

118.    Prior to the May 18, 2026 hearing, Plaintiff submitted additional information addressing that concern, including a detailed written submission dated May 13, 2026. Plaintiff explained that the proposed development consists of specialized, high-end, secured storage facilities designed for recreational vehicles, boats, and similar large recreational assets and is materially different from traditional self-storage facilities. Plaintiff further advised City Council that existing storage facilities within the City do not provide the type of specialized storage contemplated by the proposed development and that the project would serve a distinct and presently underserved market segment.

119.    During the May 18, 2026 hearing, Plaintiff's counsel further explained that he had contacted storage facility operators within the City and confirmed that they did not offer the type of specialized, high-end storage proposed for the Property.

120.    In addition, a neighboring storage facility owner addressed City Council and acknowledged that, after learning more about the proposed development, he no longer believed the project would negatively impact his existing operations because the proposed development served a different market segment.

14

4913-3205-5734_5

121.    Accordingly, the evidence presented to City Council substantially alleviated the only concern identified by City staff.

122.    Despite the recommendation for approval from its own planning staff and despite the evidence presented during the public hearing, City Council denied the application without making findings of fact on the record, identifying which rezoning criteria Plaintiff allegedly failed to satisfy, explaining the evidentiary basis for its decision, or explaining why it rejected the recommendation of its own City Manager and Zoning Administrator.

123.    The findings later adopted on June 1, 2026 were not adopted contemporaneously with the May 18, 2026 vote, materially differ from and contradict the conclusions reached by City staff during the review process, and constitute post hoc rationalizations that cannot supply competent, material, and substantial evidence supporting the denial.

124.    In essence, the City denied first and supplied reasons later.

125.    The record before City Council contained no evidence supporting the conclusion that Plaintiff failed the criteria later identified in the June 1, 2026 resolution. Rather, the only evidence presented concerning those criteria supported approval of the application.

126.    The City's denial of the rezoning application was arbitrary, capricious, and an abuse of discretion, was not supported by competent, material, and substantial evidence on the whole record, was contrary to the evidence presented during the review process and public hearing, was affected by error of law and unlawful procedure, did not represent reasonable exercise of discretion, and exceeded the range of principled outcomes available based upon the record before City Council.

127.    Plaintiff has suffered and continues to suffer damages and prejudice as a result of the City's unlawful denial of the rezoning application.

15

128.    No bond on appeal is required.

129.    Proof that the claim of appeal and all other required documents were served on all parties entitled to notice of the appeal is attached as **Exhibit 14.**

130.    Plaintiff has sent a written request to the City Clerk to provide a copy of the certified record to the Court. **Exhibit 15 - Letter Requesting Certified Record.**

WHEREFORE, Plaintiff requests that this Court reverse the City Council's denial of the rezoning application, vacate the June 1, 2026 resolution and findings, order approval of the requested rezoning or alternatively remand the matter for lawful reconsideration, award costs and attorney fees as permitted by law, and grant such other relief as the Court deems just and appropriate.

## COMPLAINT COUNT I - VIOLATION OF SUBSTANTIVE DUE PROCESS
## (U.S. CONST. AMEND. XIV; CONST. 1963, ART. 1, § 17)

98.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

99.    The Fifth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, and Article 1, § 17 of the Michigan Constitution prohibit the deprivation of life, liberty, or property without due process of law.

100.    Plaintiff possesses constitutionally protected property rights and interests in the ownership, use, development, marketing, and sale of the Property.

101.    Plaintiff had a reasonable expectation that its rezoning application would be evaluated in accordance with the City's ordinances, Master Plan, rezoning criteria, established planning principles, and applicable constitutional requirements.

102.    The requested IRT zoning classification constituted a reasonable and appropriate use of the Property and was consistent with the City's Future Land Use Map, Master Plan, surrounding land uses, existing infrastructure, and applicable rezoning criteria.

16

103. After reviewing the application under the City's adopted standards, the City Manager and Zoning Administrator concluded that eleven of the twelve applicable rezoning criteria supported approval of the rezoning request and recommended that the application be approved. The sole concern identified during the review process involved the alleged saturation of storage facilities within the area.

104. Plaintiff directly addressed that concern through written submissions, communications with City Council members, and testimony presented at the public hearing. Plaintiff demonstrated that the proposed development would serve a distinct and underserved market segment, provide specialized high-end storage facilities not otherwise available within the City, and would not negatively impact existing storage operators.

105. In addition, a neighboring storage facility owner addressed City Council and confirmed that, after obtaining a better understanding of the proposed development, he no longer believed the project would negatively affect his operations.

106. Accordingly, the record before City Council supported approval of the rezoning request and substantially alleviated the only concern identified by City staff.

107. Despite the recommendation of its own planning professionals and the evidence presented during the public hearing, City Council denied the application without making findings of fact, identifying deficiencies in the application, or articulating any legitimate basis for denial.

108. Following the denial, City staff and the City Attorney prepared findings and reasons for denial that had never been identified during the review process, raised with Plaintiff, or discussed during the May 18, 2026 public hearing. Those findings materially contradicted the conclusions reached by the City's own planning professionals and were adopted only after the decision had already been made.

17

109.    Defendant's denial bears no real or substantial relationship to the public health, safety, welfare, or any other legitimate governmental interest. The denial rejected a proposal that was consistent with the City's planning objectives, satisfied the applicable rezoning criteria, and was recommended for approval by the City's own planning professionals.

110.    Upon information and belief, the denial was based upon speculation regarding hypothetical future uses of the Property and subjective preferences concerning what individual Council members would prefer to see developed on the site. Such considerations are not recognized rezoning criteria and do not constitute legitimate governmental interests.

111.    The existing B-2 General Commercial zoning classification is unreasonable as applied to the Property. The Property has remained vacant and underutilized for approximately ten years despite active marketing efforts, and no viable development opportunities consistent with the existing zoning classification materialized during that time.

112.    By contrast, the requested IRT zoning classification is consistent with the City's Master Plan, Future Land Use Map, surrounding land uses, and planning objectives and represents the first viable development opportunity for the Property in approximately a decade.

113.    The contemporaneous communications of City Council members further demonstrate the arbitrary and irrational nature of Defendant's conduct. Those communications reveal that Council members believed the application likely would have been approved had Plaintiff not identified the intended use of the Property and that Council members discussed whether a moratorium could be enacted to prevent Plaintiff's project from proceeding even if the rezoning request itself were granted. Such communications support a reasonable inference that Defendant was not applying its adopted rezoning criteria in a neutral manner, but instead was searching for a means to prevent a specific project from proceeding. Government action motivated

18

4913-3205-5734_5

by a desire to reach a predetermined result rather than by application of established standards is the essence of arbitrary and capricious decision-making.

114.    Under these circumstances, there is no room for a legitimate difference of opinion regarding the unreasonableness of Defendant's actions. Defendant denied an application that satisfied the City's standards, addressed the sole concern identified during the review process, advanced the City's own planning objectives, and represented the first viable development opportunity for the Property in approximately ten years.

115.    Rather than applying the City's adopted rezoning criteria and planning standards, Defendant denied the application first and attempted to justify that denial later through findings developed after the vote had already occurred. Such conduct reflects a complete abandonment of reasoned decision-making and an arbitrary exercise of governmental authority unrelated to any legitimate governmental objective.

116.    Defendant's conduct was not merely an erroneous land-use decision. Defendant abandoned the decision-making process established by law by denying the application without identifying any basis for denial and thereafter adopting entirely new grounds that had never been identified during the review process, disclosed to Plaintiff, or considered during the public hearing.

117.    The arbitrary nature of Defendant's conduct is demonstrated by the fact that the reasons ultimately relied upon to deny the application were unknown to Plaintiff, unknown to City staff, and absent from the public record at the time the decision was made.

118.    Defendant's conduct was so arbitrary, irrational, and fundamentally unfair as to shock the conscience and violate Plaintiff's substantive due process rights under the United States Constitution and the Michigan Constitution.

19

4913-3205-5734_5

119.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to delay damages, carrying costs, professional fees, diminution in value, interference with contractual and business expectations, and the potential loss of a pending purchase transaction contingent upon approval of the requested rezoning.

WHEREFORE, Plaintiff requests judgment in its favor and against Defendant for declaratory relief, damages, costs, attorney fees as permitted by law, and such other relief as the Court deems just and appropriate.

## COMPLAINT COUNT II - 5TH AMENDMENT REGULATORY TAKING (U.S. CONST. AMEND. V; CONST. 1963, ART. 10, § 2)

102.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

103.    Plaintiff possesses constitutionally protected property rights in the ownership, use, development, marketing, sale, and economic use of the Property.

104.    The Property has remained vacant and underutilized for approximately ten years despite active marketing efforts, and no viable development opportunities consistent with the existing B-2 General Commercial zoning classification materialized during that time.

105.    The proposed development underlying the rezoning application represented the first bona fide opportunity in approximately ten years to place the Property into productive economic use.

106.    The requested IRT zoning classification is consistent with the City's Master Plan, Future Land Use Map, surrounding land uses, existing infrastructure, and the recommendation of the City's own planning professionals. The City Manager and Zoning Administrator concluded that eleven of the twelve applicable rezoning criteria supported approval and recommended that the rezoning request be granted.

20

107.    Defendant nevertheless denied the application without making findings of fact or identifying any evidentiary basis supporting the denial and subsequently adopted findings that materially differed from and contradicted the conclusions reached by its own planning professionals.

108.    Defendant's actions do not advance a legitimate governmental interest. The requested rezoning is consistent with the City's planning objectives, the surrounding area, and the applicable rezoning standards, while the continued application of the existing B-2 zoning classification has failed to produce meaningful development of the Property for approximately a decade.

109.    The existing B-2 zoning classification is unreasonable as applied to the Property and results in the arbitrary exclusion of a legitimate and otherwise appropriate land use.

110.    Defendant's actions have substantially interfered with Plaintiff's reasonable investment-backed expectations regarding the development, marketing, and sale of the Property. Plaintiff reasonably expected that an application consistent with the City's Master Plan, Future Land Use Map, rezoning criteria, and recommended for approval by the City's own planning professionals would be evaluated and decided in accordance with the City's adopted standards and the evidence presented.

111.    Defendant's actions have had a substantial economic impact on the Property. The denial has jeopardized a pending sale, prevented development of the Property, interfered with Plaintiff's ability to market the Property, and substantially diminished the economic value and utility of the Property.

112.    The character of Defendant's actions likewise weighs in favor of finding a regulatory taking. Defendant denied the application without making findings of fact or identifying

21

any evidentiary basis for its decision and thereafter adopted new and contradictory findings that had not been identified during the review process or discussed at the May 18, 2026 hearing. Such conduct reflects an arbitrary departure from established planning standards and procedures rather than the ordinary application of traditional land-use regulations.

113. Under the circumstances presented, including the substantial economic impact of the denial, the interference with Plaintiff's distinct investment-backed expectations, and the character of Defendant's actions, the Defendant's actions constitute a compensable regulatory taking.

114. Defendant's actions have deprived Plaintiff of the reasonable economic use and value of the Property and imposed a burden on Plaintiff that, in fairness and justice, should be borne by the public as a whole.

115. Defendant's actions have substantially impaired Plaintiff's ability to place the Property into productive economic use, have deprived Plaintiff of the benefits associated with the first viable development opportunity for the Property in approximately ten years, and have imposed a disproportionate economic burden on Plaintiff for no legitimate governmental purpose.

116. To the extent Defendant's actions have resulted in a taking of private property for public purposes, Plaintiff is entitled to just compensation under the United States Constitution and the Michigan Constitution.

117. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including but not limited to diminution in value, lost economic opportunities, carrying costs, delay damages, professional fees, loss of a pending sale, and other damages to be proven at trial.

22

WHEREFORE, Plaintiff requests that this Court determine that Defendant's actions constitute a regulatory taking and inverse condemnation, award Plaintiff just compensation and damages, together with costs, interest, attorney fees where permitted by law, and such other relief as the Court deems just and appropriate.

## COMPLAINT COUNT III - ULTRA VIRES MUNICIPAL ACTION (DECLARATORY AND INJUNCTIVE RELIEF)

118.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

119.    Municipal corporations possess only those powers granted by the Michigan Constitution, the Home Rule City Act, the Michigan Zoning Enabling Act, applicable ordinances, and other provisions of law. When exercising zoning authority, Defendant City Council is required to act in accordance with the procedures and standards established by law.

120.    On May 18, 2026, City Council voted to deny Plaintiff's rezoning application. At the time of the vote, City Council did not make findings of fact, identify the rezoning criteria Plaintiff allegedly failed to satisfy, identify the evidence supporting denial, or otherwise articulate the basis for its decision.

121.    Following the denial, City staff and the City Attorney prepared a resolution containing findings and reasons for denial that had not been identified during the review process, discussed during the May 18, 2026 hearing, or adopted by City Council at the time of its initial vote.

122.    On June 1, 2026, City Council adopted those findings and the proposed resolution after the rezoning application had already been denied.

123.    Although Defendant possessed authority to approve or deny Plaintiff's rezoning application, Defendant was utterly without authority to deny the application and thereafter retroactively create and adopt new reasons in an attempt to justify a completed decision.

23

124. The authority to evaluate the evidence, apply the rezoning criteria, make findings of fact, and articulate the basis for approval or denial belonged exclusively to City Council acting as the decision-making body in a public meeting. Those responsibilities could not lawfully be delegated to City staff or legal counsel after the vote had already occurred.

125. Upon information and belief, City Council delegated or abdicated its responsibility to identify the factual and legal basis for its decision. The June 1, 2026 findings do not reflect findings made by City Council at the time of the May 18, 2026 denial, but instead constitute an improper post hoc attempt to supply justification for a decision that had already been made.

126. By denying the application first and subsequently adopting findings prepared by others, Defendant failed to exercise its zoning authority in the manner required by law and exceeded the authority granted to it under Michigan law.

127. Defendant further exceeded its lawful authority by denying Plaintiff's application based upon considerations outside the City's adopted rezoning criteria and by voting on the application before identifying any findings, evidence, or reasons supporting denial. The authority granted to City Council required it to evaluate the application under the standards established by law and to exercise its legislative judgment based upon the record before it. Defendant instead rendered a decision first and attempted to formulate a justification later, thereby acting beyond the authority conferred by the Michigan Zoning Enabling Act, the Home Rule City Act, and the City's own zoning ordinance.

128. Defendant lacked authority to deny the application based upon criteria that had never been identified during the review process, considered during the public hearing, or adopted by City Council at the time of the vote.

24

129.    The May 18, 2026 denial, along with the June 1, 2026 findings and resolution therefore constitute ultra vires governmental action and cannot serve as a lawful basis to support denial of Plaintiff's re-zoning application.

130.    An actual controversy exists between the parties concerning the validity of Defendant's actions and the legal effect of the June 1, 2026 resolution. Unless enjoined by this Court, Defendant will continue to rely upon and enforce the June 1, 2026 resolution as the purported basis for denying Plaintiff's rezoning application.

WHEREFORE, Plaintiff requests that this Court:

A.  Declare that Defendant's June 1, 2026 findings and resolution constitute unlawful ultra vires municipal action;

B.  Declare that the June 1, 2026 findings cannot serve as the basis for the May 18, 2026 denial;

C.  Vacate the June 1, 2026 resolution and findings;

D.  Grant declaratory and injunctive relief preventing Defendant from relying upon the June 1, 2026 findings and resolution; and

E. Award Plaintiff its costs, attorney fees where authorized by law, and such other relief as the Court deems just and appropriate.

## COMPLAINT COUNT IV - VIOLATION OF PROCEDURAL DUE PROCESS (U.S. CONST. AMEND. XIV; CONST. 1963, ART. 1, § 17)

131.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

132.    Plaintiff possesses constitutionally protected interests arising from its ownership, use, development, marketing, and sale of the Property, as well as its right to have its rezoning application considered through a fundamentally fair process consistent with the procedures, standards, and criteria established by law.

25

133.    Defendant City of Springfield is a municipal corporation and governmental entity subject to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 17 of the Michigan Constitution.

134.    Procedural due process requires notice and a meaningful opportunity to be heard before governmental action affecting protected interests is taken.

135.    Plaintiff acknowledges that it received notice of the May 18, 2026 public hearing and that a public hearing was conducted regarding the rezoning application.

136.    However, due process requires more than the mere existence of a hearing. The hearing must provide a meaningful opportunity to address the grounds upon which the governmental decision will ultimately be based.

137.    Plaintiff does not claim an entitlement to rezoning approval. Rather, Plaintiff claims a constitutionally protected interest in having its application evaluated through the procedures established by law and in receiving notice of the grounds upon which the City intended to rely before those grounds were used to deny the application.

138.    The procedural protections afforded by Defendant became meaningless when Defendant denied the application based upon criteria that were never disclosed to Plaintiff until after the decision had already been made.

139.    Throughout the review process, the City Manager and Zoning Administrator concluded that eleven of the twelve applicable rezoning criteria supported approval of the application and recommended that the application be approved. The sole concern identified during the review process involved the alleged saturation of storage facilities within the area.

140.    Plaintiff responded to that concern through written submissions, communications with City Council members, and testimony presented at the public hearing, including evidence

26

demonstrating that the proposed development served a distinct market segment, would not negatively affect existing storage operators, and provided services not otherwise available within the City.

141.    Plaintiff reasonably understood that the identified saturation concern was the only criterion potentially weighing against approval and tailored its presentation and evidence accordingly.

142.    City Council nevertheless denied the application on May 18, 2026 without making findings of fact, identifying the criteria Plaintiff allegedly failed to satisfy, explaining the evidentiary basis for denial, or otherwise articulating the reasons supporting its decision.

143.    Following the denial, City staff and the City Attorney prepared a resolution identifying numerous additional grounds for denial that had never been identified during the review process, raised with Plaintiff, or discussed during the May 18, 2026 public hearing. Those grounds were subsequently adopted by City Council on June 1, 2026 as the purported basis for denying the rezoning application.

144.    Plaintiff was never provided notice that the application allegedly failed the numerous rezoning criteria later identified in the June 1, 2026 resolution. Those factors were never identified as deficiencies during the review process, never disclosed to Plaintiff, and never discussed during the public hearing.

145.    Because the grounds ultimately relied upon to deny the application were not disclosed until after the decision had already been made, Plaintiff was deprived of any meaningful opportunity to address, rebut, explain, or present evidence regarding those grounds.

27

146.    Had Plaintiff been informed that City Council believed the application failed the criteria later identified in the June 1, 2026 resolution, Plaintiff could have presented additional evidence, testimony, opinions, and argument addressing those concerns.

147.    The public hearing process was rendered meaningless because the reasons ultimately relied upon to deny the application were never disclosed, discussed, or deliberated upon until after the decision had already been made.

148.    Once Defendant elected to consider Plaintiff's application through a public hearing process governed by specific rezoning criteria, Plaintiff was entitled to a meaningful opportunity to address the grounds upon which Defendant would ultimately base its decision. Defendant deprived Plaintiff of that opportunity by denying the application without explanation and later adopting new reasons for denial that had never been disclosed, discussed, or considered during the public hearing process.

149.    The procedure employed by Defendant lacked the fundamental fairness required by due process and deprived Plaintiff of a meaningful opportunity to be heard regarding the actual grounds for denial.

150.    Defendant's actions therefore violated Plaintiff's procedural due process rights under the United States Constitution and the Michigan Constitution.

151.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to delay damages, carrying costs, diminution in value, and interference with contractual and business expectations.

WHEREFORE, Plaintiff requests judgment in its favor and against Defendant declaring that Defendant violated Plaintiff's procedural due process rights, awarding damages, costs,

attorney fees where authorized by law, and granting such other relief as the Court deems just and appropriate.

## COMPLAINT COUNT V - DECLARATORY JUDGMENT (MCR 2.605)

149.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

150.    An actual controversy exists between the parties regarding the validity of Defendant's actions, the legal effect of the June 1, 2026 resolution, and whether the June 1, 2026 findings may lawfully be relied upon to support the May 18, 2026 denial of Plaintiff's rezoning application.

151.    On May 18, 2026, City Council voted to deny Plaintiff's rezoning application without making findings of fact, identifying the rezoning criteria Plaintiff allegedly failed to satisfy, identifying the evidence supporting denial, or otherwise articulating the basis for its decision.

152.    Following the denial, City staff and the City Attorney prepared a resolution identifying numerous findings and reasons for denial that had not been identified during the review process, raised with Plaintiff, discussed during the public hearing, or adopted by City Council at the time of its vote.

153.    On June 1, 2026, City Council adopted those findings after the rezoning application had already been denied.

154.    Plaintiff contends that the June 1, 2026 findings constitute improper post hoc rationalizations that cannot lawfully serve as the basis for the May 18, 2026 denial.

155.    Plaintiff further contends that the June 1, 2026 findings do not reflect the reasons upon which City Council acted at the time of the May 18, 2026 vote and cannot be used to retroactively justify a decision already made.

29

156.    Defendant, upon information and belief, contends that the June 1, 2026 findings are valid and may properly be relied upon to support the denial of Plaintiff's rezoning application.

157.    The parties therefore possess adverse legal interests requiring judicial resolution.

158.    A declaratory judgment is necessary and appropriate to determine the parties' respective rights and obligations and to resolve the uncertainty surrounding the validity and legal effect of the June 1, 2026 findings and resolution.

WHEREFORE, Plaintiff requests that this Court enter a declaratory judgment:

A.  Declaring that the June 1, 2026 findings and resolution do not constitute the findings upon which City Council acted when it denied Plaintiff's rezoning application on May 18, 2026;

B.  Declaring that the June 1, 2026 findings and resolution cannot be used to retroactively justify or support the May 18, 2026 denial;

C.  Declaring that the validity of the May 18, 2026 denial must be evaluated based upon the record and reasons existing at the time the decision was made;

D.  Declaring that the June 1, 2026 findings and resolution are invalid, unlawful, and without legal effect; and

E.  Awarding such other and further relief as the Court deems just and appropriate.

## COUNT VI - VIOLATION OF 42 U.S.C. § 1983

159.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

160.    It is well established that a municipality is a "person" subject to suit under 42 U.S.C. § 1983 for the deprivation of rights secured by the United States Constitution and federal law.

161.    At all relevant times, Defendant City of Springfield acted under color of state law through its City Council, elected officials, employees, agents, and representatives.

162.    Plaintiff possesses rights, privileges, and immunities secured by the United States Constitution, including the rights guaranteed by the Fifth and Fourteenth Amendments.

30

163. As set forth more fully above, Defendant deprived Plaintiff of substantive due process by arbitrarily and irrationally denying Plaintiff's rezoning application without any legitimate governmental basis and by acting in a manner that was arbitrary, capricious, unreasonable, and conscience-shocking.

164. As set forth more fully above, Defendant deprived Plaintiff of procedural due process by denying Plaintiff a meaningful opportunity to be heard regarding the grounds ultimately relied upon to deny the rezoning application. Defendant denied the application without explanation and thereafter adopted new findings and reasons for denial that had never been disclosed to Plaintiff, identified during the review process, or discussed during the public hearing.

165. As set forth more fully above, Defendant's actions constitute a regulatory taking of Plaintiff's property rights without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

166. The constitutional violations described herein were caused by and are attributable to Defendant City of Springfield because they resulted from official actions and decisions of the Springfield City Council, the final policymaking authority for zoning and rezoning matters within the City.

167. The denial of Plaintiff's rezoning application, the decision to deny the application without contemporaneous findings, and the subsequent adoption of findings and reasons for denial constituted official municipal actions and decisions of Defendant City of Springfield.

168. The unconstitutional conduct alleged herein implemented and executed official municipal policy and was not the isolated act of subordinate employees. Rather, the constitutional violations arose directly from decisions adopted, ratified, and carried out by the City's final policymaking authority acting on behalf of the municipality.

31

169. Upon information and belief, the Springfield City Council possesses final, non-reviewable authority under City ordinances and Michigan law to approve or deny rezoning applications.

170. The official actions and decisions of the Springfield City Council were the moving force behind the constitutional violations alleged herein. The City's official policy and decisions directly caused Plaintiff to be deprived of substantive due process, procedural due process, and just compensation by denying the rezoning application without a legitimate governmental basis, depriving Plaintiff of a meaningful opportunity to address the grounds ultimately relied upon for denial, and substantially interfering with Plaintiff's property rights without compensation. Absent those official municipal actions and decisions, the constitutional violations and resulting injuries would not have occurred.

171. Through those official actions and decisions, Defendant deprived Plaintiff of rights secured by the Fifth and Fourteenth Amendments to the United States Constitution, including Plaintiff's rights to substantive due process, procedural due process, and just compensation for the taking of private property.

172. Defendant's actions directly and proximately caused Plaintiff to suffer damages, including but not limited to diminution in value, delay damages, carrying costs, lost economic opportunities, and interference with contractual and business expectations.

173. Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to recover all damages resulting from Defendant's deprivation of Plaintiff's federally protected constitutional rights.

174. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover its reasonable attorney fees, costs, and expenses incurred in prosecuting this action.

32

4913-3205-5734_5

WHEREFORE, Plaintiff requests judgment in its favor and against Defendant for damages, declaratory to the fullest extent authorized by 42 USC §1983 and injunctive relief, attorney fees and costs pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems just and appropriate.

Respectfully submitted,

BODMAN PLC

/s/
By:    Floyd E. Gates, Jr. (P54234)
       Debani T. Gordon Lehman (P83909)
99 Monroe Ave. NW, Suite 506
Grand Rapids, MI 49503
(616) 205-1960
fgates@bodmanlaw.com
dgordon@bodmanlaw.com

Date:   June 22, 2026,                    *Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, I filed the foregoing papers and this Certificate of Service by email and sent notice by email and mail upon all parties of record.

/s/
Floyd E. Gates, Jr.

33

4913-3205-5734 5

## STATE OF MICHIGAN
### IN THE CIRCUIT COURT FOR THE COUNTY OF CALHOUN

AVENUE A HOLDINGS, INC.,

Plaintiff-Appellant,

v.

CITY OF SPRINGFIELD,
a Michigan municipal corporation,

Defendant-Appellee.

Case No. 2026-        -AA

Hon.

**APPENDIX OF EXHIBITS TO CLAIM
OF APPEAL AND COMPLAINT**

---

BODMAN PLC
By: Floyd E. Gates, Jr. (P54234)
      Debani T. Gordon Lehman (P83909)
99 Monroe Ave. NW, Suite 506
Grand Rapids, MI 49503
(616) 205-1960
fgates@bodmanlaw.com
dgordon@bodmanlaw.com
*Attorneys for Plaintiff-Appellant*

---

### APPENDIX OF EXHIBITS TO CLAIM OF APPEAL AND COMPLAINT

Exhibit 1:      Re-Zoning Application and Supplemental Information

Exhibit 2:      Proposed Development

Exhibit 3:      Re-Zoning Report Prepared by Zoning Administrator

Exhibit 4:      May 13, 2026 Letter

Exhibit 5:      Emails to City Council

Exhibit 6:      May 18, 2026 City Council Minutes

Exhibit 7:      May 18, 2026 Meeting Transcript

Exhibit 8:      May 12, 2026 Email

Exhibit 9:      Post Hoc Resolution of Denial

Exhibit 10:    June 1, 2026 Meeting Transcript

34

4913-3205-5734_5

Exhibit 11:    June 1, 2026 Meeting Agenda

Exhibit 12:    June 1, 2026 Meeting Minutes

Exhibit 13:    City Council Messages.

Exhibit 14:    Proof of Service

Exhibit 15:    Letter Requesting Certified Record

4913-3205-5734_5

# Exhibit 1



**Springfield Zoning Administration Department**
601 Avenue A
Springfield, MI 49037
Ph. (269) 965-2354 * Fax. (269-) 965-0114

## REZONING - APPLICATION

Application and supporting documentation may be submitted digitally to aedlefson@springfieldmich.com

| APPLICATION REQUIREMENT CHECKLIST | | PROJECT INFORMATION | |
|---|---|---|---|
| • Application | | Site Address: | 4100 W Dickman Road |
| • Application fee (See Springfield Fee Schedule) | | Parcel I.D. #: | 54-005-070-60 |
| • A map or site plan of the area requested for rezoning | | Current Zoning: | B-3  R 2 AVE |
| | | Proposed Zoning: | IRT |

### APPLICANT INFORMATION

| Name: | Judith A Roelof | | | Phone. | 269-317-3469 | | |
|---|---|---|---|---|---|---|---|
| Address: | 2421 Hunters Run | City. | Kalamazoo | State. | MI | Zip: | 49048-6118 |
| Email. | Jwroelof@gmail.com | | | | | | |

### PROPERTY OWNER INFORMATION

| Name: | Avenue A Holdings | | | Phone. | 269-317-3469 | | |
|---|---|---|---|---|---|---|---|
| Address: | 2421 Hunters Run | City: | Kalamazoo | State: | MI | Zip: | 49048-6118 |
| Email. | Jwroelof@gmail com | | | | | | |

1  **Property Legal Description:**
The entire legal description could not be inserted into this space  It is attached

2.  **Present Use of the property:**
Vacant Land

3.  **Proposed Use of the property:**
Self Storage/Warehousing storage buildings with individual units that could be 15' X 50' X 16' primarily marketed for inside storage of RV's and boats  Some units could be 30' or 40' deep depending on market research  The buyers do not intend to allow any outside storage.

4.  **Reason why applicant feels a zoning reclassification should be granted:**
We are requesting approval of this rezoning classification conditional upon the closing of the sale of the property upon the buyer's completion of their due diligence, including environmental and geotechnical reviews/investigations, to be completed no later than 45 days after approval of this application by the City of Springfield  The reasons why we feel this rezoning should be granted are attached

### APPLICANT STATEMENT AND SIGNATURE

I, the undersigned, hereby verify that I have reviewed and completed this application form, and submitted all information as required per said document, and that all information is correct, accurate, and true to the best of my knowledge.

| PROPERTY OWNER/PRIMARY CONTACT SIGNATURE: | DATE: |
|---|---|
|  | 2/13/26 |

Information contained in this application, as well as supporting documents, may be subject to review by the public if a Freedom of Information Act request is filed

| OFFICE USE | |
|---|---|
| Received by: | AOE |
| Date received: | 2/25/26 |
| Fee paid: | $ 500.00 |

| PLANNING COMMISSION RECOMMENDATION | | CITY COUNCIL ACTION |
|---|---|---|
| Public Hearing Date: | | Rezoning Ordinance Introduction Date: |
| Planning Commission Recommendation: | | Rezoning Ordinance Second Reading Date: |
| ☐ Rezoning Approval | | ☐ Rezoning Approved |
| ☐ Rezoning Denied. No action needed by City Council | | ☐ Rezoning Denied |

Conditional Application for Rezoning, City of Springfield, MI

Avenue A Holdings

Parcel # 54-005-070-60

4100 W Dickman Road

The legal description of the property is,

> SPRINGFIELD CITY T2S R8W SECTION 5 COMM NW CORNER OF OF E 1/2 OF SE 1/4, S 34*06'10" E 915.93 FT TO POB,N 55*52'36" E 578.36 FT ALONG S'LY LINE OF AVE A, N 82*52'19" E 272.35 FT TO THE S'LY LINE OF AVE A, S 71*21'01" E 50.10 FT, S 03*39'27" W 573.86 FT, S 55*53'50" W 500 FT TO E'LY LINE OF DICKMAN RD, N 34*06'10" W 616.89 FT TO POB9.92 AC +/- *** TIFA-C 86 SEV 23,873 *** ***TRANSFERRED TO TIFA D/2006 33,004***SPLIT ON 02/4/2014 FROM 13-54-005-070-00

Response to "Reason why applicant feels a zoning reclassification should be granted:"

Our response to item #4 on the Rezoning Application correlates with the Application Information criteria to be considered by the Planning Commission and City Council as outlined within the Rezoning – Information and Application document.

1) The requested zoning of IRT is the zoning classification included for this property in City of Springfield's Future Land Use Map of the City's Master Plan approved in January of 2026

2) The proposed development is compatible with the site's physical, geological and environmental features

3) The property has been listed for sale for over 920 days with no offers received as a B-3 zoning. The current and only offer received to purchase the property is based upon a successful conditional rezoning from the City to IRT.

4) Utilities as they currently exist are adequate to accommodate the proposed development

5) The proposed development will not generate the type of traffic that will have any negative impact on the current capability of the existing street system. Safety and efficiency of adjacent property owners and users of the proposed development will be taken into account when designing the site's ingress and egress points.

6) We believe that sufficient land zoned B-3 exists within the City of Springfield to accommodate current and future demand if this property is rezoned. This belief is supported by the lack of interest in this property as currently marketed and the results of the revised Master Plan study designating the potential future use of this property as IRT.

7) The boundaries of the proposed zoning district are reasonable in relationship to surroundings. Construction on the site will be able to meet the dimensional regulations of the proposed zoning district.

8) The proposed zoning is appropriate as demonstrated by the designation as IRT in the Future Land Use Map adopted in the City's Master Plan.

9) The proposed zoning will not create an isolated use as there are similar facilities and uses in the area.

10) The proposed zoning will not create an unplanned spot zone.

We have attached a photograph of an existing facility that is similar to what the interested buyers of this property propose to construct on this site.

Thank you for your consideration.











Map 5

# Future Land Use

City of Springfield, Michigan

September 22, 2025

## LEGEND

- Single-Family Residential Neighborhood
- Single and Two-Family Residential
- Multi-Family Residential
- Manufactured Housing Community
- Corridor Mixed Use
- Downtown Mixed Use
- General Commercial
- Indusitral-Commercial
- General Industrial
- Public/Semi-Public
- Military Base/Airport

0    1,500    3,000 Feet

Basemap Source: Michigan Center for Geographic Information, v. 17a
Data Source: Calhoun County 2134. McKenna 2024.

MCKENNA

Chapter 3: Goals and Objectives



## Goal 3:
## Commercial Development

### Objectives

1. Preserve and enhance the unique neighborhood retail and service areas in the City of Springfield.

2. Improve the general appearance of all commercial corridors in the city to create a more unified and welcoming business environment.

3. Continue to build and foster relationships with local business owners in the city to ensure future policies are complimentary with business operations, while also improving the aesthetic character and accessibility of commercial businesses.

4. Improve the safety of pedestrians and drivers crossing and traveling along all commercial corridors.

## Goal 4:
## Industrial Development/ Redevelopment

### Objectives

1. Promote economic development and employment opportunities through the re-use of underutilized industrial zoned properties and allow for a range of opportunities within lands zoned for industrial land use.

2. Provide flexibility that responds to market trends while maintaining quality of appearance and performance within industrially zoned areas.

3. Identify buildings or parcels which could provide incubator space for technology-based or other manufacturing and development industries, particularly start-up industries, suitable for sites outside industrial parks.

4. Ensure existing industrial businesses are considering environmental factors prior to any expansion of activities.

From: hbeekcc@gmail.com
To: Harry Burdett; Christy Kincaid; Tracey Cummings; Brad Francis; Adam Gregory; Ron Wells; Aaron Edlefson
Subject: Supplemental Information regarding rezoning request
Date: Wednesday, May 13, 2026 3:27:31 PM
Attachments: Draft rendering of RV storage facility 1.png
Draqft Rendering of RV Storage Facility 2.png
Draft Site Layout.pdf

Good afternoon, Springfield City Council Members and City Manager.

Please find attached a draft site plan and two renderings as supplemental information regarding our vision for development of the property located at 4100 West Dickman Road that is under consideration for a rezoning.

The first rendering indicates two buildings with the overhead doors in each building facing each other. This layout screens a portion of the doors from view from Dickman Road as opposed to having all of the doors facing Dickman Road. It also depicts facades and spandrel windows that could be incorporated into the design to give the buildings a commercial appearance. Depending on the manufacturer of the facility the roof line may not be gabled but could be a single slope design as depicted in the second rendering.

In both renderings we have indicated an area of landscaping that could include wood mulch or other ground cover and boulders. We have not depicted bushes or trees as we would be concerned about the maintenance but would not rule out other types of landscape features.

The draft site plan depicts how we could position the two buildings planned for at this time. Each building would house 16 individual stalls that would be 15' wide X 50' deep and 16' tall at the low sidewall with 12' wide X 14' tall overhead doors. Each stall will be separated from the adjacent unit(s) by full height interior metal partitions. Our intent would be to have the overhead door color match or be very similar to the color of the siding, as depicted in the first rendering, as we feel that is a better look, architecturally, than contrasting colors.

Upon leasing out the first two facilities our intent would be to build two additional facilities that could be located along the northerly property line somewhat perpendicular to the buildings shown on this plan. I am not sure that we would want to have, or that the market would support more than 4 buildings with 64 total units. That could leave approximately 50% of the property as green space or built out for other uses depending on any interest or need that could arise in the future.

Please note that the 6.5 acres west of Avenue A, that we have not requested to be rezoned, are included within the real estate transaction if the rezoning of the 9.9 acres is approved. We specifically did not include the 6.5 acres for rezoning in hopes that it could be developed as currently zoned, which could be one of the other uses some members of the Council and Planning Commission voiced in recent discussions. If the rezoning of the 9.9 acres is not approved, the entire real estate transaction will be nullified, and the current landowners will

retain possession with no desire to develop either of the parcels.

I appreciate your time and consideration as well as your service to the community.

Please feel free to contact me via cell phone or email if you have any questions regarding the information included in this email and/or the application for rezoning.

Respectfully,

Tom Beuchler
256 Jacaranda Dr
Battle Creek, MI 49015
Cell Phone: 269-209-5398











# Exhibit 2













**Exhibit 3**



# Zoning Administrator's Report for the Zoning Map Amendment (Rezoning) of 4100 West Dickman Road Parcel Number 54-005-070-60

## Contents

Summary ................................................................................................................. 2

Materials Submitted by Applicant ...................................................................... 4

Site & Surrounding Areas ................................................................................... 5

Master Plan Consistency ..................................................................................... 6

Public Hearing & Notice Record ........................................................................ 7

Staff Analysis – Rezoning Criteria (§50-7.5.E) ................................................. 8

Conditional Rezoning (If Applicable) ............................................................... 13

Staff Recommendation ...................................................................................... 14

Exhibit Checklist ............................................................................................... 15

# Summary

| | |
|---|---|
| Site Address | 4100 West Dickman Road |
| Parcel Number | 54-005-070-60 |
| Legal Description | SPRINGFIELD CITY T2S R8W SECTION 5 COMM NW CORNER OF OF E 1/2 OF SE 1/4, S 34*06'10" E 915.93 FT TO POB,N 55*52'36" E 578.36 FT ALONG S'LY LINE OF AVE A, N 82*52'19" E 272.35 FT TO THE S'LY LINE OF AVE A, S 71*21'01" E 50.10 FT, S 03*39'27" W 573.86 FT, S 55*53'50" W 500 FT TO E'LY LINE OF DICKMAN RD, N 34*06'10" W 616.89 FT TO POB9.92 AC +/- *** TIFA-C 86 SEV 23,873 *** ***TRANSFERRED TO TIFA D/2006 33,004***SPLIT ON 02/4/2014 FROM 13-54-005-070-00 |
| Acreage | 9.92 |
| Frontage | West Dickman = Approx. 601.1'  Avenue A = Approx. 560.7' |
| Future Land Use Designation | Industrial-Commercial |
| Current Corresponding District | IRT Industrial/Research/Technology  B-2 General Commercial |
| Applicant | Judith Roelof |
| Applicant Address | 2421 Hunters Run, Kalamazoo, MI 49048 |
| Applicant Phone | (269) 317-3469 |
| Applicant Email | jwroelof@gmail.com |
| Property Owner | Judith Roelof |
| Property Owner Address | 2421 Hunters Run, Kalamazoo, MI 49048 |
| Property Owner Phone | (269) 317-3469 |
| Property Owner Email | jeroelof@gmail.com |

| Current Zoning District | B-2 General Commercial |
|---|---|
| Proposed Zoning District | IRT Industrial/Research/Technology |
| Intended Use | Storage Units |

Concise summary of zoning map amendment and applicant's purpose for request:

Applicant is in the process of selling the property, but a condition of the sale is that it be rezoned to IRT. Buyer would like to build large storage units that can accommodate RVs, boats, etc. IRT is the only zoning district that has "mini-warehouse/self-storage unit" as a permitted use.

Other related approvals that may be required (check applicable):
☒ Site plan review
☐ Special land use permit
☐ Conditional rezoning
☐ Planned Unit Development (PUD)
☐ Variance (ZBA)
☐ Lot split/land division

# Materials Submitted by Applicant

☒ Completed application and required fee

☒ Legal description, street address, and vicinity/location map showing the parcel in relation to surrounding properties

☒ Written narrative addressing the rezoning criteria (Springfield Zoning Ordinance §50-7.5.E)
    ☐ Not submitted

☐ Offer of conditions if conditional rezoning (if requested)
    ☒ Not requested

☐ Traffic study (if required)
    ☒ Not required

☐ Development impact statement (if requested)
    ☒ Not requested

☐ Other:

# Site & Surrounding Areas

1. Existing conditions
   a. Current land use:
      - Vacant land

   b. Existing structures:
      - None

   c. Utilities
      - ☒ Public water
      - ☒ Public sewer
      - ☐ Private well
      - ☐ Septic
      - ☐ Other:

   d. Environmental features (attach maps as needed)
      - ☐ Wetlands
      - ☐ Floodplain
      - ☐ Drain/watercourse
      - ☐ Steep slopes
      - ☐ Other:

2. Surrounding zoning & land use on each side of subject property

| Direction | Zoning District | Existing Land Use |
|---|---|---|
| North | B-2 General Commercial/R-1 One-Family Residential | B-2: Vacant<br>R-1: Restaurant |
| South | B-2 General Commercial | Storage Units |
| East | RM-1 Multiple-Family Residential | Vacant |
| West | B-2 General Commercial | Office space, government usage |

# Master Plan Consistency

1. Relevant Master Plan goals/policies (cite section/page):

   Goal 4, Objective 1 of the Springfield Master Plan, adopted on January 5, 2026, states "Promote economic development and employment opportunities through the re-use of underutilized industrial zoned properties and allow for a range of opportunities within lands zoned for industrial land use."

2. Consistency analysis:

   The Future Land Use Map shows that the future zoning of this property should be Industrial-Commercial which equates to our current B-2 General Commercial and IRT Industrial/Research/Technology. Utilizing this property would be in line with Objective 1 of Goal 4 as it is an underutilized zone. However, storage units are generally not considered to be drivers of economic development, nor do they create a significant amount of employment opportunities.

# Public Hearing & Notice Record

1. Planning Commission public hearing date/time/location:

   a.  Date: April 27, 2026

   b.  Time: 6:30PM

   c.  Location: Council Chambers, 601 Avenue A, Springfield, MI 49037

2. Notice documentation attached:

   ☒ Newspaper notice published at least 15 days prior to hearing
      ☒ Affidavit of publishing

   ☒ Mailed notice to owners, persons assessed, and occupants within 300 feet
      ☒ Affidavit of mailing
      ☒ Copy of mailing labels

   ☐ Other agency/utility notices (if applicable)
      ☒ N/A

3. Public comments received:
   a.  None as of April 23, 2026

4. Key issues raised:
   a.  None as of April 23, 2026

# Staff Analysis – Rezoning Criteria (§50-7.5.E)

1. Consistency with the goals, policies, and Future Land Use Map of the Springfield Master Plan. If conditions have changed since the Master Plan was adopted, the consistency with recent development trends in the area.

   a. Staff analysis:

      The Future Land Use Map does support a possible rezoning to IRT, but the Master Plan indicates that its current zoning is also acceptable when compared to the Future Land Use Map. However, as recently as 2021, nearby properties were rezoned from B-2 to IRT (Ord. 01-21). Additionally, in 2019 the ZBA granted variances to two other nearby properties for self-storage units (ZBA 03-19 and ZBA 04-19).

   b. Conclusion:
      ☒ Supports
      ☐ Does not support
      ☐ N/A

2. Compatibility of the site's physical, geological, hydrological and other environmental features with the host of uses permitted in the proposed zoning district.

   a. Staff analysis:

      The environment of the site is compatible with the proposed use.

   b. Conclusion:
      ☒ Supports
      ☐ Does not support
      ☐ N/A

3. Evidence from the applicant that it cannot receive a reasonable return on investment through developing the property with the uses permitted under the current zoning.

   a. Staff analysis:

      Under its current zoning the applicant has received zero purchase offers in over 920 days.

   b. Conclusion:
      ☒ Supports
      ☐ Does not support
      ☐ N/A

4. The compatibility of all the potential uses in the proposed zoning district with surrounding uses and zoning in terms of land suitability, impacts on the environment, density, nature of use, traffic impacts, aesthetics, infrastructure, and potential influence on property values.

   a. Staff analysis:

      Potential uses on this parcel are compatible with current surrounding uses and zoning in all listed categories.

   b. Conclusion:
      ☒ Supports
      ☐ Does not support
      ☐ N/A

5. The capacity of utilities and services is sufficient to accommodate the uses permitted in the requested district without compromising the health, safety and welfare of the city.

   a. Staff analysis:

      Existing utilities and services are sufficient to accommodate permitted uses. However, cost to run water and sewer would be significant.

   b. Conclusion:
      ☒ Supports
      ☐ Does not support
      ☐ N/A

6. The capacity of the street system to safely and efficiently accommodate the expected traffic generated by uses permitted in the requested zoning district.

   a. Staff analysis:

      The existing street system will be able to safely and efficiently accommodate expected traffic generated by permitted uses.

   b. Conclusion:
      ☒ Supports
      ☐ Does not support
      ☐ N/A

7. The apparent demand for the types of uses permitted in the requested zoning district is relative to the amount of land in the city currently zoned and available to accommodate the demand.

   a. Staff analysis:

     Input from storage unit facilities indicates that area units are only operating at 80% capacity and owners have expressed concerns about oversaturation in the area.

   b. Conclusion:
     ☐ Supports
     ☒ Does not support
     ☐ N/A

8. The boundaries of the requested rezoning district are reasonable in relationship to surroundings and construction on the site will be able to meet the dimensional regulations for the zoning district.

   a. Staff analysis:

     Construction will be able to meet dimensional regulations if parcel is rezoned.

   b. Conclusion:
     ☒ Supports
     ☐ Does not support
     ☐ N/A

9. The requested rezoning is to the most appropriate district.

   a. Staff analysis:

     IRT is the only zoning district that permits self-storage.

   b. Conclusion:
     ☒ Supports
     ☐ Does not support
     ☐ N/A

10. If the request is for a specific use, is rezoning the land more appropriate than amending the list of permitted or special land uses in the current zoning district to allow the use?

   a.  Staff analysis:

   Amending permitted or special land uses in the current zoning district is not more appropriate than rezoning.

   b.  Conclusion:
   ☒ Supports
   ☐ Does not support
   ☐ N/A

11. The requested rezoning will not create an isolated and unplanned spot zone.

   a.  Staff analysis:

   Rezoning will not create an isolated or unplanned spot zone. Land use in the area is consistent with the IRT district even though some exist in B-2 zones. No special economic gains are realized by the rezoning. The Master Plan and Future Land Use Map indicate that B-2 and IRT should be merged into Industrial Commercial to contain heavy uses.

   b.  Conclusion:
   ☒ Supports
   ☐ Does not support
   ☐ N/A

12. The request has not previously been submitted within the past one (1) year, unless conditions have changed or new information has been provided.

   a.  Staff analysis:

   This request has not been submitted previously.

   b.  Conclusion:
   ☒ Supports
   ☐ Does not support
   ☐ N/A

13. An offer of conditions submitted as part of a conditional rezoning request shall bear a reasonable and rational relationship to the property for which rezoning is requested.

    a. Staff analysis:

       No offer of conditions was submitted.

    b. Conclusion:
       ☐ Supports
       ☐ Does not support
       ☒ N/A

14. Any other relevant factors.

    a. Staff analysis:

       None.

    b. Conclusion:
       ☐ Supports
       ☐ Does not support
       ☒ N/A

# Conditional Rezoning (If Applicable)

If the application includes an Offer of Conditions, summarize the conditions and address required statement/recording elements.

1. Offer of Conditions received?
   ☐ Yes       Date:
   ☒ No

2. Summary of offered conditions:

   N/A

3. Statement of Conditions requirements:
   ☐ In a recordable form with the Calhoun County Register of Deeds with a statement acknowledging that it has been recorded, including legal description, required attachments and diagrams, and statement that owners voluntarily offer and consent to provisions within the document
   ☐ Signed by owners including acknowledgment that use and development of land shall conform to all requirements
   ☐ States that conditions run with the land and are binding on successors
   ☐ States that failure to comply with any conditions of the Statement of Conditions will be a violation of the Zoning Ordinance and shall be punishable accordingly

# Staff Recommendation

1. Recommendation
   ☒ Approve
   ☐ Deny
   ☐ Approve (Conditional Rezoning) – Subject to conditions

2. Rationale (Related to §50-7.5.E and Master Plan):

   Of the fourteen (14) criteria to be considered in relation to §50-7.5.E, eleven (12) are applicable. All applicable criteria support approval of a zoning map amendment, except for one (1). The Master Plan and Future Land Use support an amendment. The only, and somewhat significant concern, is the saturation of the market within a relatively small area.

3. Recommended conditions (if applicable):

   None.

# Exhibit Checklist

☒ Rezoning application and fee receipt
☒ Legal description
☒ Location/vicinity map, zoning map excerpt, and aerial photograph
☒ Site photos
☒ Master Plan Future Land Use map excerpt and relevant plan excepts
☐ Traffic study (if submitted/required)
☐ Development impact statement (if submitted/required)
☐ Offer of Conditions and Statement of Conditions (if conditional rezoning)
☒ Notice documents
    ☒ Published notice
    ☒ Mailing list
    ☒ Affidavit/certification
☐ Public comments received (emails/letters/petitions)
☐ Other:

Prepared by: Aaron Edlefson          Date: 4/23/26

Aaron Edlefson
Digitally signed by Aaron Edlefson
Date: 2026.04.23 16:09:05 -04'00'



**Springfield Zoning Administration Department**
**601 Avenue A**
**Springfield, MI 49037**
**Ph. (269) 965-2354 * Fax. (269-) 965-0114**

## REZONING - APPLICATION

Application and supporting documentation may be submitted digitally to aedlefson@springfieldmich.com

| APPLICATION REQUIREMENT CHECKLIST | PROPERTY INFORMATION | |
|---|---|---|
| • Application | Site Address: | 4100 W. Dickman Road |
| • Application fee (see Springfield Fee Schedule) | Parcel I.D. #. | 54-005-070-60 |
| • A map or site plan of the area requested for rezoning | Current Zoning: | B-3  B-2  Ave |
| | Proposed Zoning | IRT |

### APPLICANT INFORMATION

| Name: | Judith A Roelof | | | Phone. | 269-317-3469 | | |
|---|---|---|---|---|---|---|---|
| Address: | 2421 Hunters Run | City: | Kalamazoo | State: | MI | Zip. | 49048-6118 |
| Email: | Jwroelof@gmail.com | | | | | | |

### PROPERTY OWNER INFORMATION

| Name: | Avenue A Holding | | | Phone. | 269-317-3469 | | |
|---|---|---|---|---|---|---|---|
| Address: | 2421 Hunters Run | City. | Kalamazoo | State | MI | Zip: | 49048-6118 |
| Email: | Jwroelof@gmail com | | | | | | |

1. Property Legal Description:
The entire legal description could not be inserted into this space. It is attached

2. Present Use of the property:
Vacant Land

3. Proposed Use of the property:
Self Storage/Warehousing storage buildings with individual units that could be 15' X 50' X 16' primarily marketed for inside storage of RV's and boats. Some units could be 30' or 40' deep depending on market research. The buyers do not intend to allow any outside storage

4. Reason why applicant feels a zoning reclassification should be granted:
We are requesting approval of this rezoning classification conditional upon the closing of the sale of the property upon the buyer's completion of their due diligence, including environmental and geotechnical reviews/investigations, to be completed no later than 45 days after approval of this application by the City of Springfield. The reasons why we feel this rezoning should be granted are attached

### APPLICANT STATEMENT AND SIGNATURE

I, the undersigned, hereby verify that I have reviewed and completed this application form, and submitted all information as required per said document, and that all information is correct, accurate, and true to the best of my knowledge

| PROPERTY OWNER/PRIMARY CONTACT SIGNATURE: | DATE: |
|---|---|
| | 2/13/26 |

Information contained in this application, as well as supporting documents, may be subject to review by the public if a Freedom of Information Act request is filed

| OFFICE USE | |
|---|---|
| Received by | AOE |
| Date received | 2/25/26 |
| Fee paid: | $ 500.00 |

| PLANNING COMMISSION RECOMMENDATION | | CITY COUNCIL ACTION |
|---|---|---|
| Public Hearing Date: | | Rezoning Ordinance Introduction Date: |
| Planning Commission Recommendation: | | Rezoning Ordinance Second Reading Date |
| ☐ Rezoning Approval | | ☐ Rezoning Approved |
| ☐ Rezoning Denied. No action needed by City Council | | ☐ Rezoning Denied. |

Conditional Application for Rezoning, City of Springfield, MI

Avenue A Holdings

Parcel # 54-005-070-60

4100 W Dickman Road

The legal description of the property is:

> SPRINGFIELD CITY T2S R8W SECTION 5 COMM NW CORNER OF OF E 1/2 OF SE 1/4, S 34*06'10" E 915.93 FT TO POB,N 65*52'36" E 578.36 FT ALONG S'LY LINE OF AVE A, N 82*52'19" E 272.35 FT TO THE S'LY LINE OF AVE A, S 71*21'01" E 50.10 FT, S 03*39'27" W 573.86 FT, S 55*53'50" W 500 FT TO E'LY LINE OF DICKMAN RD, N 34*06'10" W 616.89 FT TO POB9.92 AC +/- *** TIFA-C 86 SEV 23,873 *** ***TRANSFERRED TO TIFA D/2006 33,004***SPLIT ON 02/4/2014 FROM 13-54-005-070-00

Response to "Reason why applicant feels a zoning reclassification should be granted:"

Our response to item #4 on the Rezoning Application correlates with the Application Information criteria to be considered by the Planning Commission and City Council as outlined within the Rezoning – Information and Application document.

1) The requested zoning of IRT is the zoning classification included for this property in City of Springfield's Future Land Use Map of the City's Master Plan approved in January of 2026
2) The proposed development is compatible with the site's physical, geological and environmental features
3) The property has been listed for sale for over 920 days with no offers received as a B-3 zoning. The current and only offer received to purchase the property is based upon a successful conditional rezoning from the City to IRT.
4) Utilities as they currently exist are adequate to accommodate the proposed development
5) The proposed development will not generate the type of traffic that will have any negative impact on the current capability of the existing street system. Safety and efficiency of adjacent property owners and users of the proposed development will be taken into account when designing the site's ingress and egress points.
6) We believe that sufficient land zoned B-3 exists within the City of Springfield to accommodate current and future demand if this property is rezoned. This belief is supported by the lack of interest in this property as currently marketed and the results of the revised Master Plan study designating the potential future use of this property as IRI.
7) The boundaries of the proposed zoning district are reasonable in relationship to surroundings. Construction on the site will be able to meet the dimensional regulations of the proposed zoning district.
8) The proposed zoning is appropriate as demonstrated by the designation as IRT in the Future Land Use Map adopted in the City's Master Plan.
9) The proposed zoning will not create an isolated use as there are similar facilities and uses in the area.
10) The proposed zoning will not create an unplanned spot zone.

We have attached a photograph of an existing facility that is similar to what the interested buyers of this property propose to construct on this site.

Thank you for your consideration.











Calhoun GIS

Map Publication:
04/23/2026 3:59 PM

40m
200ft

powered by
FetchGIS

54-005-070-60

AVENUE A HOLDINGS INC
4100 W DICKMAN RD, SPRINGFIELD

Disclaimer: This map does not represent a survey or legal document and is provided on an "as is" basis. Calhoun County expresses no warranty for the information displayed on this map document.




Map 5

# Future Land Use

City of Springfield, Michigan

September 22, 2025

## LEGEND

- Single-Family Residential Neighborhood
- Single and Two-Family Residential
- Multi-Family Residential
- Manufactured Housing Community
- Corridor Mixed Use
- Downtown Mixed Use
- General Commercial
- Industiral-Commercial
- General Industrial
- Public/Semi-Public
- Military Base/Airport

0    1,500    3,000
Feet

Basemap Source. Michgan Center for Geographic Information, v. 17a
Data Source. Calhoun County 2124 McKenna 2024

 MCKENNA

**Chapter 3: Goals and Objectives**



## Goal 3:
# Commercial Development

### Objectives

1. Preserve and enhance the unique neighborhood retail and service areas in the City of Springfield.

2. Improve the general appearance of all commercial corridors in the city to create a more unified and welcoming business environment.

3 Continue to build and foster relationships with local business owners in the city to ensure future policies are complimentary with business operations, while also improving the aesthetic character and accessibility of commercial businesses.

4. Improve the safety of pedestrians and drivers crossing and traveling along all commercial corridors.

## Goal 4:
# Industrial Development/ Redevelopment

### Objectives

1. Promote economic development and employment opportunities through the re-use of underutilized industrial zoned properties and allow for a range of opportunities within lands zoned for industrial land use.

2. Provide flexibility that responds to market trends while maintaining quality of appearance and performance within industrially zoned areas.

3. Identify buildings or parcels which could provide incubator space for technology-based or other manufacturing and development industries, particularly start-up industries, suitable for sites outside industrial parks.

4. Ensure existing industrial businesses are considering environmental factors prior to any expansion of activities.

Affidavit of Publication

STATE OF MICHIGAN
County of Calhoun



## PUBLIC NOTICE
### CITY OF SPRINGFIELD
### PLANNING COMMISSION
### )F PUBLIC HEARING ON PETITION FOR
### ZONING RECLASSIFICATION

3BY GIVEN of a public hearing to be held by the City of Springfield Plan-
day, April 27, 2026, at 6:30PM. The public hearing will be held in Council
.nderson Municipal Building at 601 Avenue A, Springfield, Michigan 49037

.caring is to consider the following:

ation application from Judith Roelof, for the property at 4100 West Dick-
umber 54-005-070-60, to change the zoning classification from B-2 General
Industrial/Research/Technology.

attend the public hearing and comment on the request for zoning reclassi-
omments may be submitted to the City of Springfield administrative offices
City Clerk or City Manager, at 601 Avenue A, Springfield, Michigan 49037.
ive to this request is on file at the City Manager's Office and may be examined
ours 7AM to 6PM, Monday through Thursday. Alternatively, questions or
id to by contacting City Manager/Zoning Administrator Aaron Edlefson at
1@springfieldmich.com.

:suant to the requirements of Michigan Public Act 110 of 2006, as amended

ron Edlefson, City Manager/Zoning Administrator

Email: aedlefson@springfieldmich.com

Phone: (269) 441-9271

Jamie Brown

being duly sworn, that she is an Administrative Assistant of the
Battle Creek Shopper News, a newspaper printed and circulated
in said County of Calhoun; The Attached is a printed copy of a
notice which was published in said paper on the following dates,
to wit:

| April 9th | A D 2026 |
| | A.D. 20 |
| | A D 20 |
| | A D 20 |

Jamie Brown

Subscribed and sworn to before me this __9th__

day of _____ April ____ A D __2026____

Danielle E Echtinaw

Notary Public

DANIELLE E ECHTINAW
NOTARY PUBLIC-STATE OF MICHIGAN
COUNTY OF BARRY
My Commission Expires February 26th, 2031
Acting in the County of Calhoun



## PUBLIC NOTICE
### CITY OF SPRINGFIELD
### PLANNING COMMISSION
### NOTICE OF PUBLIC HEARING ON PETITION FOR ZONING RECLASSIFICATION

PUBLIC NOTICE IS HEREBY GIVEN of a public hearing to be held by the City of Springfield Planning Commission on Monday, April 27, 2026, at 6:30PM. The public hearing will be held in Council Chambers of the Susan L. Anderson Municipal Building at 601 Avenue A, Springfield, Michigan 49037.

The purpose of this public hearing is to consider the following:

- A zoning reclassification application from Judith Roelof, for the property at 4100 West Dickman Road, Parcel Number 54-005-070-60, to change the zoning classification from B-2 General Commercial to IRT Industrial/Research/Technology.

All interested persons may attend the public hearing and comment on the request for zoning reclassification approval. Written comments may be submitted to the City of Springfield administrative offices and to the attention of the City Clerk or City Manager, at 601 Avenue A, Springfield, Michigan 49037. Pertinent information relative to this request is on file at the City Manager's Office and may be examined during regular business hours 7AM to 6PM, Monday through Thursday. Alternatively, questions or comments can be responded to by contacting City Manager/Zoning Administrator Aaron Edlefson at (269) 441-9271 or aedlefson@springfieldmich.com.

This notice is published pursuant to the requirements of Michigan Public Act 110 of 2006, as amended.

Aaron Edlefson, City Manager/Zoning Administrator
Email: aedlefson@springfieldmich.com
Phone: (269) 441-9271

Date: April 6, 2026



## AFFIDAVIT OF MAILING

STATE OF MICHIGAN    }

COUNTY OF CALHOUN  }

I, Aaron Edlefson, City Manager/Zoning Administrator of the City of Springfield, being first duly sworn, do hereby state on Wednesday, April 8, 2026, I sent copies of the Notice for a Public Hearing in regard to a zoning reclassification for 4100 W. Dickman Road, to be held on Monday, April 27, 2026. The Notice was sent to property owners whose names and addresses appear on the attached sheets, in properly addressed envelopes with postage thereon prepaid for first class mail by depositing the same in the United States mail:

Aaron Edlefson
City Manager/Zoning Administrator

Subscribed and sworn to before me, this
8th day of April, 2026

Kristin R. Vogel
Calhoun County, Michigan
My Commission Expires: September 11, 2026

KRISTIN R VOGEL
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF CALHOUN
My Commission Expires September 11, 2026
Acting in the County of Calhoun



## PUBLIC NOTICE
### CITY OF SPRINGFIELD
### PLANNING COMMISSION
### NOTICE OF PUBLIC HEARING ON PETITION FOR ZONING RECLASSIFICATION

PUBLIC NOTICE IS HEREBY GIVEN of a public hearing to be held by the City of Springfield Planning Commission on Monday, April 27, 2026, at 6:30PM. The public hearing will be held in Council Chambers of the Susan L. Anderson Municipal Building at 601 Avenue A, Springfield, Michigan 49037.

The purpose of this public hearing is to consider the following:

- A zoning reclassification application from Judith Roolof, for the property at 4100 West Dickman Road, Parcel Number 54-005-070-60, to change the zoning classification from B-2 General Commercial to IRT Industrial/Research/Technology.

All interested persons may attend the public hearing and comment on the request for zoning reclassification approval. Written comments may be submitted to the City of Springfield administrative offices and to the attention of the City Clerk or City Manager, at 601 Avenue A, Springfield, Michigan 49037. Pertinent information relative to this request is on file at the City Manager's Office and may be examined during regular business hours 7AM to 6PM, Monday through Thursday. Alternatively, questions or comments can be responded to by contacting City Manager/Zoning Administrator Aaron Edlefson at (269) 441-9271 or aedlefson@springfieldmich.com.

This notice is published pursuant to the requirements of Michigan Public Act 110 of 2006, as amended.

Aaron Edlefson, City Manager/Zoning Administrator
Email: aedlefson@springfieldmich.com
Phone: (269) 441-9271

Date: April 8, 2026

LONGWALL HOLDING, LLC
PO BOX 25
SAINT JOSEPH, MI 49085

TOP GRADE AGGREGATES, LLC
3407 58TH STREET
HAMILTON, MI 49419

ALLEGAN LAGER COMPANY, LLC
PO BOX 1637
BATTLE CREEK, MI 49016

BRECHI LLC
3950 W DICKMAN RD
SPRINGFIELD, MI 49037-7550

AVENUE A HOLDINGS INC
2421 HUNTERS RUN
Kalamazoo, MI 49048-6118

UNITED STATES OF AMERICA
201 DECATUR AVENUE, BLDG 1A
GREAT LAKES, IL 60088

LOCAL UNION 445 BUILDING CORP
4071 W DICKMAN RD
SPRINGFIELD, MI 49037

CLARK 1 PROPERTIES, LLC
2861 CAPITAL AVENUE, SW
BATTLE CREEK, MI 49015

Exhibit 4

**FLOYD E. GATES JR.**
FGATES@BODMANLAW.COM
(616) 205-1860

BODMAN PLC
99 MONROE AVENUE NW
SUITE 300
GRAND RAPIDS, MICHIGAN 49503
616-205-4399 FAX
616-205-4330

**bodman**

May 13, 2026

***Via Email and First-Class Mail***
**Harry Burdett, Mayor,** hburdett@springfieldmich.com
**Christy Kincaid, Mayor Pro-tem,** ckincaid@springfieldmich.com
**Tracey Cummings,** tcummings@springfieldmich.com
**Brad Francis,** bfrancis@springfieldmich.com
**Adam Gregory,** agregory@springfieldmich.com
**Ron Wells,** rwells@springfieldmich.com
**Aaron Edlefson, City Manager,** aedlefson@springfieldmich.com
**Kris Vogel, City Clerk,** kvogel@springfieldmich.com

Re: Rezoning Request – Parcel No. 54-005-070-60 (4100 W. Dickman Road)

Dear City Council Members and City Manager Edlefson:

We represent the owner of Parcel No. 54-005-070-60, commonly known as 4100 W. Dickman Road, in connection with the pending application to rezone the property from B-2 General Commercial ("B2") to IRT Industrial/Research/Technology ("IRT").

This property has remained vacant and underutilized for a significant period of time. Despite being actively marketed for sale, the property failed to attract a viable development opportunity under its current B-2 zoning classification. After nearly ten years on the market, the owner has finally received an offer to purchase the property. That proposed sale, however, is expressly contingent upon the property being rezoned to IRT. The requested rezoning therefore presents a realistic, feasible, and immediate opportunity to return the property to productive use. The proposed purchaser intends to develop the site with high-end indoor storage and warehousing units.

Importantly, the application satisfies the City's rezoning criteria. As recognized in the staff analysis, the request is consistent with the Springfield Master Plan and the Future Land Use Map, which identifies the area as appropriate for Industrial-Commercial uses corresponding to the requested IRT classification. The proposal also advances Objective 1 of Goal 4 of the Springfield Master Plan by promoting productive reuse of an underutilized property. Further, City Manager/Zoning Administrator Aaron Edlefson's analysis determined that the applicable rezoning criteria support approval of the request, with the only identified concern relating to perceived market saturation of storage facilities. Significantly, even after considering that concern, Edlefson nevertheless recommended approval of the rezoning request.

Respectfully, the concern regarding "oversaturation" does not support denial of this application. The proposed development materially differs from traditional storage facilities operating in the area. This project targets a specialized customer base seeking enclosed storage for large recreational assets, including luxury RVs and sizeable watercraft with dimensions substantially different from conventional self-storage

May 13, 2026
Page 2

operations currently existing in the area. These facilities are designed more akin to warehousing and specialty storage than standard consumer self-storage. The project is intended to serve a distinct market segment that is presently underserved both within Springfield and surrounding communities.

Additionally, the analysis regarding existing storage occupancy does not fully account for the distinct market this project is intended to serve. The proposed development is expected to attract clientele from outside the immediate area, bringing additional visitors and economic activity into the community. Individuals utilizing these facilities will inevitably patronize local businesses, including restaurants, convenience stores, fuel stations, hardware suppliers, automotive retailers, and related service providers associated with recreational vehicle and boating ownership.

Most importantly, the practical realities surrounding this parcel cannot be ignored. While members of the community or Board may envision alternative uses for the property, the relevant inquiry is not what hypothetical development may be preferable in the abstract. The question is whether there exists a feasible and realistic development opportunity that is consistent with the City's zoning framework and planning objectives.

After nearly ten years on the market without meaningful development interest, this proposal represents precisely that opportunity. The choice before the Council is not between this proposal and some guaranteed future commercial development. Rather, the realistic choice is between approving a well-maintained, aesthetically attractive, and economically viable project that meets the rezoning requirements, or allowing the property to remain vacant and underutilized for another ten years.

The staff report correctly concludes that the applicable rezoning criteria overwhelmingly support approval. Upon review of the City's ordinances, Master Plan, and rezoning standards, it is clear that this application satisfies the requirements for rezoning to IRT. Accordingly, we believe approval of the application is appropriate and fully supported by the record.

We appreciate the Council's consideration of this matter and look forward to the May 18, 2026 meeting and to seeing this application approved consistent with the City's standards and staff recommendation. This is a straightforward application that satisfies the City's requirements for approval. To the extent the application is denied, I have recommended to my client that we proceed with legal action to challenge that decision. Thank you for your time and consideration.

Very truly yours,

Floyd E. Gates Jr.

**FEG:dtgl**

cc: Debani T. Gordon Lehman, dgordon@bodmanlaw.com

**Exhibit 5**

Subject:                              FW: 4100 W. Dickman Road

From: **Ron Wells** <rwells@springfieldmich.com>
Date: Mon, May 11, 2026 at 9:45 AM
Subject: Re: 4100 W. Dickman Road
To: lisa laidler <pllrplus4@gmail.com>

Good morning Lisa,

Thank you for your email.

Unfortunately, I will have to decline.

All my best,

**From:** lisa laidler <pllrplus4@gmail.com>
**Sent:** Thursday, May 7, 2026 2:20 PM
**To:** Ron Wells <rwells@springfieldmich.com>
**Cc:** tjbeekcc@gmail.com <tjbeekcc@gmail.com>
**Subject:** 4100 W. Dickman Road

Good afternoon Mr. Wells,

I had the opportunity to speak briefly to the Springfield City Council at the meeting held on May 4th regarding the re-zoning request for the property located at 4100 West Dickman Road. The format did not allow for follow up questions and as you probably noticed, I was quite nervous as I'm not a public speaker.

I know that you did not support the request in the planning commission meeting, however, there are a few key points that I would like to share with you ahead of the May 18th vote in hopes that you might reconsider. I, along with Tom Beuchler, would sincerely appreciate the opportunity to meet with you next week to review a rendering of what the proposed facility and site layout could look like and to address any questions or concerns you may have related to their plans.

I do not anticipate that we would need more than 30 minutes of your time.

1

Please let me know any days and times that could work for you.


Thank you,


Lisa Laidler

616-293-7034

## Ethan Moody

From:          Brad Francis
Sent:          Monday, May 11, 2026 4:59 PM
To:            lisa laidler
Subject:       Re: 4100 W. Dickman Road

Hi Lisa,

I know we weren't able to ask questions because of the format of the last meeting, but that won't be the case when the ordinance comes up for a vote. We'll be able to engage more directly then.

I've been in touch with the City Manager, Aaron. I think you met with him, the Mayor, and Tina from City Hall? Meeting in person would be challenging—I work full-time outside of the City Council so I don't have the availability of the city employees you met with—but if you have any more information for me to consider, I will definitely look at it before the next meeting.

You'll get the chance to field questions from the entire Council at that point. Let me know if there's anything else you need. Thanks!

From: lisa laidler <pllrplus4@gmail.com>
Sent: Thursday, May 7, 2026 2:16 PM
To: Brad Francis <bfrancis@springfieldmich.com>
Subject: 4100 W. Dickman Road

Good afternoon Mr. Francis,

I had the opportunity to speak briefly to the Springfield City Council at the meeting held on May 4th regarding the re-zoning request for the property located at 4100 West Dickman Road. The format did not allow for follow up questions and as you probably noticed, I was quite nervous as I'm not a public speaker.

There are a few key points that I would like to share with you ahead of the May 18th vote. I, along with Tom Beuchler, would sincerely appreciate the opportunity to meet with you next week to review a rendering of what the proposed facility and site layout could look like and to address any questions or concerns you may have related to their plans.

I do not anticipate that we would need more than 30 minutes of your time.

Please let me know any days and times that could work for you.

Thank you,

Lisa Laidler
616-293-7034

1

## Ethan Moody

| | |
|---|---|
| From: | Tom Beuchler <tjbeekcc@gmail.com> |
| Sent: | Monday, May 11, 2026 8:20 AM |
| To: | Christy Kincaid; Lisa Laidler |
| Subject: | Re: 4100 W. Dickman Road |

Good morning, Christy and thank you for your reply. I will be sending an email later this week with additional information regarding our proposed development of the property. Once you receive it, please feel free to reach out to me by reply or telephone, if you have any questions or concerns.

Thank you for your time and service.

Tom Beuchler
256 Jacaranda Dr
Battle Creek, MI 49015
Cell Phone: 269-209-5398
E Mail: tjbeekcc@gmail.com

From: Christy Kincaid <ckincaid@springfieldmich.com>
Sent: Thursday, May 7, 2026 7:32 PM
To: lisa laidler <pllrplus4@gmail.com>
Cc: tjbeekcc@gmail.com <tjbeekcc@gmail.com>
Subject: Re: 4100 W. Dickman Road

Hi Lisa and Tom,

Good to hear from you. Unfortunately, I work full-time and all of my evenings for next week are filled with other meetings or family obligations. If you would like to email any materials over, I would be happy to review it before the May 18th meeting.

Christy

Get Outlook for iOS

From: lisa laidler <pllrplus4@gmail.com>
Sent: Thursday, May 7, 2026 2:13 PM
To: Christy Kincaid <ckincaid@springfieldmich.com>
Cc: tjbeekcc@gmail.com <tjbeekcc@gmail.com>
Subject: 4100 W. Dickman Road

Good afternoon Ms. Kincaid,

I had the opportunity to speak briefly to the Springfield City Council at the meeting held on May 4th regarding the re-zoning request for the property located at 4100 West Dickman Road. The format did not allow for follow up questions and as you probably noticed, I was quite nervous as I'm not a public speaker.

There are a few key points that I would like to share with you ahead of the May 18th vote.  I, along with Tom Beuchler, would sincerely appreciate the opportunity to meet with you next week to review a rendering of what the proposed facility and site layout could look like and to address any questions or concerns you may have related to their plans.

I do not anticipate that we would need more than 30 minutes of your time.

Please let me know any days and times that could work for you.

Thank you,

Lisa Laidler
616-293-7034

2

| From: | Christy Kincaid |
|---|---|
| To: | Aaron Edlefson |
| Subject: | Re: 4100 W. Dickman Road |
| Date: | Friday, May 8, 2026 7:57:58 AM |

Okay! Thank you. Unfortunately (or fortunately), I have meetings or family obligations every day after work next week and the weekend is slammed with boy scouts and soccer. So, I just asked if she would be willing to send the materials over.

Christy

Get Outlook for iOS

**From:** Aaron Edlefson <aedlefson@springfieldmich.com>
**Sent:** Thursday, May 7, 2026 9:47:03 PM
**To:** Christy Kincaid <ckincaid@springfieldmich.com>
**Subject:** Re: 4100 W. Dickman Road

Correction, met with her this week.

Aaron Edlefson, MPA
*City Manager*
**City of Springfield**
601 Avenue A
Springfield, MI 49037
Office: (269) 441-9271
Fax: (269) 965-0114
aedlefson@springfieldmich.com
www.springfieldmich.com

CONFIDENTIALITY NOTICE: This email is confidential and is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. The City of Springfield will not accept responsibility for information, errors or omissions contained in it. If you received this email in error, please inform us by reply. No legally binding commitments are, or will be, created by this email. All email received and sent by us may be monitored to protect the business interests of the City of Springfield.



**From:** Aaron Edlefson <aedlefson@springfieldmich.com>
**Sent:** Thursday, May 7, 2026 9:41:35 PM
**To:** Christy Kincaid <ckincaid@springfieldmich.com>
**Subject:** Re: 4100 W. Dickman Road

Hi Christy,

I did not receive that email, but did meet with her last week with Harry and Tina.

**Aaron Edlefson, MPA**
*City Manager*
**City of Springfield**
601 Avenue A
Springfield, MI 49037
Office: (269) 441-9271
Fax: (269) 965-0114
aedlefso_@spr_ʌ_eldɪʌɪcʰ_com
www.springfieldmich.com

CONFIDENTIALITY NOTICE: This email is confidential and is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. The City of Springfield will not accept responsibility for information, errors or omissions contained in it. If you received this email in error, please inform us by reply. No legally binding commitments are, or will be, created by this email. All email received and sent by us may be monitored to protect the business interests of the City of Springfield.

 Springfield

---

**From:** Christy Kincaid <ckincaid@springfieldmich.com>
**Sent:** Thursday, May 7, 2026 6:12:02 PM
**To:** Aaron Edlefson <aedlefson@springfieldmich.com>
**Subject:** Fw: 4100 W. Dickman Road

Did you receive this email?

Christy

Get Outlook for iOS

---

**From:** lisa laidler <pllrplus4@gmail.com>
**Sent:** Thursday, May 7, 2026 2:12:53 PM
**To:** Christy Kincaid <ckincaid@springfieldmich.com>
**Cc:** tjbeekcc@gmail.com <tjbeekcc@gmail.com>
**Subject:** 4100 W. Dickman Road

Good afternoon Ms. Kincaid,

I had the opportunity to speak briefly to the Springfield City Council at the meeting held on May 4th regarding the re-zoning request for the property located at 4100 West Dickman Road. The format did not allow for follow up questions and as you probably noticed, I was quite nervous as I'm not a public speaker.

There are a few key points that I would like to share with you ahead of the May 18th vote.  I, along with Tom Beuchler, would sincerely appreciate the opportunity to meet with you next week to review a rendering of what the proposed facility and site layout could look like and to address any questions or concerns you may have related to their plans.

I do not anticipate that we would need more than 30 minutes of your time.

Please let me know any days and times that could work for you.

Thank you,

Lisa Laidler

616-293-7034

# Exhibit 6



## MINUTES OF THE REGULAR MEETING OF
## THE COUNCIL OF THE CITY OF SPRINGFIELD
## MAY 18, 2026

I    CALL TO ORDER
Mayor Burdett called the regular meeting of the Council of the City of Springfield to order at 6:30 p.m.

II.   PLEDGE OF ALLEGIANCE
Mayor Burdett led the Pledge of Allegiance.

III.  ROLL CALL
Present: Council Members Cummings, Francis, Gregory, Wells, Mayor Pro-tem Kincaid and Mayor Burdett.

Also Present:  Aaron Edlefson – City Manager, Chaz Wilkey – Public Works Director, Kris Vogel – City Clerk, and Tina Seaman – Code Enforcement/Building Official/Deputy Zoning Administrator.

IV.  APPROVAL OF MINUTES – May 4, 2026
It was moved by Kincaid, seconded by Gregory and unanimous that the minutes of the May 4, 2026, regular meeting, be approved subject to any additions or corrections.

V.   CITIZEN COMMENTS – AGENDA ITEMS ONLY
Amy Evans, 51 Hickory Nut Lane, Springfield – read a prepared letter expressing her opposition of rezoning the property at 4100 W. Dickman Road.

VI.  MONTHLY DEPARTMENTAL REPORTS
    1. City Manager's Report
Aaron Edlefson, City Manager, included his report in the packet for the Council's review and went over the highlights of it.  City Manager Edlefson thanked the Council for the certificate presented to him recognizing his one year anniversary with the City of Springfield.

    2. Building/Code Enforcement Department – April  (T. Seaman)
Mayor Burdett asked if there were any questions regarding the Building/Code Enforcement Department reports presented by Tina Seaman?

Being no questions, the reports will be filed as presented.

    3. Law Enforcement Department – April (C. Smith, Lieutenant CCSO)
Mayor Burdett asked if there were any questions regarding the Law Enforcement Department report presented by Curtis Smith, Lieutenant CCSO?

Being no questions, the report will be filed as presented.

City Council Minutes
May 18, 2026
Page 2

4. Fire Department – April (C. Childers, Office Manager)
Mayor Burdett asked if there were any questions regarding the Fire Department report presented by Cris Childers, Public Safety Office Manager?

Being no questions, the report will be filed as presented.

5. Public Works Department – April (C. Wilkey)
Mayor Burdett asked if there were any questions regarding the Public Works Department report presented by Chaz Wilkey, Public Works Department Director?

Being no questions, the report will be filed as presented.

VII. BUSINESS
1. Bills In Line
It was moved by Mayor Pro-tem Kincaid, seconded by Council Member Gregory, and unanimously approved that the checks be drawn from the various accounts and the bills be paid.

2. Approve – Resolution to Declare Intent to Reimburse
Mayor Burdett stated this resolution declares the intent to reimburse.

It was moved by Council Member Wells seconded by Council Member Cummings that the following resolution, read in part, be adopted (a complete copy of the resolution is on file in the City Clerk's office):

**Resolution #32-26**
WHEREAS, the City Council of the City of Springfield, County of Calhoun, State of Michigan (the "City"), has determined it to be necessary for the public health, safety and welfare of the City and its residents to acquire, construct, furnish, and equip energy conservation improvements at various city buildings and facilities (the "Project"); and

WHEREAS, the City intends to enter into a tax exempt lease financing or other municipal debt, in an estimated principal amount of $2,275,000; and

WHEREAS, the City intends at this time to state its intentions to be reimbursed from proceeds of the debt for any Project expenditures undertaken by the City prior to issuance of the debt.

NOW, THEREFORE, BE IT RESOLVED THAT:

1.     The City makes the following declarations for the purpose of complying with the reimbursement rules of Treas. Reg. § 1.150-2 pursuant to the Internal Revenue Code of 1986, as amended.

Ayes: Council Members Cummings, Francis, Gregory, Wells, and Mayor Burdett.
Nays: Mayor Pro-tem Kincaid.
Resolution adopted.

City Council Minutes
May 18, 2026
Page 3

3. Authorize – City Manager to Execute Sale of City Owned Property
Mayor Burdett stated this resolution would authorize the City Manager to execute the sale of City owned property.

It was moved by Council Member Gregory seconded by Mayor Pro-tem Kincaid that the following resolution be adopted:

**Resolution #33-26**
RESOLVED BY THE COUNCIL OF THE CITY OF SPRINGFIELD to authorize Aaron Edlefson, City Manager, to enter into a sales agreement and sign all closing related documents, with Ann Gregory for vacant parcel on N. 17th Street (13-54-050-046-00) in the amount of $150.00.

> **LEGAL DESCRIPTION·**
> SP CITY, L. D. BATTS RIVERSIDE PK, LOT 79

All ayes. Resolution adopted.

4. Approve – Purchase of Pressure Reducing Valve Monitoring System
Mayor Burdett stated this resolution would approve the purchase of a pressure reducing valve monitoring system.

It was moved by Council Member Cummings seconded by Mayor Pro-tem Kincaid that the following resolution be adopted:

**Resolution #34-26**
RESOLVED BY THE COUNCIL OF THE CITY OF SPRINGFIELD to authorize the purchase of a pressure reducing valve monitoring system from Ferguson Waterworks, in an amount not to exceed $17,729; said expenditure to be made from the FY26-27 budget.

All ayes. Resolution adopted.

5. Adopt – Ordinance to Approve Zoning Reclassification – Avenue A/Harmony Lane
Mayor Burdett stated this would adopt an ordinance for a zoning reclassification of a parcel of land on the corner of Avenue A/Harmony Lane.

It was moved by Mayor Pro-tem Kincaid seconded by Council Member Gregory that the following ordinance be adopted by title only (a complete copy of the ordinance is on file in the City Clerk's office):

**Ordinance #02-26**
AN ORDINANCE TO AMEND THE CITY OF SPRINGFIELD ZONING MAP AS ADOPTED BY THE CITY OF SPRINGFIELD ZONING ORDNANCE BY REZONING PARCEL NUMBER 54-240-054-02, CITY OF SPRINGFIELD, CALHOUN COUNTY, MICHIGAN

All ayes. Ordinance adopted by title only.

City Council Minutes
May 18, 2026
Page 4

6. Adopt – Ordinance to Approve Zoning Reclassification – 257 N. 20th Street
Mayor Burdett stated this would adopt an ordinance for a zoning reclassification of 257 N. 20th Street.

It was moved by Council Member Wells seconded by Council Member Cummings that the following ordinance be adopted by title only (a complete copy of the ordinance is on file in the City Clerk's office):

**Ordinance #03-26**
AN ORDINANCE TO AMEND THE CITY OF SPRINGFIELD ZONING MAP AS ADOPTED BY THE CITY OF SPRINGFIELD ZONING ORDNANCE BY REZONING PROPERTY AT 257 NORTH 20TH STREET, CITY OF SPRINGFIELD, CALHOUN COUNTY, MICHIGAN

All ayes. Ordinance adopted by title only.

7. Adopt – Ordinance to Approve Zoning Reclassification – 4100 W. Dickman Road
Mayor Burdett stated this would adopt an ordinance for a zoning reclassification of 4100 W. Dickman Road.

It was moved by Council Member Gregory seconded by Council Member Francis that the following ordinance be adopted by title only (a complete copy of the ordinance is on file in the City Clerk's office):

**Ordinance #04-26**
AN ORDINANCE TO AMEND THE CITY OF SPRINGFIELD ZONING MAP AS ADOPTED BY THE CITY OF SPRINGFIELD ZONING ORDNANCE BY REZONING PROPERTY AT 4100 WEST DICKMAN ROAD, CITY OF SPRINGFIELD, CALHOUN COUNTY, MICHIGAN

Stephanie Wiltgren, 8916 S. 8th Street, Kalamazoo, seller's agent with Callander Commercial. This property has been actively marketed for nine years and she feels the buyer they have in hand would be beneficial for the community.

Travis Beuchler, 16 W. Minges, Battle Creek, thanked the Council for their time and consideration of the rezoning of 4100 W. Dickman Road. Mr. Beuchler indicated there are two parcels included in the potential sale, the other being 4120 W. Dickman Road, which is not part of the request for rezoning. If the sale goes through he plans to develop the property at 4120 W. Dickman Road as well and is open to ideas that will be most beneficial to him and the City. He stated that it is his understand that the rezoning is aligned to the City's Future Land Use plan and would be a win to the City and all involved.

Brett Long, 12137 3 ½ Mile Road, Battle Creek, stated he owns the storage facility adjacent to this property. He previously was interested in purchasing the property, but didn't because it wasn't zoned property. He stated he is not against competition, but there are already quite a few storage units in the City and he's opposed to the rezoning. He doesn't feel warehousing is the best use of the property.

Tom Beuchler, 256 Jacaranda Drive, Battle Creek, stated he's been meeting with officials

City Council Minutes
May 18, 2026
Page 5

of the City of Springfield over the last five months about the possibility of purchasing and developing the property at 4100 W. Dickman Road. Initially it appeared the property would be identified as IRT if the Future Land Use map was adopted, as drafted in January. But, when the Planning Commission met in April there were concerns that the City didn't want to be known as a city of warehouses and there were comments that some would like to see other types of developments allowed in the current zoning or within the IRT zoning such as a hotel, café, or coffee shop. While it's fine to dream about what could be on this property, you can't force developers to build a specific type of facility on a specific piece of property. It is obvious in the minds of developers and business owners that the risk versus the chance of success at this location is not justified as is evident by how long it's been sitting vacant. The City Council has the opportunity to welcome new development to the city that will generate tax revenue, construction jobs, and business to the local restaurants and retailers. Mr. Beuchler encouraged the Council to not let this opportunity pass in the interest of something that may not ever come to fruition.

Floyd Gates, 99 Monroe Avenue, NW, Grand Rapids, stated he is an attorney for the applicant. He noted the rezoning application for 4100 W. Dickman Road satisfies the City's requirements and aligns with the Future Land Use map. The City Manager/Zoning Administrator reviewed the application and ultimately recommended approval. This is not a situation where the Council is being asked to bend the rules or approve something inconsistent with the City's planning objectives. The standards have been reviewed and the records support approval. Mr. Gates stated he understands there were some concerns raised about over saturation of storage facilities within the City, but respectfully they do not believe that concern applies here as this is not a traditional self-storage project and is a high-end Class A RV storage facility. There is no such use in the City of Springfield or even the City of Battle Creek. These units would have private access, with climate control, and pest control as these types of vehicles can not be outside in the elements.

Tom Crandell, 517 Marie Avenue, Battle Creek, indicated he tried to look at this rezoning request from a clinical point. Others have mentioned some of the great businesses that they would like to see located on this parcel and we would all like to see that. But, unless you own a small business there are a lot of things people don't know. Tom shared some stats on small businesses and their struggles for success, which are some of the very same businesses that we'd like to see. Tom encouraged the City to support the rezoning request.

Scott Roelof, 202 Kensington Circle, Battle Creek, stated that everyone wants to see the City of Springfield grow; the rezoning and sale of this parcel of land is a kindling to start that growth!

Mayor Pro-tem Kincaid asked if the Council approves the IRT zoning tonight and the sale falls through can we make the rezoning contingent on the sale? Tina Seaman, Deputy Zoning Administrator, stated it could be rezoned and would just need to go back through the process again.

Ayes: Mayor Pro-tem Kincaid.
Nays: Council Members Cummings, Francis, Gregory, Wells and Mayor Burdett.
Ordinance defeated.

City Council Minutes
May 18, 2026
Page 6

8.  Deny – Tentatively the Request to Rezone of 4100 W. Dickman Road
Mayor Burdett stated the resolution would tentatively deny the rezoning request of 4100 W. Dickman Road until the next meeting.

It was moved by Mayor Burdett seconded by Council Member Gregory that the following resolution be adopted:

**Resolution #35-26**
RESOLVED BY THE COUNCIL OF THE CITY OF SPRINGFIELD to tentatively deny the request to amend the City of Springfield Zoning Ordinance by rezoning the property of 4100 West Dickman Road and direct the Zoning Administrator and City Attorney to prepare a resolution of denial for consideration at the next City Council meeting.

Ayes:  Council Members, Cummings, Francis, Gregory, Wells and Mayor Burdett.
Nays:  Mayor Pro-tem Kincaid.
Resolution adopted.

VIII. COUNCIL COMMENTS
Council Members congratulated City Manager Edlefson on his one year anniversary with the City of Springfield.

IX.  CITIZEN COMMENTS
City Manager Edlefson stated he appreciates the guidance and leadership of the City Council and staff over the last year and he looks forward to many more.

City Clerk Vogel stated that City Hall will be closing this Thursday at 3:00 p.m. and will reopen the following Tuesday at 7:00 a.m.  In addition, due to the Memorial Day holiday, Waste Management will be picking up on Tuesday.

City Clerk Vogel there are elections in August and November this year.  As part of the November election we will have three City Council seats that will be on the ballot.  Anyone interested in running for reelection or election for those seats can pick up a nominating petition starting Monday, June 1st and those are due back no later than 4:00 p.m. on Tuesday, July 21st.

X.  ADJOURNMENT
Mayor Burdett adjourned the regular meeting at 7:10 p.m

Kris Vogel, MMC/MiPMC
City Clerk

Harry Burdett
Mayor

**Exhibit 7**

# SPRINGFIELD CITY COUNCIL MEETING

## May 18, 2026

TRANSCRIBED BY:   JANENE CLEARY, Michigan CSR No. 16359

Springfield City Council Meeting 5-18-2026

APPEARANCES


COUNCIL MEMBERS:
Harry Burdett, Mayor
Christy Kincaid, Mayor Pro-tem
Tracey Cummings
Brad Francis
Adam Gregory
Ron Wells
Bernice Klein


Stephanie Wiltgren
Travis Beuchler
Brett Long
Tom Beuchler
Floyd Gates
Tom Crandell
Scott Roelof
Aaron Edelfson
Chaz Wilkey
Kris Vogel
Tina Seaman
APPEARED IN PERSON




        (OTHERS AS MAY APPEAR IN THE TRANSCRIPT.)

Springfield City Council Meeting 5-18-2026

INDEX OF PROCEEDINGS

|                                | PAGE |
|--------------------------------|------|
| Proceedings                    | 4    |
| Certificate of Transcriptionist | 38   |

Springfield City Council Meeting 5-18-2026

PROCEEDINGS

MR. BURDETT:  I call the city of Springfield Council to order.  All eyes above you.

I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all.

City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings.

MS. CUMMINGS:  Here.

MS. VOGEL:  Francis?

MR. FRANCIS:  Here.

MS. VOGEL:  Gregory?

MR. GREGORY:  Here.

MS. VOGEL:  Wells?

MR. WELLS:  Here.

MS. VOGEL:  Mayor Pro-tem Kincaid?

MS. KINCAID:  Here.

MS. VOGEL:  And Mayor Burdett?

MR. BURDETT:  Here.

Next, we are going to approve the minutes of the regular meeting, May 4, 2026.

MS. KINCAID:  Mayor?

MR. BURDETT:  Pro-tem Kincaid?

MS. KINCAID:  I move to approve the minutes of the regular meeting of May 4, 2026, subject to any corrections or

Springfield City Council Meeting 5-18-2026

additions.

MR. GREGORY:  Second.

MR. BURDETT:  Moved by Pro-tem Kincaid, seconded by Councilman Gregory.  Any questions or comments on the minutes?

Hearing none, City Clerk call roll, please.

MS. VOGEL:  Council Members Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Mayor Pro-tem Kincaid?

MS. KINCAID:  Yes.

MS. VOGEL:  And Mayor Burdett?

MR. BURDETT:  Yes.

At this time, I'm going to take Mayor's prerogative and ask the city manager to come up, please.  I've got a certificate of recognition, certified and proudly presented to Aaron Edelfson on Monday, May 18, 2026.  Thank you for one year of dedicated service to the city of Springfield.

Next up, citizens comments on agenda items only.

State your name and address, and there's a three-minute time limit.  Let everybody know.

Springfield City Council Meeting 5-18-2026

MS. EVANS:  Good evening.  My name is Amy Evans.  I live at 51 Hickory Nut Lane here in Springfield.  Dear City Council Members and Mayor, I'm addressing you regarding business item number seven, ordinance to approve zoning reclassification of 4100 West Dickman Road from B-2 to IRT.

As a Springfield resident who lives close to 4100 West Dickman Road, I am not in favor of this rezoning.  Per the 2019 master plan, Springfield has 536 acres of IRT land.  Do we really need more?

We only have 60 acres of B-1 local commercial, 241 acres of B-2 general commercial, and 12 acres of CR commercial residential.  If there is IRT land available in our city, we shouldn't rezone more.  It seems industrial businesses should be off the beaten path, not at important intersections or along major corridors, which should be reserved for commercial uses that residents and visited -- visitors can frequent.

Think of your favorite places to visit.  Is industrial development out in the open in a prominent part of town, or tucked away so only those who go there see it.

The 2026 master plan categorizes that parcel as industrial commercial.  Regarding current conditions, it states the industrial commercial use category contains light industrial buildings that are similar to existing buildings in the area, for planned conditions, it reads, It is important to distinguish the type of commercial development that is desirable in the

Springfield City Council Meeting 5-18-2026

industrial commercial area. Commercial development including department stores, pharmacies, specialty groceries, and general groceries would complement the character of the city.

Additionally, commercial uses such as breweries and indoor entertainment like bowling, laser tag, mini golf, and indoor recreation, et cetera, should be allowed even though those uses tend to require more space or have industrial light considerations such as screening or processing for breweries.

My husband and I have each lived in Springfield over half our lives. We would love to feel pride in our community and see it as vibrant, flourishing and beautiful. Please help us, our neighbors, fellow residents, and current businesses by keeping the zoning as B-2, general commercial, which aligns with the intent of our master plan and zoning ordinance, and the future plans chosen for our community.

Thank you for your time and consideration.

MR. BURDETT: Thank you.

Next up we have monthly department reports. Yeah. First we have the City Manager reports.

City Manager Edelfson.

MR. EDELFSON: Good evening, ladies and gentlemen.

First of all, thank you for the certificate. It does mean a lot. And, well, not to get on my soap box, but appreciate the support you've all offered me over the last year. And then the staff who have made it a relatively easy

Springfield City Council Meeting 5-18-2026

transition, their knowledge and their drive to serve the city has been huge in the last year. So, really, thanks to you. Thanks to the staff here, the city, and the citizens as well, who are also very engaged, as I know, when they come into my office and want to talk.

So just going through my report. We have Veregy coming up with the -- our transition to some energy-efficient solutions. So we have a resolution tonight that will allow us to reimburse ourselves, essentially, for any funding that we spent before the financing is approved, if it is approved. So that's on the agenda tonight.

And then the master plan closeout. I know that was a long and arduous journey, but we made it. And hopefully in the next day or two, we get that final closeout letter, and we are done with the master plan and the 20th Street corridor.

And then tomorrow, myself and Chaz will be meeting with the county to talk about some of the improvements that we're making at Springfield Schools Memorial Park, Begg Park. We're excited to see some of those come to fruition, utilizing some of our funding from the parks millage, discussing with the county on how we can further utilize those funds in the future, so look forward to that.

That's all I have. Thank you.

MR. BURDETT: Any questions or comments from the city council?

Springfield City Council Meeting 5-18-2026

Next up is billing and code enforcement, Department of (indiscernible).  Tina Seaman's report, Tina's here, do you have any questions or comments for her?

Okay.  Law Enforcement Department report for April, Lieutenant Smith's report.  Questions or comments on that report?

Fire Department report for April, the Cris Childers report.  Any questions or comments on that report?

All right.  And Public Works report for April, Chaz Wilkey's report.  Chaz is with us this evening.  Do you have Any requests or comments on his report?  (Indiscernible).

Next up, we have bills in line.

MS. KINCAID:  Mayor?

MR. BURDETT:  Pro-tem Kincaid.

MS. KINCAID:  I move to draw the checks from the various accounts and pay our bills.

MR. GREGORY:  Second.

MR. BURDETT:  Moved by Pro-tem Kincaid and seconded by Councilman Gregory.

Any questions or comments on the bills in line?

Hearing none, City Clerk call role, please.

MS. VOGEL:  Counsel Members Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

Springfield City Council Meeting 5-18-2026

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Mayor Pro-tem Kincaid?

MS. KINCAID:  Yes.

MS. VOGEL:  And Mayor Burdett?

MR. BURDETT:  Yes.  That's okay.

Resolution to approve the -- to declare the intent to reimburse.

Councilman Wells, could you present this, please?

MR. WELLS:  Sure.  City of Springfield, Calhoun County, Michigan.  Ordinance Number 03-26, adoption by --

MR. BURDETT:  No.  No.  No.  The resolution.

MR. WELLS:  I'm sorry.  Which one?

MR. BURDETT:  The resolution in (indiscernible).

MR. WELLS:  This one here?

MR. BURDETT:  Nope.  The one I gave you.

MR. WELLS:  Resolution declaring --

MR. BURDETT:  That's the one, yeah.

MR. WELLS:  Sorry about that.

MR. BURDETT:  That's okay.  You had all the papers.

MR. WELLS:  I had too many papers here.  Sorry about that.  Yeah.  I got them backwards.  Resolution 32-26, Resolution Declaring the Intent to Reimburse.

Springfield City Council Meeting 5-18-2026

Whereas, the City -- Council of the city of Springfield, County of Calhoun, state of Michigan, the City, has determined it to be necessary for the public health, safety and welfare of the City and its residents to acquire, construct, furnish, and equip energy conservation improvements at various city buildings and facilities, the project; and, whereas, the City intends to enter into a tax exempt lease financing or other municipal debt, in an estimated principal amount of $2,275,000; and, whereas, the City intends, at this time, to state its intentions to be reimbursed from the proceeds of the debt for any project expenditures undertaken by the City prior to issuance of the debt.

Now, therefore, be resolved that number one, the City makes the following declarations for the purpose of complying with the reimbursement rules of Treasury Regulation 1 --

MR. BURDETT: No. No. No. (Indiscernible).

MR. WELLS: Sorry.

MR. BURDETT: Just what's circled.

MR. WELLS: Just what's circled?

MR. BURDETT: Correct.

MR. WELLS: Again, that is circled. Sorry.

MR. BURDETT: Okay. (Indiscernible) that right there. I apologize. Continue.

MR. WELLS: Complying with the reimbursement rules of the Treasury Regulation 1.1510-2 pursuant to the Internal

Springfield City Council Meeting 5-18-2026

Revenue Code of 1986 as amended and listed herein.  I so move.

MS. CUMMINGS:  Second.

MR. BURDETT:  (Indiscernible).  Okay.  Moved by Councilman Wells, seconded by Councilman Cummings.

Any questions or comments on this resolution?

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Kincaid?

MS. KINCAID:  Yes.

MS. VOGEL:  And Cummings?

MS. CUMMINGS:  Yes.

MR. BURDETT:  Next up, a resolution by city manager to execute sale of city-owned property.

Councilman Gregory, could you present this please?

MR. GREGORY:  Yes.  Resolution Number 33-26, resolved by the Council of the city of Springfield to authorize Aaron Edelfson, City Manager, to enter into a sales agreement and sign all closing-related documents with Ann Gregory vacant

Springfield City Council Meeting 5-18-2026

parcel on North 17th Street in the amount of $150, and I so move.

MS. KINCAID:  Second.

MR. BURDETT:  Moved by Councilman Gregory, seconded by Pro-tem Kincaid.

Any questions or comments on this resolution.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Kincaid?

MS. KINCAID:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  And Wells?

MR. WELLS:  Yes.

MR. BURDETT:  Okay.  Next up we have resolution to purchase a pressure reducing valve monitoring system.

Council Member Cummings, would you present this, please?

MS. CUMMINGS:  Yes, I will.  Resolution 34-26, resolved by the Council of the city of Springfield to authorize

Springfield City Council Meeting 5-18-2026

the purchase of a pressure reducing valve monitoring system from Ferguson Water -- Waterworks in the amount not to exceed 17,729, said expenditure to be made from the FY26-27 budget, and I so move.

MS. KINCAID:  Second.

MR. BURDETT:  Moved by Councilman Cummings, seconded by Pro-tem Kincaid.

Any questions or comments on this resolution.

Hearing none, City Clerk call role, please.

MS. VOGEL:  Council Members Kincaid?

MS. KINCAID:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  And Gregory?

MR. GREGORY:  Yes.

MR. BURDETT:  Next up we have ordinance -- adoption to approve zoning reclassification of Avenue A and Harmony Lane.

Pro-tem Kincaid, would you admit this adopt -- adoption by title only, please?

Springfield City Council Meeting 5-18-2026

MS. KINCAID:  Yes, Mayor.

City of Springfield, Calhoun County, Michigan, Ordinance Number 2-26, adoption by title only, and adoption to amend the city of Springfield zoning map as adopted by the city of Springfield zoning ordinance by rezoning Parcel Number 54-240-054-02, city of Springfield, Calhoun County, Michigan, and I so move.

MR. GREGORY:  Second.

MR. BURDETT:  Moved for adoption by Pro-tem Kincaid, seconded by Councilman Gregory.

Any questions or comments on the Council on this one.

Is there any questions or comments on this from the citizens?

Okay.  City Clerk, call the roll, please.

MS. VOGEL:  Council Members Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Kincaid?

MS. KINCAID:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  And Wells?

Springfield City Council Meeting 5-18-2026

MR. WELLS:  Yes.

MR. BURDETT:  Okay.  Next up, ordinance to approve zoning reclassification of 257 North 20th Street.

Councilman Wells, would you read this by title only and adoption, please?

MR. WELLS:  Yes, Mayor.

City of Springfield, Calhoun County, Michigan, Ordinance Number 03-26, adoption by title only.  An ordinance to amend the city of Springfield zoning map as adopted by the city of Springfield zoning ordinance by rezoning property at 257 North 20th Street, city of Springfield, Calhoun County, Michigan, and I so move.

MS. CUMMINGS:  Second.

MR. BURDETT:  Moved by Councilman Wells, seconded by Councilman Cummings.

Any questions for Council -- Council members?  Any comments or questions on -- on the citizens on this one.

Okay.  Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

Springfield City Council Meeting 5-18-2026

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Kincaid?

MS. KINCAID:  Yes.

MS. VOGEL:  And Gregory?

MR. GREGORY:  Yes.

MR. BURDETT:  Next up, an ordinance to approve zoning reclassification 4100 West Dickman Road.

Councilman Gregory, would you introduce by title only for adoption, please?

MR. GREGORY:  Yes.

City of Springfield, Calhoun County, Mi -- Michigan, Ordinance Number 4-26.  An ordinance to be amended -- to -- an ordinance to amend the city of Springfield zoning map as adopted by the city of Springfield zoning ordnance by rezoning property at 4100 West Dickman Road, city of Springfield, Calhoun County, Michigan, and I so move.

MR. FRANCIS:  Second.

MR. BURDETT:  Introduced for adoption by Councilman Gregory, seconded by Councilman Francis.

Any questions or comments from the Council members?

Okay.  Any comments or questions from citizens?

MS. WILTGEN:  Yes.

MR. BURDETT:  (Indiscernible).  State your name and address, and you have a three-minute time limit.

Springfield City Council Meeting 5-18-2026

MS. WILTGEN: Stephanie Wiltgen, 8916 South 8th Street, Kalamazoo, Michigan. I'm here on behalf of Callander Commercial. I was here a couple of weeks ago at our last meeting. We've had the property at 4100 Dickman actively marketed with us for nine years. And we feel like the buyer that we have in hand is presenting something that would be beneficial for your community, and we feel like it's the highest and best use for the land that we've seen. We've had no other offers on this land. We've had inquiries on the land, and all of the inquiries have wanted to rezone.

So I just did a little search before I came today. And, again, I've looked at the vacant land sales, commercial land in the city of Springfield in the past 10 years, and there's less than 10 parcels that have sold. I just feel like if you would consider this, it would be something beneficial for your community.

MR. BURDETT: Okay. Anybody else?

MR. BEUCHLER: Yes. Do you need my name and address also?

MR. BURDETT: Yes, please.

MR. BEUCHLER: Travis Beuchler. I live at 16 West Minges Road in Battle Creek. First off, I'd like to thank the members of the city council for your time and consideration regarding the rezoning requests for the property at 4100 Dickman Road. Over the last couple of weeks, we will -- or we have

Springfield City Council Meeting 5-18-2026

brought up information around the RV storage facility and the dependency on the rezoning of 4100 Dickman Road.

But I'd also like to make comment around the plans for the overall opportunity, which ultimately is contingent on the rezoning of the said property. The distinction I want to make is that there are actually two properties that the Roelof family owns at the intersection of Avenue A and West Dickman Road.

As was mentioned previously, Avenue A, at one point, was extended through the property owned by the Roloffs to connect to West Dickman Road, ultimately splitting the property into two parcels. The property to the south is 4100 Dickman Road, which we're discussing.

However, the property to the north is 4120 West Dickman Road. This is a 6.2-acre parcel. Currently zone as B-2 commercial according to the Springfield GIS map online. So I want to clarify that we're not requesting rezoning for that parcel.

The offer my father and I have made to the Roelof family is for both parcels, and the sale is contingent on the rezoning of 4100 Dickman Road. As mentioned, we do plan on opening an RV storage facility at the 4100 location. If the sale is not -- if the sale does go through, my wife and I plan to develop the property at the 4120 location. My wife and I have not yet determined how we'd like to develop the property, but we are certainly open to ideas as to how we can most

Springfield City Council Meeting 5-18-2026

appropriately develop it so it's beneficial to us as well as the City of Springfield.

One thing we know for certain is that we do not plan on leaving that land vacant.  The main reason for me explaining this is so that we all understand that our plans are to introduce multiple businesses to the area, but the primary focus at this point is the RV storage facility.

From what I understand, the rezoning at 4100 West Dickman Road is aligned to the City's future land use plan and would be a win for the city of Springfield and all involved. The rezoning will lead to not only a new RV storage facility in the next couple of years, but very likely one or multiple additional businesses in the not too distant future.  Thanks again for your time and your consideration.

MR. BURDETT:  At this time, we're going to strictly follow the rules of order if I -- I have somebody -- if anybody wants to speak against this ordinance?

MR. LONG:  Change in the ordinance?

MR. BURDETT:  If -- yeah.  If you're against changing the zoning.  Again, name and address, please.

MR. LONG:  My name's Brett Long, 12137 3 1/2 Mile Road, and myself and my partnership, Chip, we own the facility -- storage unit facility right next door to this property.  And not that we're against competition, but what we see here is, there's quite a bit of storage units already in the

Springfield City Council Meeting 5-18-2026

city.  And I know they talk about doing RV sites here, which wouldn't affect us other than our other facility that we bought because it was zoned industrial to have RV storage.  And then we purchased another one that was zoned industrial because -- if we wanted to have RV storage, because we couldn't purchase land next to this because it wasn't zoned correctly.

And the other thing I would say, to me, that's probably one of the most beautiful pieces of property left in Springfield.  And I'm not so sure, you know, warehousing -- which these type of buildings would be is warehousing.  Not really, you know, mini storage, but tall buildings.  It would be a good plan for that site.

Thank you for your time.

MR. BURDETT:  Would someone like to speak for the zoning change?  You can.

MR. TOM BEUCHLER:  Good evening.  I'm Tom Beuchler.  I live at 25 Jacaranda Drive in Battle Creek.  I have been meeting with the city of Springfield officials for, approximately, five months because of our interest in purchasing and developing -- developing the property in discussion to build a self storage facility primarily to house large vehicles such as boats and RVs.

Initially, we were encouraged with the fact that this property would be identified as IRT if the new future land use map was adopted as drafted this past January as it was.  But

when we attended the planning commission meeting in April, we heard con -- concerns that the City did not want to be known as the city of warehouses and comments that some would like to see other types of development that would be allowed either as currently zoned or within the 1RT, such as a hotel, cafe, or coffee shop.

It is fine to -- fine to dream of what could be built on this property, but you cannot force development or developers to build a specific type of facility on a specific property. You can incentivize it, but you cannot force it. Why did New Holland Brewing and Handmap Brewing locate their facilities in downtown Battle Creek? It was because each of them were given the buildings for one dollar and received $250,000 to go towards brewing equipment. New Holland was planning to build in Kalamazoo until they learned of this incentive.

Does the city of Springfield have funding for incentivizing the development of this property for other uses? When a developer or business looks to invest their money in a building, a facility, the top three priorities they have is location, location and location.

Why have there been five new hotels built in the same area in Harper Creek? And in the last eight years, Texas Roadhouse, Olive Garden, Horrocks, Jimmy Johns have all built where they are because -- on Beckley Road because of the traffic. It's very expensive property, but, in their minds, the

Springfield City Council Meeting 5-18-2026

cost was justified by the location.

It is fine to wish that you get a hotel or a restaurant or a coffee shop to build on this property, but it is obvious that in the minds of developers and business people, the risk versus a chance of success at this location is not justified as evidenced by how long it has been sitting vacant as currently zoned.

You have an amazing industrial park to the west of the city with businesses of manufactured products on high priced land with very restrictive covenants. Because of that, Springfield has developed over the years with warehousing for their excess products for their suppliers and housing for their employees. That is not a bad thing. They complement each other, and Springfield has benefited from that over the years. This 16-and-a-half-acre parcel is not going to change what the city of Springfield is. It's going to complement it as well.

You have the opportunity tonight to welcome new development to the city of Springfield that will generate tax revenue, construction jobs, and added business for the two adjacent restaurants, as well as retailers, such as local hardware stores, maintenance business -- business -- businesses, and supply houses. I encourage you not to let this opportunity pass in the interest of waiting for something that may never come to fruition.

Thank you.

Springfield City Council Meeting 5-18-2026

MR. BURDETT: Thank you. Now, does anyone wish to speak against changing of the zoning? Okay. At this time, we will pass and will conclude public comments -- wait a minute. Oh.

MR. GATES: Do you have any room for anybody else in favor?

MR. BURDETT: We're trying to go back and forth right now.

MR. GATES: I didn't know if anybody was it -- opposed. My apology.

MR. BURDETT: Well, we've had (indiscernible).

UNIDENTIFIED SPEAKER 3: So you can only be two and two, then?

MR. BURDETT: Back and forth. You have to start the motion back and forth.

UNIDENTIFIED SPEAKER 3: Okay.

MR. BURDETT: Okay. One more for and then that'll be it.

UNIDENTIFIED SPEAKER 3: I'll flip you for it.

MR. GATES: Good evening, ladies and gentlemen. My name is Floyd Gates. I'm an attorney for the applicant. I had the pleasure of representing Ms. Roelof for a number of years. My address is 99 Monroe NW, Suite 300, Grand Rapids, Michigan. I want to take a few brief -- I want to take a minute just to give you a couple of comments from a legal standpoint.

Springfield City Council Meeting 5-18-2026

First, this application satisfies the City's -- the City's rezoning requirements. It's really the starting point. Secondly, the application is entirely consistent with the City's master plan. It aligns with the future land use map. The City Manager reviewed the application under the applicable standards and ultimately recommended approval.

So this is not a situation where an applicant is asking the Council to bend the rules or approve something inconsistent with the City's planning objectives. The standards have been reviewed, and the record supports approval, and it's not even close.

I understand there was some concern raised in the underlying review regarding oversaturation of storage facilities. Respectfully, we do not believe that concern applies here in the way it might with a traditional self storage project. This is not rows of standard storage units, the mini storage units I think they've been referred to as, competing with existing file -- facilities in the community. I think we heard Mr. Long say this is not a competitive issue. Truly it's not a competitive issue. The proposed use is going to be for high-end RV storage, Class A RV storage for the -- for the city commissions.

For this council's information, the average length of a Class A RV is between 40 and 45 feet in length. There is no such storage available for that sort of use here in the city of

Springfield City Council Meeting 5-18-2026

Springfield, not even the city of Battle Creek. I called one of the storage units here in your community earlier today, even though the large storage capacity they indicated online was -- they were at capacity. But I called and asked if I had the opportunity to store a high-end Class A RV in their facility, and they told me they had a building that they could put it in. And I asked if it would be privately stored so no one else would have access to it, and I was told that the manager would give me a call.

That's not what we're looking for. We're not looking for throwing a -- you know, a six-figure investment, low six figures, up to somewhere upwards of a million dollars people spend on these RVs. We're not looking at storing those in a pole building where other people are storing.

This is a use intended for individualized storage for these investors who invest into these RV, which, again, you can't just leave them in the elements. You have to have climate controlled, you have to have pest control. You can't throw them outside on a pad. It destroys the residual value on these units, if not other damage that takes place throughout the -- the seasons here in Michigan.

MR. BURDETT: I believe your time is up.

MR. GATES: All right. Thank you very much, ladies and gentlemen, for considering our application. Thank you.

MR. BURDETT: Thank you.

Springfield City Council Meeting 5-18-2026

Anybody wants to be heard against it again?  Anybody else want to speak?

MR. CRANDELL:  Thank you, Mayor.

So I have some ver -- my name is Tom Crandell.  I live at 517 Maric Avenue, Battle Creek, Michigan, and I'm the president and co-owner of the Springfield Do It Center.  We've been in business there for 19 years now, and I have dear friends on both sides of this issue, okay?  And I tried to look at this from a clinical, purely clinical.

Amy mentioned some great businesses that we'd all like to have in this town, and the other gentlemen did as well, retail this, coffee shops, what have you.  We all want that.  But you should know, unless you own a small business, you don't know these things.  You might have heard these things thrown out.  42 percent of small business failures were -- excuse me.  Well, sorry about that.  20 percent -- 20.4 percent of small businesses like us at the Do It Center, fail within their first year.  30 percent of new small businesses suffer.  By the second year, the failure rate rises to 30 percent.  In the second year, 30 percent.

49.4 percent fail by the fifth year.  Over a decade, over 10 years, 65 percent of small businesses will cease operations.  Those are the very businesses we're hoping to attract here.  The -- the issue is, we attract retail, and then we have for lease signs go up, and I don't know how we benefit

Springfield City Council Meeting 5-18-2026

from that.  I sit on the economic development committee council, and I have for 18 years here in Springfield.  We've had many conversations about how to attract businesses.  And Springfield does a really good job with zoning changes, variances that Mayor allowed.

In our case, Jim Jenkins brought myself and Rick Sass onto the EDC board for perspective, and that perspective was just something different, okay?

We allow -- we got the City to get rid of a piece of property that they owned and couldn't build on and was heavily contaminated.  And the City participated with the State, got a huge loan, low interest, paid out for 10 years.  So in the 19 years we've been in business, we turned -- they paid 60,000 a year of our money to pay -- maintain that property that's contaminated.  We now -- it's an $80,000 swing.  We now pay over $20,000 a year in property taxes.  All right?  It's a specialty business.

But in Michigan, we're swimming up a river.  We're swimming upstream in a river of economic activity.  Michigan ranked 46th in growth.  So anybody even before they open their doors in --

MR. BURDETT:  I have to stop you there.  Time's up.

MR. CRANDELL:  Time's up?

MR. BURDETT:  Yes, sir.

MR. CRANDELL:  If you turn this down by the numbers, I

Springfield City Council Meeting 5-18-2026

understand --

MR. BURDETT:  Your time is up.

MR. CRANDELL:  Yeah.  Okay.

MR. BURDETT:  Thank you.

MR. CRANDELL:  All right.

MR. BURDETT:  Anybody against?  (Indiscernible).

MR. ROELOF:  Is that okay?

MR. BURDETT:  Name and address, please.

MR. ROELOF:  Scott Roelof, 202 Kensington Circle, Battle Creek.  This is my third time up here.  Feeling a little less nervous.  I feel like everyone's done a great job speaking. I feel like I've heard one common thing here, everyone wants to see the city grow.  I haven't heard anyone say opposite. Everyone's for the city growing.

We have an opportunity here to grow.  It's in the master plan to grow.  This is isn't -- this is kindling to start that growth.  It's not a laser tag or bowling alley or bank, but maybe when you start this business, that'll lead to those other things.  I don't think you can get to those other things without bringing more people to your community.  So this is an opportunity to bring people to your community to build, to maintain, to run, to store.

People are coming into -- to your community to grow it.  You got to give it a start to grow it.  Appreciate your time, and I hope we can make the decision to move forward with

Springfield City Council Meeting 5-18-2026

rezoning this.

We did not -- my family did not get into the land business. My father had passed away 10 years ago, and he had some ideas of what to do with the land, but, unfortunately, he's no longer here. And so now we have this land and -- and we don't want to be in the land business. We'd like to help the city grow, and we'd like to also not have this piece of property any longer.

Thank you for your time.

MR. BURDETT: Thank you.

Anybody against? That was against. Anybody else like to talk? Okay.

The ordinance is on the table.

Council, is that -- anybody else with council have any comment?

MS. KINCAID: I have a question for Aaron.

MR. EDELFSON: Yes, ma'am.

MS. KINCAID: If we agree to do the IRT tonight and the sale falls through, is it possible to do a contingent IRT on that property? And if the sale doesn't go through, it -- it stays at the ordinance that it's -- for the -- for zoning.

MR. EDELFSON: I would have to clear that up with Blake, but I believe that is possible.

MS. VOGEL: I believe you could do another zoning rechange.

Springfield City Council Meeting 5-18-2026

MS. KINCAID:  Oh.  Okay.  It would have to go back to rezoning.

MS. WILTGEN:  Am I allowed to comment?

MR. BURDETT:  Please do.

MS. WILTGEN:  Want me to come up to the --

MR. BURDETT:  Yes.

MS. WILTGEN:  That -- Stephanie Wiltgen, 8916 South 8th Street.  That's how the offer is written.  That is how the -- the buyer's offer is written, is that it is contingent upon the rezoning.  And if the rezoning is -- it's a land sale, then it would not be rezoned.

MS. KINCAID:  Okay.  But it would still have to go through rezoning in the city, right, Tina?

MS. SEAMAN:  Yes.

MS. KINCAID:  Yeah.

MS. SEAMAN:  And I -- once you rezone it to IRT, you can't take it back.  It's going to stay permanently.

MS. KINCAID:  Unless we go back through the process of --

MS. SEAMAN:  Yes.

MS. KINCAID:  -- rezoning it.

MS. SEAMAN:  Of rezoning.  It would be rezoned twice then.

MS. KINCAID:  Okay.

MR. BURDETT:  Thank you.  Okay.

Springfield City Council Meeting 5-18-2026

Council, anybody have -- Council members have any questions or comments?

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Gregory?

MR. GREGORY:  No.

MS. VOGEL:  Wells?

MR. WELLS:  No.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Kincaid?

MS. KINCAID:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  No.

MS. VOGEL:  And Burdett?

MR. BURDETT:  No.

Okay.  (Indiscernible) Council comments on the zoning issue.  We have a resolution on the agenda.  I'll kindly present this one.

Resolution 35-26 resolved by the Council of the city of Springfield to generally deny the request to amend city of Springfield zoning ordinance by rezoning the property at 4100 West Dickman Road, and direct the zoning administrator and City attorney to prepare a resolution of denial for consideration at the city council meeting, and I so move.

MR. GREGORY:  Second.

Springfield City Council Meeting 5-18-2026

MR. BURDETT:  And I (indiscernible), seconded by Councilman Gregory.

Any questions or comments on this resolution?

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Gregory?

MR. BURDETT:  Oh, I'm sorry.

MS. KINCAID:  He said yes.

MS. VOGEL:  I'm sorry.

Kincaid?

MS. KINCAID:  No.

MS. VOGEL:  And Cummings?

MS. CUMMINGS:  Yes.

MR. BURDETT:  Next, we have Councilman Cummings (indiscernible) Councilman Gregory this evening.

MS. CUMMINGS:  No.  I have nothing.

MR. BURDETT:  Okay.  Councilman Gregory?

MR. GREGORY:  I want to congratulate Aaron on the

Springfield City Council Meeting 5-18-2026

year, and I'm glad you're here.

MR. EDELFSON:  Thank you.

MR. BURDETT:  Pro-tem Kincaid.

MS. KINCAID:  I also want to echo -- echo that sentiment.  We -- we really enjoy having you here, and we enjoy your positivity and your out-of-the-box thinking on a lot of things, and your guidance.  There's some pretty big things this last year, so thank you for --

MR. EDELFSON:  Thank you.

MS. KINCAID:  -- your leadership.

MR. BURDETT:  Councilman Cummings?

MS. CUMMINGS:  Yeah.  I'd like to echo that as well.  Thank you, Aaron, for, you know, being here, providing leadership to our city here.  You're doing a good job, I think.

MR. BURDETT:  Councilman Wells?

MR. WELLS:  Yeah.  I'm really impressed with the -- with the quality of our -- our city manager.  And appreciate you being here and, you know, always very approachable and reasonable, which to me is huge.  And congratulations on your one year.

MR. EDELFSON:  Thank you.

MR. BURDETT:  City Manager, anything else from you, sir?

MR. EDELFSON:  Not -- I mean, just echoing the sentiments from earlier.  Appreciate all of you and your input

and your guidance and leadership as well.  And then the staff's input and putting up with me for a year.  And hopefully, we have many more ahead of us.  So thank you to all of the staff that are here.  I -- yeah.  Nothing but thanks.

MR. BURDETT:  City Clerk, any news?

MS. VOGEL:  I do have a couple of things.  First of all, I want to note that city hall will be closing this Thursday at 3 p.m., and will reopen the following Tuesday due to Memorial Day.  As part of that -- as part of that holiday, our waste management pickup that week will be Tuesday instead of Monday.

And then it's time to talk elections.  We do have a couple of elections this year.  We have one in August.  We have one in November.  But as part of the November election, we do have three city council seats that will be on that ballot.  Anyone that's interested in running for re-election or for election for any of those seats, the nominating petitions will be available on Monday, June 1st, and then they're due back to me no la -- no later than 4 p.m. Tuesday, July 21st.  And that's all I have.

MR. BURDETT:  Thank you.

Tina, anything from you?

MS. SEAMAN:  Nothing for me.

MR. BURDETT:  Chaz?

UNIDENTIFIED SPEAKER 3:  Sir?

MR. BURDETT:  Hold on a second.

Springfield City Council Meeting 5-18-2026

UNIDENTIFIED SPEAKER 3:  Okay.

MR. BURDETT:  I'll get to it in a second.

UNIDENTIFIED SPEAKER 3:  You'll get to it?

MR. BURDETT:  No It says --

UNIDENTIFIED SPEAKER 3:  (Indiscernible) on the agenda, doesn't it?  (Indiscernible).

MR. BURDETT:  Citizen's comment.

MS. SEAMAN:  Okay.

UNIDENTIFIED SPEAKER 3:  (Indiscernible).  Thank you.

MR. BURDETT:  Anything from citizen's comment?  I do want to congratulate the City Manager.  We're all saying all these nice things and everything.  He has got his (indiscernible).

MR. EDELFSON:  Let the record show the nice things that were said, though.

MR. BURDETT:  It's recorded.  Well, yeah, he's done a nice -- a phenomenal job here that -- since we hired him, and in my view, brought back the decorum that we were long missing.

Next Monday is Memorial Day.  People celebrate Memorial Day weekend by weekend barbecues, some parades.  Let's remember what that's all about.  Just remember those of the armed service who gave the ultimate sacrifice.  It's not for veterans still alive, it's not for ac -- active duty, it's for those that gave the ultimate sacrifice, and we should thank them, really, and think of them even more than the other ones.

Springfield City Council Meeting 5-18-2026

.        Anybody else have any comments?

MR. GREGORY:  Well, I guess I missed out on congratulating Aaron, but --

Good job, Aaron.  Sorry.

MR. BURDETT:  Okay.  If there's nothing else, this meeting is adjourned.

(End of recording.)

Springfield City Council Meeting 5-18-2026

CERTIFICATE OF TRANSCRIBER

I, JANENE CLEARY, do hereby certify that I was authorized to transcribe the foregoing recorded proceeding; and that the transcript is a true and accurate transcription, to the best of my ability, taken while listening to the provided recording.

1 FURTHER CERTIFY that I am not of counsel or attorney for either or any of the parties to said proceedings, nor in any way interested in the events of this cause, and that I am not related to any of the parties thereto.

DATED this 16th day of JUNE, 2026

*Janene Cleary*

JANENE CLEARY, Michigan CSR No. 16359

Springfield City Council Meeting 5-18-2026

**$**

**$150**
13:1
**$2,275,000**
11:8
**$20,000**
28:16
**$250,000**
22:13
**$80,000**
28:15

**0**

**03-26**
10:13 16:8

**1**

**1**
11:15
**1.1510-2**
11:25
**1/2**
20:21
**10**
18:13,14
27:22 28:12
30:3
**12**
6:11
**12137**
20:21
**16**
18:21
**16-and-a-half-acre**
23:15
**17,729**
14:2
**17th**
13:1
**18**
5:21 28:2

**19**
27:7 28:12
**1986**
12:1
**1st**
35:17

**2**

**2-26**
15:3
**20**
27:16
**20.4**
27:16
**2019**
6:7
**202**
29:9
**2026**
4:21,25 5:21
6:20
**20th**
8:15 16:3,11
**21st**
35:18
**241**
6:10
**25**
21:17
**257**
16:3,10

**3**

**3**
20:21 24:12,
16,19 35:8,
24 36:1,3,5,
9
**30**
27:18,19,20
**300**
24:23
**32-26**
10:24

**33-26**
12:22
**34-26**
13:24
**35-26**
32:19

**4**

**4**
4:21,25
35:18
**4-26**
17:13
**40**
25:24
**4100**
6:5,6 17:8,
16 18:4,24
19:2,11,20,
21 20:8
32:21
**4120**
19:13,23
**42**
27:15
**45**
25:24
**46th**
28:20
**49.4**
27:21

**5**

**51**
6:2
**517**
27:5
**536**
6:8
**54-240-054-02**
15:6

**6**

**6.2-acre**
19:14
**60**
6:10
**60,000**
28:13
**65**
27:22

**8**

**8916**
18:1 31:7
**8th**
18:1 31:8

**9**

**99**
24:23

**A**

**Aaron**
5:21 12:24
30:16 33:25
34:13 37:3,4
**ac**
36:23
**access**
26:8
**accounts**
9:16
**acquire**
11:4
**acres**
6:8,10,11
**active**
36:23
**actively**
18:4
**activity**
28:19

Springfield City Council Meeting 5-18-2026

| | | | |
|---|---|---|---|
| **added** 23:19 | **alive** 36:23 | 16:2 17:7 25:8 | **ballot** 35:14 |
| **additional** 20:13 | **allegiance** 4:4 | **approved** 8:10 | **bank** 29:17 |
| **Additionally** 7:4 | **alley** 29:17 | **approximately** 21:18 | **barbecues** 36:20 |
| **additions** 5:1 | **allowed** 7:6 22:4 28:5 31:3 | **April** 9:4,7,9 22:1 | **Battle** 18:22 21:17 22:12 26:1 27:5 29:10 |
| **address** 5:24 17:25 18:18 20:20 24:23 29:8 | **amazing** 23:8 | **arduous** 8:13 | **beaten** 6:14 |
| **addressing** 6:3 | **amend** 15:4 16:9 17:14 32:20 | **area** 6:23 7:1 20:6 22:22 | **beautiful** 7:11 21:8 |
| **adjacent** 23:20 | **amended** 12:1 17:13 | **armed** 36:22 | **Beckley** 22:24 |
| **adjourned** 37:6 | **America** 4:5 | **attended** 22:1 | **Begg** 8:18 |
| **administrator** 32:22 | **amount** 11:8 13:1 14:2 | **attorney** 24:21 32:23 | **behalf** 18:2 |
| **admit** 14:24 | **Amy** 6:1 27:10 | **attract** 27:24 28:3 | **bend** 25:8 |
| **adopt** 14:24 | **Ann** 12:25 | **August** 35:12 | **beneficial** 18:7,15 20:1 |
| **adopted** 15:4 16:9 17:14 21:25 | **apologize** 11:23 | **authorize** 12:23 13:25 | **benefit** 27:25 |
| **adoption** 10:13 14:22, 25 15:3,9 16:5,8 17:10,19 | **apology** 24:10 | **Avenue** 14:23 19:7,8 27:5 | **benefited** 23:14 |
| **affect** 21:2 | **applicable** 25:5 | **average** 25:23 | **Beuchler** 18:18,21 21:16 |
| **agenda** 5:23 8:11 32:17 36:6 | **applicant** 24:21 25:7 | **B** | **big** 34:7 |
| **agree** 30:18 | **application** 25:1,3,5 26:24 | **B-1** 6:10 | **billing** 9:1 |
| **agreement** 12:24 | **applies** 25:15 | **B-2** 6:5,11 7:13 19:14 | **bills** 9:12,16,20 |
| **ahead** 35:3 | **approachable** 34:18 | **back** 24:7,14,15 31:1,17,18 35:17 36:18 | **bit** 20:25 |
| **aligned** 20:9 | **appropriately** 20:1 | **backwards** 10:24 | **Blake** 30:23 |
| **aligns** 7:13 25:4 | **approval** 25:6,10 | **bad** 23:13 | **board** 28:7 |
| | **approve** 4:20,24 6:4 10:9 14:23 | | **boats** 21:21 |
| | | | **bought** |

Springfield City Council Meeting 5-18-2026

21:2

**bowling**
7:5 29:17

**box**
7:23

**Brett**
20:21

**breweries**
7:4,8

**brewing**
22:11,14

**bring**
29:21

**bringing**
29:20

**brought**
19:1 28:6
36:18

**budget**
14:3

**build**
21:20 22:9,
14 23:3
28:10 29:21

**building**
22:19 26:6,
14

**buildings**
6:23 11:6
21:10,11
22:13

**built**
22:7,21,23

**Burdett**
4:2,18,19,23
5:3,16,17
7:17 8:24
9:14,18
10:7,8,14,
16,18,20,22
11:16,18,20,
22 12:3,11,
12,19 13:4,
16,17,20
14:6,16,17,
22 15:9,17,
18 16:2,14,

20,21 17:7,
19,24 18:17,
20 20:15,19
21:14 24:1,
7,11,14,17
26:22,25
28:22,24
29:2,4,6,8
30:10 31:4,
6,25 32:14,
15 33:1,9,
10,14,21,24
34:3,11,15,
22 35:5,20,
23,25 36:2,
4,7,10,16
37:5

**business**
6:3 22:18
23:4,19,21
27:7,13,15
28:13,17
29:18 30:3,6

**businesses**
6:13 7:12
20:6,13
23:9,21
27:10,17,18,
22,23 28:3

**buyer**
18:5

**buyer's**
31:9

---

**C**

---

**cafe**
22:5

**Calhoun**
10:12 11:2
15:2,6 16:7,
11 17:12,16

**call**
4:2,7 5:5
9:21 12:6
13:7 14:9
15:14 16:18
26:9 32:3

33:4

**Callander**
18:2

**called**
26:1,4

**capacity**
26:3,4

**case**
28:6

**categorizes**
6:20

**category**
6:22

**cease**
27:22

**celebrate**
36:19

**Center**
27:6,17

**certificate**
5:20 7:22

**certified**
5:20

**cetera**
7:6

**chance**
23:5

**change**
20:18 21:15
23:15

**changing**
20:19 24:2

**character**
7:3

**Chaz**
8:16 9:10
35:23

**checks**
9:15

**Childers**
9:7

**Chip**
20:22

**chosen**
7:15

**Circle**
29:9

**circled**
11:18,19,21

**citizen's**
36:7,10

**citizens**
5:23 8:3
15:13 16:17
17:22

**city**
4:2,7 5:5,
19,22 6:2,12
7:3,19,20
8:1,3,24
9:21 10:12
11:1,2,4,6,
7,9,11,13
12:6,19,23,
24 13:7,25
14:9 15:2,4,
6,14 16:7,9,
11,18 17:12,
14,15,16
18:13,23
20:2,10
21:1,18
22:2,3,16
23:9,16,18
25:4,21,25
26:1 28:9,11
29:13,14
30:7 31:13
32:3,19,20,
22,24 33:4
34:14,17,22
35:5,7,14
36:11

**City's**
20:9 25:1,2,
3,9

**city-owned**
12:20

**clarify**
19:16

**Class**
25:21,24
26:5

clear
30:22
Clerk
4:7 5:5 9:21
12:6 13:7
14:9 15:14
16:18 32:3
33:4 35:5
climate
26:17
clinical
27:9
close
6:6 25:11
closeout
8:12,14
closing
35:7
closing-
related
12:25
co-owner
27:6
code
9:1 12:1
coffee
22:6 23:3
27:12
comment
19:3 30:15
31:3 36:7,10
comments
5:4,23 8:24
9:3,5,8,11,
20 12:5 13:6
14:8 15:11,
12 16:17
17:21,22
22:3 24:3,25
32:2,16 33:3
37:1
commercial
6:10,11,15,
21,22,25
7:1,4,13
18:3,12
19:15

commission
22:1
commissions
25:22
committee
28:1
common
29:12
community
7:10,15
18:7,16
25:18 26:2
29:20,21,23
competing
25:17
competition
20:24
competitive
25:19,20
complement
7:3 23:13,16
complying
11:14,24
con
22:2
concern
25:12,14
concerns
22:2
conclude
24:3
conditions
6:21,24
congratulate
33:25 36:11
congratulatin
g
37:3
congratulatio
ns
34:19
connect
19:10
conservation
11:5
consideration
7:16 18:23

20:14 32:23
consideration
s
7:8
consistent
25:3
construct
11:4
construction
23:19
contaminated
28:11,15
contingent
19:4,19
30:19 31:9
Continue
11:23
control
26:18
controlled
26:18
conversations
28:3
Correct
11:20
corrections
4:25
correctly
21:6
corridor
8:15
corridors
6:15
cost
23:1
council
4:2,8 5:6
6:3 8:25
11:1 12:7,23
13:8,22,25
14:10 15:11,
15 16:16,20
17:21 18:23
25:8 28:1
30:14 32:1,
4,16,19,24
33:5 35:14

council's
25:23
Councilman
5:4 9:19
10:11 12:4,
21 13:4 14:6
15:10 16:4,
14,15 17:9,
20 33:2,21,
22,24 34:11,
15
Counsel
9:22
county
8:17,21
10:13 11:2
15:2,6 16:7,
11 17:12,16
couple
18:3,25
20:12 24:25
35:6,12
covenants
23:10
CR
6:11
Crandell
27:3,4
28:23,25
29:3,5
Creek
18:22 21:17
22:12,22
26:1 27:5
29:10
Cris
9:7
Cummings
4:8,9 5:6,7
9:22,23
12:2,4,17,18
13:8,9,22,24
14:6,18,19
15:19,20
16:13,15,22,
23 32:8,9
33:19,20,21,
23 34:11,12

Springfield City Council Meeting 5-18-2026

current
 6:21 7:12

**D**

damage
 26:20
day
 8:14 35:9
 36:19,20
dear
 6:2 27:7
debt
 11:8,10,12
decade
 27:21
decision
 29:25
declarations
 11:14
declare
 10:9
declaring
 10:19,25
decorum
 36:18
dedicated
 5:22
denial
 32:23
deny
 32:20
department
 7:2,18 9:1,
 4,7
dependency
 19:2
desirable
 6:25
destroys
 26:19
determined
 11:3 19:24
develop
 19:23,24
 20:1

developed
 23:11
developer
 22:18
developers
 22:8 23:4
developing
 21:19,20
development
 6:18,25 7:1
 22:4,8,17
 23:18 28:1
Dickman
 6:5,7 17:8,
 16 18:4,24
 19:2,7,10,
 11,14,20
 20:9 32:22
direct
 32:22
discussing
 8:20 19:12
discussion
 21:20
distant
 20:13
distinction
 19:5
distinguish
 6:24
documents
 12:25
dollar
 22:13
dollars
 26:12
door
 20:23
doors
 28:21
downtown
 22:12
drafted
 21:25
draw
 9:15

dream
 22:7
drive
 8:1 21:17
due
 35:8,17
duty
 36:23

**E**

earlier
 26:2 34:25
easy
 7:25
echo
 34:4,12
echoing
 34:24
economic
 28:1,19
EDC
 28:7
Edelfson
 5:21 7:20,21
 12:24 30:17,
 22 34:2,9,
 21,24 36:14
election
 35:13,16
elections
 35:11,12
elements
 26:17
employees
 23:13
encourage
 23:22
encouraged
 21:23
end
 37:7
energy
 11:5

energy-
efficient
 8:7
enforcement
 9:1,4
engaged
 8:4
enjoy
 34:5
enter
 11:7 12:24
entertainment
 7:5
equip
 11:5
equipment
 22:14
essentially
 8:9
estimated
 11:8
Evans
 6:1
evening
 6:1 7:21
 9:10 21:16
 24:20 33:22
everyone's
 29:11,14
evidenced
 23:6
exceed
 14:2
excess
 23:12
excited
 8:19
excuse
 27:15
execute
 12:20
exempt
 11:7
existing
 6:23 25:18
expenditure

Springfield City Council Meeting 5-18-2026

14:3

**expenditures**
11:11

**expensive**
22:25

**explaining**
20:4

**extended**
19:9

**eyes**
4:3

---

**F**

**facilities**
11:6 22:11
25:14,18

**facility**
19:1,21
20:7,11,23
21:2,21
22:9,19 26:5

**fact**
21:23

**fail**
27:17,21

**failure**
27:19

**failures**
27:15

**falls**
30:19

**family**
19:6,19 30:2

**father**
19:18 30:3

**favor**
6:7 24:6

**favorite**
6:17

**feel**
7:10 18:5,7,
14 29:11,12

**Feeling**
29:10

**feet**
25:24

**fellow**
7:12

**Ferguson**
14:2

**figures**
26:12

**file**
25:18

**final**
8:14

**financing**
8:10 11:7

**fine**
22:7 23:2

**Fire**
9:7

**Flag**
4:4

**flip**
24:19

**flourishing**
7:11

**Floyd**
24:21

**focus**
20:6

**follow**
20:16

**force**
22:8,10

**forward**
8:22 29:25

**Francis**
4:10,11 5:8,
9 9:24,25
12:9,10
13:14,15
14:14,15
15:15,16
17:1,2,18,20
32:12,13
33:7,8

**frequent**
6:16

**friends**
27:7

**fruition**
8:19 23:24

**funding**
8:9,20 22:16

**funds**
8:21

**furnish**
11:5

**future**
7:15 8:21
20:9,13
21:24 25:4

**FY26-27**
14:3

---

**G**

**Garden**
22:23

**Gates**
24:5,9,20,21
26:23

**gave**
10:18 36:22,
24

**general**
6:11 7:2,13

**generally**
32:20

**generate**
23:18

**gentlemen**
7:21 24:20
26:24 27:11

**GIS**
19:15

**give**
24:25 26:8
29:24

**glad**
34:1

**God**
4:6

**golf**

7:5

**good**
6:1 7:21
21:12,16
24:20 28:4
34:14 37:4

**Grand**
24:23

**great**
27:10 29:11

**Gregory**
4:12,13 5:2,
4,10,11
9:17,19
10:1,2
12:13,14,21,
22,25 13:4,
12,13 14:20,
21 15:8,10,
23,24 17:5,
6,9,11,20
32:4,5,25
33:2,11,12,
13,22,24,25
37:2

**groceries**
7:2,3

**grow**
29:13,15,16,
23,24 30:7

**growing**
29:14

**growth**
28:20 29:17

**guess**
37:2

**guidance**
34:7 35:1

---

**H**

**half**
7:10

**hall**
35:7

**hand**
18:6

Springfield City Council Meeting 5-18-2026

| | | | |
|---|---|---|---|
| Handmap<br>  22:11 | house<br>  21:21 | indoor<br>  7:5,6 | 6:5,8,12<br>  21:24 22:5<br>  30:18,19<br>  31:16 |
| hardware<br>  23:21 | houses<br>  23:22 | industrial<br>  6:13,17,21,<br>  22 7:1,7<br>  21:3,4 23:8 | |
| Harmony<br>  14:23 | housing<br>  23:12 | | issuance<br>  11:12 |
| Harper<br>  22:22 | huge<br>  8:2 28:12<br>  34:19 | information<br>  19:1 25:23 | issue<br>  25:19,20<br>  27:8,24<br>  32:17 |
| health<br>  11:3 | husband<br>  7:9 | Initially<br>  21:23 | |
| heard<br>  22:2 25:19<br>  27:1,14<br>  29:12,13 | ——————<br>  I<br>  —————— | input<br>  34:25 35:2 | item<br>  6:4 |
| | | inquiries<br>  18:9,10 | items<br>  5:23 |
| Hearing<br>  5:5 9:21<br>  12:6 13:7<br>  14:9 16:18<br>  32:3 33:4 | ideas<br>  19:25 30:4 | intended<br>  26:15 | ——————<br>  J<br>  —————— |
| | identified<br>  21:24 | intends<br>  11:7,9 | |
| heavily<br>  28:10 | important<br>  6:14,24 | intent<br>  7:14 10:9,25 | Jacaranda<br>  21:17 |
| Hickory<br>  6:2 | impressed<br>  34:16 | intentions<br>  11:10 | January<br>  21:25 |
| high<br>  23:9 | improvements<br>  8:17 11:5 | interest<br>  21:19 23:23<br>  28:12 | Jenkins<br>  28:6 |
| high-end<br>  25:21 26:5 | incentive<br>  22:15 | | Jim<br>  28:6 |
| highest<br>  18:7 | incentivize<br>  22:10 | interested<br>  35:15 | Jimmy<br>  22:23 |
| hired<br>  36:17 | incentivizing<br>  22:17 | Internal<br>  11:25 | job<br>  28:4 29:11<br>  34:14 36:17<br>  37:4 |
| Hold<br>  35:25 | including<br>  7:1 | intersection<br>  19:7 | |
| holiday<br>  35:9 | inconsistent<br>  25:9 | intersections<br>  6:14 | jobs<br>  23:19 |
| Holland<br>  22:11,14 | indiscernible<br>  9:2,11 10:16<br>  11:16,22<br>  12:3 17:24<br>  24:11 29:6<br>  32:16 33:1,<br>  22 36:5,6,9,<br>  13 | introduce<br>  17:9 20:6 | Johns<br>  22:23 |
| hope<br>  29:25 | | Introduced<br>  17:19 | journey<br>  8:13 |
| hoping<br>  27:23 | | invest<br>  22:18 26:16 | July<br>  35:18 |
| Horrocks<br>  22:23 | | investment<br>  26:11 | June<br>  35:17 |
| hotel<br>  22:5 23:2 | individualize<br>d<br>  26:15 | investors<br>  26:16 | justice<br>  4:6 |
| hotels<br>  22:21 | indivisible<br>  4:6 | involved<br>  20:10 | justified<br>  23:1,6 |
| | | IRT | |

Springfield City Council Meeting 5-18-2026

**K**

**Kalamazoo**
18:2 22:15
**keeping**
7:13
**Kensington**
29:9
**Kincaid**
4:16,17,22,
23,24 5:3,
14,15 9:13,
14,15,18
10:5,6
12:15,16
13:3,5,10,11
14:5,7,10,
11,24 15:1,
9,21,22
17:3,4
30:16,18
31:1,12,15,
18,21,24
32:10,11
33:15,17,18
34:3,4,10
**kindling**
29:16
**kindly**
32:17
**knowledge**
8:1

**L**

**la**
35:18
**ladies**
7:21 24:20
26:23
**land**
6:8,12 18:8,
9,12,13
20:4,9 21:5,
24 23:10
25:4 30:2,4,

5,6 31:10
**Lane**
6:2 14:23
**large**
21:21 26:3
**laser**
7:5 29:17
**Law**
9:4
**lead**
20:11 29:18
**leadership**
34:10,14
35:1
**learned**
22:15
**lease**
11:7 27:25
**leave**
26:17
**leaving**
20:4
**left**
21:8
**legal**
24:25
**length**
25:23,24
**letter**
8:14
**liberty**
4:6
**Lieutenant**
9:5
**light**
6:22 7:7
**limit**
5:25 17:25
**listed**
12:1
**live**
6:2 18:21
21:17 27:4
**lived**
7:9

**lives**
6:6 7:10
**loan**
28:12
**local**
6:10 23:20
**locate**
22:11
**location**
19:21,23
22:20 23:1,5
**long**
8:13 20:18,
21 23:6
25:19 36:18
**longer**
30:5,8
**looked**
18:12
**lot**
7:23 34:6
**love**
7:10
**low**
26:11 28:12

**M**

**made**
7:25 8:13
14:3 19:18
**main**
20:4
**maintain**
28:14 29:22
**maintenance**
23:21
**major**
6:15
**make**
19:3,5 29:25
**makes**
11:14
**making**
8:18

**management**
35:10
**manager**
5:19 7:19,20
12:19,24
25:5 26:8
34:17,22
36:11
**manufactured**
23:9
**map**
15:4 16:9
17:14 19:15
21:25 25:4
**Marie**
27:5
**marketed**
18:5
**master**
6:8,20 7:14
8:12,15 25:4
29:16
**Mayor**
4:16,18,22
5:14,16 6:3
9:13 10:5,7
15:1 16:6
27:3 28:4
**Mayor's**
5:18
**meeting**
4:21,25 8:16
18:4 21:17
22:1 32:24
37:6
**Member**
13:22
**members**
4:8 5:6 6:3
9:22 12:7
13:8 14:10
15:15 16:16,
20 17:21
18:23 32:1,4
33:5
**Memorial**
8:18 35:8

Springfield City Council Meeting 5-18-2026

36:19,20

**mentioned**
19:8,20
27:10

**Mi**
17:12

**Michigan**
10:13 11:2
15:2,6 16:7,
12 17:12,17
18:2 24:23
26:21 27:5
28:18,19

**Mile**
20:21

**millage**
8:20

**million**
26:12

**minds**
22:25 23:4

**Minges**
18:22

**mini**
7:5 21:11
25:16

minute
24:3,24

**minutes**
4:20,24 5:4

**missed**
37:2

**missing**
36:18

**Monday**
5:21 35:10,
17 36:19

**money**
22:18 28:14

**monitoring**
13:21 14:1

**Monroe**
24:23

**monthly**
7:18

**months**
21:19

**motion**
24:15

**move**
4:24 9:15
12:1 13:2
14:4 15:7
16:12 17:17
29:25 32:24

**Moved**
5:3 9:18
12:3 13:4
14:6 15:9
16:14

**multiple**
20:6,12

**municipal**
11:8

---

**N**

**name's**
20:21

**Nation**
4:5

**neighbors**
7:12

**nervous**
29:11

**news**
35:5

**nice**
36:12,14,17

**nominating**
35:16

**north**
13:1 16:3,11
19:13

**note**
35:7

**November**
35:13

**number**
6:4 10:13
11:13 12:22
15:3,5 16:8
17:13 24:22

**numbers**
28:25

**Nut**
6:2

**NW**
24:23

---

**O**

**objectives**
25:9

**obvious**
23:4

**offer**
19:18 31:8,9

**offered**
7:24

**offers**
18:9

**office**
8:5

**officials**
21:18

**Olive**
22:23

**online**
19:15 26:3

**open**
6:18 19:25
28:20

**opening**
19:21

**operations**
27:23

**opportunity**
19:4 23:17,
22 26:5
29:15,21

**opposed**
24:10

**opposite**
29:13

**order**
4:3 20:16

**ordinance**
6:4 7:14

10:13 14:22
15:3,5 16:2,
8,10 17:7,
13,14 20:17,
18 30:13,21
32:21

**ordnance**
17:15

**out-of-the-box**
34:6

**oversaturatio
n**
25:13

**owned**
19:9 28:10

**owns**
19:7

---

**P**

**p.m.**
35:8,18

**pad**
26:19

**paid**
28:12,13

**papers**
10:22,23

**parades**
36:20

**parcel**
6:20 13:1
15:5 19:14,
17 23:15

**parcels**
18:14 19:11,
19

**park**
8:18 23:8

**parks**
8:20

**part**
6:18 35:9,13

**participated**
28:11

Springfield City Council Meeting 5-18-2026

partnership
  20:22
pass
  23:23 24:3
passed
  30:3
past
  18:13 21:25
path
  6:14
pay
  9:16 28:14,
  15
people
  23:4 26:12,
  14 29:20,21,
  23 36:19
percent
  27:15,16,18,
  19,20,21,22
permanently
  31:17
perspective
  28:7
pest
  26:18
petitions
  35:16
pharmacies
  7:2
phenomenal
  36:17
pickup
  35:10
piece
  28:9 30:7
pieces
  21:8
place
  26:20
places
  6:17
plan
  6:8,20 7:14
  8:12,15
  19:20,22
  20:3,9 21:12

25:4 29:16
planned
  6:24
planning
  22:1,14 25:9
plans
  7:15 19:3
  20:5
pleasure
  24:22
pledge
  4:4
point
  19:8 20:7
  25:2
pole
  26:14
positivity
  34:6
prepare
  32:23
prerogative
  5:18
present
  10:11 12:21
  13:22 32:17
presented
  5:20
presenting
  18:6
president
  27:6
pressure
  13:21 14:1
pretty
  34:7
previously
  19:8
priced
  23:9
pride
  7:10
primarily
  21:21
primary
  20:6

principal
  11:8
prior
  11:11
priorities
  22:19
privately
  26:7
Pro-tem
  4:16,23 5:3,
  14 9:14,18
  10:5 13:5
  14:7,24 15:9
  34:3
proceeds
  11:10
process
  31:18
processing
  7:8
products
  23:9,12
project
  11:6,11
  25:16
prominent
  6:18
properties
  19:6
property
  12:20 16:10
  17:15 18:4,
  24 19:5,9,
  10,11,13,23,
  24 20:24
  21:8,20,24
  22:8,9,17,25
  23:3 28:10,
  14,16 30:7,
  20 32:21
proposed
  25:20
proudly
  5:20
providing
  34:13

public
  9:9 11:3
  24:3
purchase
  13:21 14:1
  21:5
purchased
  21:4
purchasing
  21:19
purely
  27:9
purpose
  11:14
pursuant
  11:25
put
  26:6
putting
  35:2

───────

Q

quality
  34:17
question
  30:16
questions
  5:4 8:24
  9:3,5,8,20
  12:5 13:6
  14:8 15:11,
  12 16:16,17
  17:21,22
  32:2 33:3

───────

R

raised
  25:12
ranked
  28:20
Rapids
  24:23
rate
  27:19

Springfield City Council Meeting 5-18-2026

re-election
  35:15
read
  16:4
reads
  6:24
reason
  20:4
reasonable
  34:19
received
  22:13
rechange
  30:25
reclassificat
ion
  6:4 14:23
  16:3 17:8
recognition
  5:20
recommended
  25:6
record
  25:10 36:14
recorded
  36:16
recording
  37:7
recreation
  7:6
reducing
  13:21 14:1
referred
  25:17
regular
  4:21,25
Regulation
  11:15,25
reimburse
  8:9 10:10,25
reimbursed
  11:10
reimbursement
  11:15,24
remember
  36:21

reopen
  35:8
report
  8:6 9:2,4,5,
  6,7,8,9,10,
  11
reports
  7:18,19
representing
  24:22
Republic
  4:5
request
  32:20
requesting
  19:16
requests
  9:11 18:24
require
  7:7
requirements
  25:2
reserved
  6:15
resident
  6:6
residential
  6:12
residents
  6:16 7:12
  11:4
residual
  26:19
resolution
  8:8 10:9,14,
  16,19,24,25
  12:5,19,22
  13:6,20,24
  14:8 32:17,
  19,23 33:3
resolved
  11:13 12:22
  13:25 32:19
Respectfully
  25:14
restaurant
  23:3

restaurants
  23:20
restrictive
  23:10
retail
  27:12,24
retailers
  23:20
revenue
  12:1 23:19
review
  25:13
reviewed
  25:5,10
rezone
  6:13 18:10
  31:16
rezoned
  31:11,22
rezoning
  6:7 15:5
  16:10 17:15
  18:24 19:2,
  5,16,20
  20:8,11 25:2
  30:1 31:2,
  10,13,21,22
  32:21
Rick
  28:6
rid
  28:9
rises
  27:19
risk
  23:5
river
  28:18,19
Road
  6:5,7 17:8,
  16 18:22,25
  19:2,7,10,
  12,14,20
  20:9,22
  22:24 32:22
Roadhouse
  22:23

Roelof
  19:6,18
  24:22 29:7,9
role
  9:21 14:9
roll
  4:7 5:5 12:6
  13:7 15:14
  16:18 32:3
  33:4
Roloffs
  19:9
room
  24:5
rows
  25:16
rules
  11:15,24
  20:16 25:8
run
  29:22
running
  35:15
RV
  19:1,21
  20:7,11
  21:1,3,5
  25:21,24
  26:5,16
RVS
  21:22 26:13

——————

S

——————

sacrifice
  36:22,24
safety
  11:3
sale
  12:20 19:19,
  22 30:19,20
  31:10
sales
  12:24 18:12
Sass
  28:6

Springfield City Council Meeting 5-18-2026

satisfies
  25:1
Schools
  8:18
Scott
  29:9
screening
  7:8
SEAMAN
  31:14,16,20,
  22 35:22
  36:8
Seaman's
  9:2
search
  18:11
seasons
  26:21
seats
  35:14,16
seconded
  5:3 9:18
  12:4 13:4
  14:6 15:10
  16:14 17:20
  33:1
sentiment
  34:5
sentiments
  34:25
serve
  8:1
service
  5:22 36:22
shop
  22:6 23:3
shops
  27:12
show
  36:14
sides
  27:8
sign
  12:25
signs
  27:25

similar
  6:23
sir
  28:24 34:23
  35:24
sit
  28:1
site
  21:12
sites
  21:1
sitting
  23:6
situation
  25:7
six-figure
  26:11
small
  27:13,15,16,
  18,22
Smith's
  9:5
soap
  7:23
sold
  18:14
solutions
  8:8
sort
  25:25
south
  18:1 19:11
  31:7
space
  7:7
speak
  20:17 21:14
  24:2 27:2
SPEAKER
  24:12,16,19
  35:24 36:1,
  3,5,9
speaking
  29:11
specialty
  7:2 28:16

specific
  22:9
spend
  26:13
spent
  8:10
splitting
  19:10
Springfield
  4:2 5:22
  6:2,6,8 7:9
  8:18 10:12
  11:2 12:23
  13:25 15:2,
  4,5,6 16:7,
  9,10,11
  17:12,14,15,
  16 18:13
  19:15 20:2,
  10 21:9,18
  22:16 23:11,
  14,16,18
  26:1 27:6
  28:2,3
  32:20,21
staff
  7:25 8:3
  35:3
staff's
  35:1
standard
  25:16
standards
  25:5,9
standpoint
  24:25
stands
  4:5
start
  24:14 29:16,
  18,24
starting
  25:2
state
  5:24 11:2,9
  17:24 28:11

states
  4:4 6:21
stay
  31:17
stays
  30:21
Stephanie
  18:1 31:7
stop
  28:22
storage
  19:1,21
  20:7,11,23,
  25 21:3,5,
  11,20 25:13,
  15,16,17,21,
  25 26:2,3,15
store
  26:5 29:22
stored
  26:7
stores
  7:2 23:21
storing
  26:13,14
Street
  8:15 13:1
  16:3,11 18:2
  31:8
strictly
  20:15
subject
  4:25
success
  23:5
suffer
  27:18
Suite
  24:23
suppliers
  23:12
supply
  23:22
support
  7:24
supports
  25:10

Springfield City Council Meeting 5-18-2026

swimming
  28:18,19
swing
  28:15
system
  13:21  14:1

**T**

table
  30:13
tag
  7:5  29:17
takes
  26:20
talk
  8:5,17  21:1
  30:12  35:11
tall
  21:11
tax
  11:7  23:18
taxes
  28:16
tend
  7:7
Texas
  22:22
that'll
  24:17  29:18
thing
  20:3  21:7
  23:13  29:12
things
  27:14  29:19
  34:7  35:6
  36:12,14
thinking
  34:6
three-minute
  5:25  17:25
throw
  26:18
throwing
  26:11

thrown
  27:14
Thursday
  35:7
time
  5:18,25  7:16
  11:9  17:25
  18:23  20:14,
  15  21:13
  24:2  26:22
  29:2,10,25
  30:9  35:11
Time's
  28:22,23
Tina
  9:2  31:13
  35:21
Tina's
  9:2
title
  14:25  15:3
  16:4,8  17:9
today
  18:11  26:2
told
  26:6,8
Tom
  21:16  27:4
tomorrow
  8:16
tonight
  8:8,11  23:17
  30:18
top
  22:19
town
  6:18  27:11
traditional
  25:15
traffic
  22:25
transition
  8:1,7
Travis
  18:21
Treasury
  11:15,25

tucked
  6:19
Tuesday
  35:8,10,18
turn
  28:25
turned
  28:13
type
  6:25  21:10
  22:9
types
  22:4

**U**

ultimate
  36:22,24
ultimately
  19:4,10  25:6
underlying
  25:13
understand
  20:5,8  25:12
  29:1
undertaken
  11:11
UNIDENTIFIED
  24:12,16,19
  35:24  36:1,
  3,5,9
unit
  20:23
United
  4:4
units
  20:25  25:16,
  17  26:2,20
upstream
  28:19
upwards
  26:12
utilize
  8:21
utilizing
  8:19

**V**

vacant
  12:25  18:12
  20:4  23:6
valve
  13:21  14:1
variances
  28:4
vehicles
  21:21
ver
  27:4
Veregy
  8:6
versus
  23:5
veterans
  36:23
vibrant
  7:11
view
  36:18
visit
  6:17
visited
  6:16
visitors
  6:16
VOGEL
  4:8,10,12,
  14,16,18
  5:6,8,10,12,
  14,16  9:22,
  24  10:1,3,5,
  7  12:7,9,11,
  13,15,17
  13:8,10,12,
  14,16,18
  14:10,12,14,
  16,18,20
  15:15,17,19,
  21,23,25
  16:20,22,24
  17:1,3,5
  30:24  32:4,

Springfield City Council Meeting 5-18-2026

6,8,10,12,14
33:5,7,9,11,
13,16,19
35:6

**W**

**wait**
24:3
**waiting**
23:23
**wanted**
18:10 21:5
**warehouses**
22:3
**warehousing**
21:9,10
23:11
**waste**
35:9
**Water**
14:2
**Waterworks**
14:2
**week**
35:10
**weekend**
36:20
**weeks**
18:3,25
**welfare**
11:4
**Wells**
4:14,15
5:12,13
10:3,4,11,
12,15,17,19,
21,23 11:17,
19,21,24
12:4,7,8
13:18,19
14:12,13
15:25 16:1,
4,6,14,24,25
32:6,7 33:5,
6 34:15,16

**west**
6:5,6 17:8,
16 18:21
19:7,10,13
20:8 23:8
32:22
**wife**
19:22,23
**Wilkey's**
9:10
**Wiltgen**
17:23 18:1
31:3,5,7
**win**
20:10
**Works**
9:9
**written**
31:8,9

**Y**

**year**
5:21 7:24
8:2 27:18,
19,21 28:14,
16 34:1,8,20
35:2,12
**years**
18:5,13
20:12 22:22
23:11,14
24:22 27:7,
22 28:2,12,
13 30:3

**Z**

**zone**
19:14
**zoned**
21:3,4,6
22:5 23:7
**zoning**
6:4 7:13,14
14:23 15:4,5
16:3,9,10

17:7,14,15
20:20 21:15
24:2 28:4
30:21,24
32:16,21,22

**Exhibit 8**

## Ethan Moody

| | |
|---|---|
| From: | Brad Francis |
| Sent: | Tuesday, May 12, 2026 1:42 PM |
| To: | Nick Birmingham |
| Subject: | Re: Re-Zoning Request 4100 West Dickman Road |

Hey Nick.

I appreciate you reaching out. It's always valuable to hear from members of the community. Could you elaborate at all on the need you see for this type of business? I know I've seen RVs parked at some of the existing storage unit facilities in town.

Thanks.

*Brad*

---

**From:** Nick Birmingham <nick@boskerbrick.com>
**Sent:** Monday, May 11, 2026 4:56 PM
**To:** Harry Burdett <hburdett@springfieldmich.com>; Christy Kincaid <ckincaid@springfieldmich.com>; Tracey Cummings <tcummings@springfieldmich.com>; Brad Francis <bfrancis@springfieldmich.com>; Adam Gregory <agregory@springfieldmich.com>; Ron Wells <rwells@springfieldmich.com>
**Subject:** Re-Zoning Request 4100 West Dickman Road

Council Members,

I have become aware of the application for re-zoning of the property located at 4100 West Dickman Road from B2 to IRT for the intended purpose of constructing buildings designed for secured storage, primarily targeting RV and boat owners.

It is my understanding that the individual units will be approximately 15' wide and 50' deep with 12' X 14' overhead doors suitable for private, secure, indoor storage of larger recreational vehicles.

As a business Owner with my company located in the City of Springfield, I want to voice my support for the re-zoning as applied for by the current property Owners as I believe there is a need for this type of facility in this area.

I also believe the improvement to this vacant property will bring revenue to area businesses including restaurants, material suppliers, service companies and contractors during the construction process and when tenants are delivering, retrieving, maintaining or servicing their recreational vehicles.

I have no doubt the increased revenue to the City of Springfield, through property taxes on the facilities as opposed to vacant land, as it has been for as long as I can remember, could help fund salaries, services and maintenance in our City some of which likely have been restricted due to budgeting challenges.

I thank you for your consideration and encourage you to vote in favor of the re-zoning request as I believe the facilities proposed will be a positive addition to our City.

Sincerely,

1

**Nick Birmingham** | President

O: 269.968.8181
C: 269.207.5192
F: 269.968.6960
www.boskerbrick.com
nick@boskerbrick.com

# Exhibit 9

## CITY OF SPRINGFIELD
## COUNTY OF CALHOUN, MICHIGAN
### (Resolution No. 36-26)

Minutes of a regular meeting of the City Council of the City of Springfield held at City Hall on June 1, 2026 at 6:30PM

PRESENT: Members: Cummings, Francis, Gregory, Wells, and Mayor Burdett.

ABSENT: Members: Mayor Pro-tem Kincaid.

The following Resolution was offered for adoption by City Council Member Wells and was seconded by City Council Member Cummings:

### RESOLUTION OF DENIAL OF A REQUEST FOR REZONING FOR 4100 WEST DICKMAN ROAD

### <u>RECITALS</u>

A. Avenue A Holdings, LLC (the "Applicant"), the owner of lands located at 4100 West Dickman Road, Springfield, Michigan, 49037, being Permanent Parcel Number 54-005-070-60 (the "Property"), has requested the rezoning of those lands from the B-2 General Commercial district designation to the IRT Industrial/Research/Technology zoning district.

B. The Applicant submitted a request for a zoning ordinance amendment via a rezoning on or about February 13, 2026, including a narrative.

C. On April 27, 2026, the Planning Commission conducted a public hearing to consider the rezoning request on and following consideration and discussion, voted 3-1 to recommend that the City Council deny the request for rezoning.

D. After due consideration of the Planning Commission's recommendation to deny the rezoning of the Property, on May 18, 2026, the City Council considered and did not adopt Ordinance No. 04-26 to rezone the Property as requested by a vote of 5-1. The City Council

adopted Resolution No. 35-26 to tentatively deny the rezoning request contingent upon the Zoning Administrator and City Attorney drafting a resolution to that effect and the City Council adopting that Resolution thereafter.

E.      By this Resolution, the City Council formally sets forth the following as the primary reasons and findings for its rejection of the Zoning Administrator's recommendation and the City Council's decision of a rezoning denial.

## DECISION

The City Council hereby denies the Applicant's requested rezoning as the Applicant failed to meet the factors of review as outlined in the City of Springfield Zoning Ordinance as follows:

a.  Factor 1: Consistency with the goals, policies, and Future Land Use Map of the Springfield. Although the proposed rezoning would be consistent with the City of Springfield Master Plan (the "Master Plan"), so is the existing zoning district. The City Council finds that the existing zoning district of B-2 is better suited to accomplish the City's goal of accomplishing general commercial development along the frontages of Dickman Road outlined in the Master Plan. This factor has not been met.

b.  Factor 2: Compatibility of the site's physical, geological, hydrological and other environmental. The City Council finds that the sites physical, geological, hydrological, and other environmental site characteristics better support the uses established in the B-2 zoning designation as opposed to the uses established in the IRT zoning district. The City Council finds that the IRT zoning district allows uses that have a greater propensity for nuisance potential, and the B-2 zoning district is

2

better suited to be located adjacent to the manufactured housing on the southwest side of Dickman Road. This factor has not been met.

c. Factor 3: Evidence from the applicant that it cannot receive a reasonabl return on investment. Although the Applicant has averred in its application that the Property has been on the market for 920 days with no offers received, the City Council finds that the Applicant has not submitted any independent evidence beyond the Applicant's statement that the Property cannot receive a reasonable return based on its existing zoning district. This factor has not been met.

d. Factor 4: The compatibility of all the potential uses in the proposed zoning district with surrounding uses and zoning in terms of land suitability, impacts on the environment, density, nature of use, traffic impacts, aesthetics, infrastructure, and potential influence on property value.

The City Council finds that all of the potential uses within the IRT zoning district are less compatible with the manufactured homes uses on the southwest side of Dickman Road that the B-2 zoning district, and the IRT zoning district has a greater likelihood of having negative impacts on the aesthetics and property values of the neighboring properties. This factor is not met.

a. Factor 5: The capacity of utilities and services is sufficient to accommodate the uses permitted in the requested district without compromising the health, safety and welfare of the city. The City Council finds that the existing utilities and services on the Property are sufficient to accommodate the proposed uses within the IRT district. This factor is met.

3

b. <u>Factor 6: The capacity of the street system to safely and efficiently accommodate the expected traffic generated by uses permitted in the reques d zoning district</u> The City Council finds that the capacity of the street system is sufficient to accommodate the proposed uses within the IRT district. This factor is met.

c. <u>Factor 7: The apparent demand for the types of uses permitted in the requested zoning district is relative to the amount of land in the city currently zoned and available to accommodate the demand</u> The City Council finds that there is ample vacant land in the City with the IRT zoning district sufficient to support demand for the types of uses permitted in the IRT zoning district without the need to rezone the Property. In other words, the City Council finds that the rezoning the Property is not necessary to support the apparent demand for the uses in the IRT district. Therefore, this factor is not met.

d. <u>Factor 8: The boundaries of the requested rezoning district are reasonable in relationship to surroundings and construction on the site will be able to meet the dimensional regulations for the zoning district</u>. The boundaries of the Property are sufficiently large to meet the dimensional regulations for the zoning district. The City Council finds that this factor is met.

e. <u>Factor 9: The requested rezoning is to the most appropriate district.</u> While the requested rezoning would permit the Applicant's desired development goals, the City Council finds that the B-2 zoning district is the most appropriate to meet the City's development goals outlined in the Master Plan and the uses allowed in the B-2 zoning district best accomplish the City's commercial development goals along the West Dickman Road frontage. Additionally, the uses permitted in the B-2

4

zoning district are more compatible with the surrounding uses and the zoning districts of the surrounding property. Accordingly, this factor has not been met.

f. **Factor 10·** *If the request is for a specific use, is rezoning the land more appropriate than amending the list of permitted or special land uses in the current zoning district to allow the use?* To the extent that the Applicant has indicated an intent to construct a self-storage facility on the Property, the City Council finds that rezoning the land is no more appropriate than a zoning ordinance amendment to permit the indicated use on the Property. Accordingly, this factor has not been met.

g. **Factor 11:** *The requested rezoning will not create an isolated and unplanned spot zone* The City Council finds that rezoning the Property to IRT would create a single parcel zoned IRT surrounded by properties that are zoned B-2 for the economic benefit of the Applicant. Noting that the B-2 zoning district is consistent with the Master Plan, the City Council finds that establishing an IRT zoned parcel surrounded by B-2 parcels is not desirable from the perspective of planning and consistency in the zoning map. Accordingly, this factor has not been met.

h. **Factor 12:** *The request has not previously been submitted within the past one (1) year, unless conditions have changed or new information has been provided* The request has not been previously submitted, this factor has been met.

Therefore, eight of the twelve relevant factors would not be met for the requested rezoning.

## CONCLUSION

Based on all of the above reasons, findings and considerations, the City Council hereby respectfully denies the IRT rezoning request by the Applicant.

5

The vote to adopt this Resolution was as follows:

YEAS:        Members:    Cummings, Francis, Gregory, Wells, and Mayor Burdett.

NAYS:        Members:    None.

ABSTAIN:    Members:    None.

RESOLUTION DECLARED ADOPTED.


## CERTIFICATION

I hereby certify that the above is a true copy of a Resolution adopted by the City of Springfield City Council at the time, date and place specified above pursuant to the required statutory procedures.

Respectfully submitted,

I, Kristin R. Vogel Clerk of the City of Springfield,
hereby certify the above and foregoing is true and cor-
rect copy of a resolution adopted by the City Council at
a regular meeting held on the 1st day of June, 2021.

Kristin R. Vogel

By _____
Kris Vogel
Springfield City Clerk

6

# Exhibit 10

Springfield City Council Meeting 6-01-2026

# SPRINGFIELD CITY COUNCIL MEETING

June 1, 2026

TRANSCRIBED BY:  JANENE CLEARY, Michigan CSR No. 16359

Springfield City Council Meeting 6-01-2026

APPEARANCES

COUNCIL MEMBERS:
Harry Burdett, Mayor
Christy Kincaid, Mayor Pro-tem
Tracey Cummings
Brad Francis
Adam Gregory
Ron Wells
Bernice Klein

Tina Seaman
Aaron Edelfson
Kris Vogel
APPEARED IN PERSON

(OTHERS AS MAY APPEAR IN THE TRANSCRIPT.)

Springfield City Council Meeting 6-01-2026

INDEX OF PROCEEDINGS

|                              | PAGE |
|------------------------------|------|
| Proceedings                  | 4    |
| Certificate of Transcriptionist | 18 |

Springfield City Council Meeting 6-01-2026

PROCEEDINGS

MR. BURDETT:  All right.  I call the Springfield City Council to order.  All eyes above you.

I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all.

City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings?

MS. CUMMINGS:  Here.

MS. VOGEL:  Francis?

MR. FRANCIS:  Here.

MS. VOGEL:  Gregory?

MR. GREGORY:  Here.

MS. VOGEL:  Wells?

MR. WELLS:  Here.

MS. VOGEL:  Mayor Pro-tem Kincaid?

And Mayor Burdett?

MR. BURDETT:  I'll entertain a motion to excuse Pro-tem Kincaid from tonight's meeting.

MS. KLEIN:  Second.

MR. BURDETT:  That -- that's a motion.  It needs --

MR. GREGORY:  Oh, second.

MR. BURDETT:  Okay.  Moved by Council Member Cummings, seconded by Councilman Francis.

Any questions or comments.

Springfield City Council Meeting 6-01-2026

Okay. City -- City Clerk, call the roll, please.

MS. VOGEL: Council Members Cummings?

MS. CUMMINGS: Yes.

MS. VOGEL: Francis?

MR. FRANCIS: Yes.

MS. VOGEL: Gregory?

MR. GREGORY: Yes.

MS. VOGEL: Wells?

MR. WELLS: Yes.

MS. VOGEL: And Mayor Burdett?

MR. BURDETT: Yes.

Okay. Next we'll go to approve the minutes of the regular meeting on May 18, 2026.

Councilman Gregory, please.

MR. GREGORY: I move to approve the minutes of the regular meeting on May 18, subject to any additions or corrections.

MR. FRANCIS: Second.

MR. BURDETT: Moved by Councilman Gregory, seconded by Councilman Francis to approve the minutes from the last meeting.

Any questions or comments (indiscernible).

Hearing none, City Clerk, call the roll, please.

MS. VOGEL: Council Members Cummings?

MS. CUMMINGS: Yes.

MS. VOGEL: Francis?

Springfield City Council Meeting 6-01-2026

MR. FRANCIS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  And Mayor Burdett?

MR. BURDETT:  Yes.

Next up we have citizen's comments.  It is to be on agenda items only.  Next, City Manager report.

City Manager Edelfson.

MR. EDELFSON:  Good evening, ladies and gentlemen.  So just to touch on a couple of things outside of my published report, I want to talk about our tree planting at Begg Park.  So there's the group, myself, the mayor, our DPW crews in the back there.  So coming alongside CHEP and Mars, ReLeaf Michigan and the Arbor Day Foundation to get 40 trees planted out there at Begg Park.

There's Preston (phonetic) on the left there.  He's one of our firefighters and one of our DPW members.  So special thanks to our DPW and all the work they did to prep the site.  Both Preston and TJ were out there planting with myself and were very patient and willing to do a lot of work that others might not have been able to or willing to, so hats off to them.

So there's the tree.  Once it gets in the ground, each one of these balls weighed about 200 to 300 pounds.  So it --

Springfield City Council Meeting 6-01-2026

they were -- they were heavy.  It was hot.  But -- and I just put this one up there because of the comments that we got on Facebook about Springfield being best-run cities that ever lived, the care and maintenance at Begg Park and the roads, and then that Begg Park is the best park in our area.  So I passed those along to Mike and Chaz to let them know that their guys are doing a wonderful job maintaining our parks and our streets and water and all the things that they do.

And then a couple other things of note not in my pa -- or not my report.  The 2025 water quality report is available on our website.  It's also available for print, and we can mail that if a citizen calls and requests that.  We also have a water shutdown and boil advisory going into effect tomorrow so we can replace some fire hydrants.  That'll happen at North and South New Moon Terrace and Frisbie Boulevard between 22nd and 27th Streets, with an anticipated return of water service at 4 o'clock, even though the boil of water advisory will remain in effect until we give further notice to the residents.

And then lastly, Veregy was on site today to talk with some contractors about the solar project in the back of public works as well as to answer some questions or get some questions answered about the back hallway and the renovations that we're looking at doing back there.  So that concludes the things that are not in my published report.

MR. BURDETT:  Okay.  Any questions or comments for the

Springfield City Council Meeting 6-01-2026

City Manager?  All right.

Next up we have bills in line.

MR. GREGORY:  Mayor?

MR. BURDETT:  Councilman Gregory.

MR. GREGORY:  I move that checks be drawn from various accounts and pay the bills.

MR. FRANCIS:  Second.

MR. BURDETT:  Moved by Councilman Gregory and seconded by Councilman Francis to pay our bills.

Any questions or comments for the bills in line this evening.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings?

MS. KINCAID:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  And Mayor Burdett?

MR. BURDETT:  Yes.

Next up, we have a resolution of denial of rezoning of 4100 West Dickman Road.

Councilman Wells, would you present this by title

Springfield City Council Meeting 6-01-2026

only, please?

MR. WELLS:  Yes, Mr. Mayor.

Resolution of denial of a request for rezoning for 4100 West Dickman Road, and I so move.

MS. CUMMINGS:  Second.

MR. BURDETT:  Moved by Councilman Wells and seconded by Councilman Cummings.

Any questions or comments on this resolution.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Member Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  And Cummings?

MS. CUMMINGS:  Yes.

MR. BURDETT:  Okay.  Next up we have a resolution to approve roof repair of the public safety building.

Councilman Gregory, would you present this, please?

MR. GREGORY:  Yes.

Resolution 37-26 resolved by the Council of the city of Springfield to approve the bid of Sherriff-Goslin Company, in

Springfield City Council Meeting 6-01-2026

an amount not to exceed 19,980, to repair a section of the roof on the Public Safety Building; said expenditure to be made from the fiscal year '25/'26 budget, and I so move.

MR. FRANCIS:  Second.

MR. BURDETT:  Moved by Councilman Gregory, seconded by Councilman Francis.  Any questions or comments on this resolution?

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  And Burdett?

MR. BURDETT:  Yes.

Next up, a resolution to award the bid for Environmental Justice Impact Grant.

Councilman Francis, would you present this, please?

MR. FRANCIS:  I will, Mayor.

Resolution Number 38-26 resolved by the Council Of the city of Springfield to award a bid to Dynamix Complete Property Maintenance, LLC, as part of an Environmental Justice Impact

Springfield City Council Meeting 6-01-2026

Grant from the Mich -- Michigan Department, Great Lakes, and Energy for 525 North 24th Street, in an amount not to exceed $484,734; and be it further resolved to authorize Aaron Edlefson, City Manager, to sign said agreement, and I so move.

MR. GREGORY:  Second.

MR. BURDETT:  Moved by Councilman Francis, seconded by Councilman Gregory.

Any questions or comments on this resolution.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  And Gregory?

MR. GREGORY:  Yes.

MR. BURDETT:  Next up, we have a resolution to approve a quote for public safety carport.

Councilman Wells, would you present this, please?

MR. WELLS:  Yes.

Resolved by the Council of the city of Springfield to

Springfield City Council Meeting 6-01-2026

approve the quote from Hackett Construction & Millwright for the construction of the Public Safety carport, in an amount not to exceed $99,870.  Said funds will be expended from a grant previously authorized.  Be it further resolved to authorize Aaron Edlefson, City Manager, to sign all contracts, agreements and necessary documents to administer and complete the grant, and I so move.

MS. CUMMINGS:  Second.

MR. BURDETT:  Moved by Councilman Wells and seconded by Councilman Cummings.

Any questions or comments on this resolution.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  And Wells?

MR. WELLS:  Yes.

MR. BURDETT:  Next up, a resolution to appoint as new City Council to fill a vacancy.

Council Member Cummings, would you present this,

Springfield City Council Meeting 6-01-2026

please?

MS. CUMMINGS:  Yes.

Resolution 40-26, resolved by the Council of the city of Springfield appoint Bernice Klein to fill the vacancy on the City Council created by the resignation of Bruce Holcomb; said term to expire November 15, 2026, and I so move.

MR. GREGORY:  Second.

MR. BURDETT:  Moved by Council Member Cummings, seconded by Councilman Gregory.

Any questions or comments on this resolution.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  And Burdett?

MR. BURDETT:  Yes.

Welcome aboard.

MS. KLEIN:  Thank you.

MR. BURDETT:  You need to get officially sworn in, but welcome.

Springfield City Council Meeting 6-01-2026

Next up we have Councilman Cummings -- (indiscernible) Councilman Gregory this evening.

MR. GREGORY: So since Lieutenant's here, I'd like to congratulate him on getting his award --

MR. SMITH: Thank you.

MR. GREGORY: -- that he didn't want to tell anybody about, but he got it anyway. That's it for me.

MR. BURDETT: Councilman Francis?

MR. FRANCIS: I want to congratulate and welcome Council Member Klein when -- when she gets sworn in. I also want to wish everyone here in June a happy Pride. I know some people say, "Is this really still necessary?" I cannot go online without seeing why it's necessary, and I'm a big proponent of the idea that we have a lot bigger things to worry about than boys who like boys and girls who like girls.

So happy Pride to everyone in Springfield and surrounding communities. Be able to celebrate with Battle Creek in July, but there's a -- going to -- Marshall this month if you -- if you want to go not too far, and, yeah.

MR. BURDETT: Because we're coming.

Okay. Councilman Wells?

MR. WELLS: After seeing all the hard work about the tree planting, I'm glad I did not go. That's all.

MR. BURDETT: City Manager Edelfson.

MR. EDELFSON: I just -- first of all, congrats to

Springfield City Council Meeting 6-01-2026

Council Member Klein, again, once you swear in.

MS. KLEIN:  Thank you.

MR. EDELFSON:  And then, secondly, special thanks to Kris, because this month, Kris is celebrating her 27th year with the city of Springfield.  So well deserved.

MS. VOGEL:  Thank you.

MR. EDELFSON:  Of course, I've said it before.  I appreciate all my staff's input, but, in particular, Kris is -- she keeps me in line and has given me an incredible amount of knowledge over the last year, so thank you.

MS. VOGEL:  You're welcome.  Thank you.

MR. EDELFSON:  I would like to say I hope we have at least 10 more, but I don't know if that would be an accurate statement, even though I have to re -- I'm sure I have to sign something for her to retire, so we'll see if my pen works that day.  But, in all seriousness, just thank you to her and her 27 years here.

MS. VOGEL:  You're welcome.  Thank you.

MR. BURDETT:  City Clerk Vogel.

MS. VOGEL:  A couple of things.  I wanted to thank -- thank Bernice for her willingness to serve the City.  Also wanted to note that today is the first day that nominating petitions are available for the three council seats that will be on the ballot in November.  So those petitions are now available, and they're due back no later than 4 p.m. on Tuesday,

Springfield City Council Meeting 6-01-2026

July 21st.  And that's all I have.

MR. BURDETT:  Chief, anything for us today?

MR. SMITH:  No, sir.

MR. BURDETT:  Okay.  Mr. Burdett?

UNIDENTIFIED SPEAKER 2:  Nothing from me.

MR. BURDETT:  Tina?

MS. SEAMAN:  Nothing.

MR. BURDETT:  Next up, we have citizen's comments.  If you have anything to say, please step up to the podium, state your name and address.  I do want to thank Bernice for her willingness to serve the City and --

MS. KLEIN:  It will be a learning process.

MS. CUMMINGS:  Yes.

MR. BURDETT:  It still is.  Trust me, it still is.

MS. CUMMINGS:  Yes.

MR. BURDETT:  Congrats (indiscernible) Kris.

MS. VOGEL:  Thank you.

MR. BURDETT:  Twenty-seven years, long time.  You started a few months after I did, so -- and this place runs so much smoother because of you.

MS. VOGEL:  Thank you.

MR. BURDETT:  You keep the place running.

And Lieutenant Smith, for your excellence award.  Congratulations.

MR. SMITH:  Thank you, sir.

Springfield City Council Meeting 6-01-2026

MR. BURDETT:  Well-deserved.

I want to thank everybody that was involved in the tree planting out at Begg Park, and -- a lot of trees out there hopefully they can -- you know, will just make the place, you know, more beautiful, even than it already is.  And I don't think I -- I know I won't be around to watch them grow full, but, you know, a lot of kids in the area will enjoy that.

Anybody else have anything else to add?  Okay.

With that, this meeting's adjourned.

(End of recording.)

Springfield City Council Meeting 6-01-2026

CERTIFICATE OF TRANSCRIBER

I, JANENE CLEARY, do hereby certify that I was authorized to transcribe the foregoing recorded proceeding; and that the transcript is a true and accurate transcription, to the best of my ability, taken while listening to the provided recording.

I FURTHER CERTIFY that I am not of Council or attorney for either or any of the parties to said proceedings, nor in any way interested in the events of this cause, and that I am not related to any of the parties thereto.

DATED this 16th day of JUNE, 2026

JANENE CLEARY, Michigan CSR No. 16359

**Exhibit 9**

**CITY OF SPRINGFIELD**
**COUNTY OF CALHOUN, MICHIGAN**
(Resolution No. 36-26)

Minutes of a regular meeting of the City Council of the City of Springfield held at City Hall on June 1, 2026 at 6:30PM

PRESENT:     Members: Cummings, Francis, Gregory, Wells, and Mayor Burdett.

ABSENT:     Members: Mayor Pro-tem Kincaid.

The following Resolution was offered for adoption by City Council Member Wells and was seconded by City Council Member Cummings:

RESOLUTION OF DENIAL OF A REQUEST FOR REZONING FOR 4100 WEST DICKMAN ROAD

**RECITALS**

A.     Avenue A Holdings, LLC (the "Applicant"), the owner of lands located at 4100 West Dickman Road, Springfield, Michigan, 49037, being Permanent Parcel Number 54-005-070-60 (the "Property"), has requested the rezoning of those lands from the B-2 General Commercial district designation to the IRT Industrial/Research/Technology zoning district.

B.     The Applicant submitted a request for a zoning ordinance amendment via a rezoning on or about February 13, 2026, including a narrative.

C.     On April 27, 2026, the Planning Commission conducted a public hearing to consider the rezoning request on and following consideration and discussion, voted 3-1 to recommend that the City Council deny the request for rezoning.

D.     After due consideration of the Planning Commission's recommendation to deny the rezoning of the Property, on May 18, 2026, the City Council considered and did not adopt Ordinance No. 04-26 to rezone the Property as requested by a vote of 5-1.   The City Council

adopted Resolution No. 35-26 to tentatively deny the rezoning request contingent upon the Zoning Administrator and City Attorney drafting a resolution to that effect and the City Council adopting that Resolution thereafter.

E.    By this Resolution, the City Council formally sets forth the following as the primary reasons and findings for its rejection of the Zoning Administrator's recommendation and the City Council's decision of a rezoning denial.

## DECISION

The City Council hereby denies the Applicant's requested rezoning as the Applicant failed to meet the factors of review as outlined in the City of Springfield Zoning Ordinance as follows:

a.  Factor 1: Consistency with the goals, policies, and Future Land Use Map of the Springfield. Although the proposed rezoning would be consistent with the City of Springfield Master Plan (the "Master Plan"), so is the existing zoning district. The City Council finds that the existing zoning district of B-2 is better suited to accomplish the City's goal of accomplishing general commercial development along the frontages of Dickman Road outlined in the Master Plan. This factor has not been met.

b.  Factor 2: Compatibility of the site's physical, geological, hydrological and other environmental.    The City Council finds that the sites physical, geological, hydrological, and other environmental site characteristics better support the uses established in the B-2 zoning designation as opposed to the uses established in the IRT zoning district. The City Council finds that the IRT zoning district allows uses that have a greater propensity for nuisance potential, and the B-2 zoning district is

2

better suited to be located adjacent to the manufactured housing on the southwest side of Dickman Road. This factor has not been met.

c. Factor 3: Evidence from the applicant that it cannot receive a reasonabl return on investment. Although the Applicant has averred in its application that the Property has been on the market for 920 days with no offers received, the City Council finds that the Applicant has not submitted any independent evidence beyond the Applicant's statement that the Property cannot receive a reasonable return based on its existing zoning district. This factor has not been met.

d. Factor 4: The compatibility of all the potential uses in the proposed zoning district with surrounding uses and zoning in terms of land suitability, impacts on the environment, density, nature of use, traffic impacts, aesthetics, infrastructure, and potential influence on property value.

The City Council finds that all of the potential uses within the IRT zoning district are less compatible with the manufactured homes uses on the southwest side of Dickman Road that the B-2 zoning district, and the IRT zoning district has a greater likelihood of having negative impacts on the aesthetics and property values of the neighboring properties. This factor is not met.

a. Factor 5: The capacity of utilities and services is sufficient to accommodate the uses permitted in the requested district without compromising the health, safety and welfare of the city. The City Council finds that the existing utilities and services on the Property are sufficient to accommodate the proposed uses within the IRT district. This factor is met.

3

b. Factor 6: <u>The capacity of the street system to safely and efficiently accommodate the expected traffic generated by uses permitted in the requested zoning district</u> The City Council finds that the capacity of the street system is sufficient to accommodate the proposed uses within the IRT district. This factor is met.

c. Factor 7: <u>The apparent demand for the types of uses permitted in the requested zoning district is relative to the amount of land in the city currently zoned and available to accommodate the demand</u> The City Council finds that there is ample vacant land in the City with the IRT zoning district sufficient to support demand for the types of uses permitted in the IRT zoning district without the need to rezone the Property. In other words, the City Council finds that the rezoning the Property is not necessary to support the apparent demand for the uses in the IRT district. Therefore, this factor is not met.

d. Factor 8: <u>The boundaries of the requested rezoning district are reasonable in relationship to surroundings and construction on the site will be able to meet the dimensional regulations for the zoning district</u>. The boundaries of the Property are sufficiently large to meet the dimensional regulations for the zoning district. The City Council finds that this factor is met.

e. Factor 9: <u>The requested rezoning is to the most appropriate district.</u> While the requested rezoning would permit the Applicant's desired development goals, the City Council finds that the B-2 zoning district is the most appropriate to meet the City's development goals outlined in the Master Plan and the uses allowed in the B-2 zoning district best accomplish the City's commercial development goals along the West Dickman Road frontage. Additionally, the uses permitted in the B-2

4

zoning district are more compatible with the surrounding uses and the zoning districts of the surrounding property. Accordingly, this factor has not been met.

f. <u>Factor 10: If the request is for a specific use, is rezoning the land more appropriate than amending the list of permitted or special land uses in the current zoning district to allow the use?</u> To the extent that the Applicant has indicated an intent to construct a self-storage facility on the Property, the City Council finds that rezoning the land is no more appropriate than a zoning ordinance amendment to permit the indicated use on the Property. Accordingly, this factor has not been met.

g. <u>Factor 11: The requested rezoning will not create an isolated and unplanned spot zone.</u> The City Council finds that rezoning the Property to IRT would create a single parcel zoned IRT surrounded by properties that are zoned B-2 for the economic benefit of the Applicant. Noting that the B-2 zoning district is consistent with the Master Plan, the City Council finds that establishing an IRT zoned parcel surrounded by B-2 parcels is not desirable from the perspective of planning and consistency in the zoning map. Accordingly, this factor has not been met.

h. <u>Factor 12: The request has not previously been submitted within the past one (1) year, unless conditions have changed or new information has been provided.</u> The request has not been previously submitted, this factor has been met.

Therefore, eight of the twelve relevant factors would not be met for the requested rezoning.

## CONCLUSION

Based on all of the above reasons, findings and considerations, the City Council hereby respectfully denies the IRT rezoning request by the Applicant.

5

The vote to adopt this Resolution was as follows:

YEAS:      Members:    Cummings, Francis, Gregory, Wells, and Mayor Burdett.

NAYS:      Members:    None.

ABSTAIN:   Members:    None.

RESOLUTION DECLARED ADOPTED.

## CERTIFICATION

I hereby certify that the above is a true copy of a Resolution adopted by the City of Springfield City Council at the time, date and place specified above pursuant to the required statutory procedures.

Respectfully submitted,

I, Kristin R. Vogel Clerk of the City of Springfield,
hereby certify the above and foregoing is true and cor-
rect copy of a resolution adopted by the City Council at
a regular meeting held on the 1ˢᵗ day of ____, 20__

Kristin R. Vogel

By _____
     Kris Vogel
     Springfield City Clerk

6

Springfield City Council Meeting 6-01-2026

**$**

$484,734
 11:3
$99,870
 12:3

**1**

10
 15:13
15
 13:6
18
 5:13,16
19,980
 10:1

**2**

2
 16:5
200
 6:25
2025
 7:10
2026
 5:13 13:6
21st
 16:1
22nd
 7:15
24th
 11:2
25/'26
 10:3
27
 15:16
27th
 7:15 15:4

**3**

300
 6:25

37-26
 9:24
38-26
 10:23

**4**

4
 7:16 15:25
40
 6:16
40-26
 13:3
4100
 8:24 9:4

**5**

525
 11:2

**A**

Aaron
 11:4 12:5
aboard
 13:22
accounts
 8:6
accurate
 15:13
add
 17:8
additions
 5:16
address
 16:10
adjourned
 17:9
administer
 12:6
advisory
 7:13,17
agenda
 6:9

agreement
 11:4
agreements
 12:5
allegiance
 4:4
alongside
 6:15
America
 4:5
amount
 10:1 11:2
 12:2 15:9
anticipated
 7:16
appoint
 12:23 13:4
approve
 5:12,15,20
 9:21,25
 11:21 12:1
Arbor
 6:16
area
 7:5 17:7
authorize
 11:3 12:4
authorized
 12:4
award
 10:19,24
 14:4 16:23

**B**

back
 6:14 7:20,
 22,23 15:25
ballot
 15:24
balls
 6:25
Battle
 14:17
beautiful
 17:5

Begg
 6:13,17 7:4,
 5 17:3
Bernice
 13:4 15:21
 16:10
best-run
 7:3
bid
 9:25 10:19,
 24
big
 14:13
bigger
 14:14
bills
 8:2,6,9,10
boil
 7:13,17
Boulevard
 7:15
boys
 14:15
Bruce
 13:5
budget
 10:3
building
 9:21 10:2
Burdett
 4:2,17,18,
 21,23 5:10,
 11,19 6:6,7
 7:25 8:4,8,
 21,22 9:6,
 14,15,20
 10:5,17,18
 11:7,15,16,
 21 12:9,15,
 16,23 13:8,
 20,21,24
 14:8,20,24
 15:19 16:2,
 4,6,8,14,16,
 18,22 17:1

Springfield City Council Meeting 6-01-2026

**C**

**call**
 4:2,7 5:1,22
 8:12 9:9
 10:8 11:10
 12:12 13:11
**calls**
 7:12
**care**
 7:4
**carport**
 11:22 12:2
**celebrate**
 14:17
**celebrating**
 15:4
**Chaz**
 7:6
**checks**
 8:5
**CHEP**
 6:15
**Chief**
 16:2
**cities**
 7:3
**citizen**
 7:12
**citizen's**
 6:8 16:8
**city**
 4:2,7 5:1,22
 6:9,10 8:1,
 12 9:9,24
 10:8,24
 11:4,10,25
 12:5,12,24
 13:3,5,11
 14:24 15:5,
 19,21 16:11
**Clerk**
 4:7 5:1,22
 8:12 9:9
 10:8 11:10
 12:12 13:11

 15:19
**comments**
 4:25 5:21
 6:8 7:2,25
 8:10 9:8
 10:6 11:9
 12:11 13:10
 16:8
**communities**
 14:17
**Company**
 9:25
**complete**
 10:24 12:6
**concludes**
 7:23
**congrats**
 14:25 16:16
**congratulate**
 14:4,9
**Congratulatio
ns**
 16:24
**construction**
 12:1,2
**contractors**
 7:20
**contracts**
 12:5
**corrections**
 5:17
**council**
 4:3,8,23
 5:2,23 8:13
 9:10,24
 10:9,23
 11:11,25
 12:13,24,25
 13:3,5,8,12
 14:10 15:1,
 23
**Councilman**
 4:24 5:14,
 19,20 8:4,8,
 9,25 9:6,7,
 22 10:5,6,21
 11:7,8,23

 12:9,10 13:9
 14:1,2,8,21
**couple**
 6:12 7:9
 15:20
**created**
 13:5
**Creek**
 14:17
**crews**
 6:14
**Cummings**
 4:8,9,23
 5:2,3,23,24
 8:13 9:5,7,
 18,19 10:9,
 10 11:17,18
 12:8,10,17,
 18,25 13:2,
 8,14,15 14:1
 16:13,15

**D**

**day**
 6:16 15:16,
 22
**denial**
 8:23 9:3
**Department**
 11:1
**deserved**
 15:5
**Dickman**
 8:24 9:4
**documents**
 12:6
**DPW**
 6:14,19,20
**drawn**
 8:5
**due**
 15:25
**Dynamix**
 10:24

**E**

**Edelfson**
 6:10,11
 14:24,25
 15:3,7,12
**Edlefson**
 11:4 12:5
**effect**
 7:13,18
**end**
 17:10
**Energy**
 11:2
**enjoy**
 17:7
**entertain**
 4:18
**Environmental**
 10:20,25
**evening**
 6:11 8:11
 14:2
**exceed**
 10:1 11:2
 12:3
**excellence**
 16:23
**excuse**
 4:18
**expended**
 12:3
**expenditure**
 10:2
**expire**
 13:6
**eyes**
 4:3

**F**

**Facebook**
 7:3
**fill**
 12:24 13:4

Springfield City Council Meeting 6-01-2026

fire
  7:14
firefighters
  6:19
fiscal
  10:3
Flag
  4:4
Foundation
  6:16
Francis
  4:10,11,24
  5:4,5,18,20,
  25 6:1 8:7,
  9,15,16
  9:12,13
  10:4,6,13,
  14,21,22
  11:7,13,14
  12:13,14
  13:18,19
  14:8,9
Frisbie
  7:15
full
  17:6
funds
  12:3

**G**

gentlemen
  6:11
girls
  14:15
give
  7:18
glad
  14:23
God
  4:6
Good
  6:11
grant
  10:20 11:1
  12:3,6

Great
  11:1
Gregory
  4:12,13,22
  5:6,7,14,15,
  19 6:2,3
  8:3,4,5,8,
  17,18 9:16,
  17,22,23
  10:5,11,12
  11:6,8,19,20
  12:19,20
  13:7,9,12,13
  14:2,3,6
ground
  6:24
group
  6:14
grow
  17:6
guys
  7:6

**H**

Hackett
  12:1
hallway
  7:22
happen
  7:14
happy
  14:11,16
hard
  14:22
hats
  6:23
Hearing
  5:22 8:12
  9:9 10:8
  11:10 12:12
  13:11
heavy
  7:1
Holcomb
  13:5

hope
  15:12
hot
  7:1
hydrants
  7:14

**I**

idea
  14:14
Impact
  10:20,25
incredible
  15:9
indiscernible
  5:21 14:1
  16:16
indivisible
  4:6
input
  15:8
involved
  17:2
items
  6:9

**J**

job
  7:7
July
  14:18 16:1
June
  14:11
justice
  4:6 10:20,25

**K**

kids
  17:7
Kincaid
  4:16,19 8:14
Klein
  4:20 13:4,23

  14:10 15:1,2
  16:12
knowledge
  15:10
Kris
  15:4,8 16:16

**L**

ladies
  6:11
Lakes
  11:1
lastly
  7:19
learning
  16:12
left
  6:18
liberty
  4:6
Lieutenant
  16:23
Lieutenant's
  14:3
lived
  7:4
LLC
  10:25
long
  16:18
lot
  6:22 14:14
  17:3,7

**M**

made
  10:2
mail
  7:11
maintaining
  7:7
maintenance
  7:4 10:25

Springfield City Council Meeting 6-01-2025

make
  17:4
Manager
  6:9,10 8:1
  11:4 12:5
  14:24
Mars
  6:15
Marshall
  14:18
mayor
  4:16,17 5:10
  6:6,14 8:3,
  21 9:2 10:22
meeting
  4:19 5:13,
  16,20
meeting's
  17:9
Member
  4:23 9:10
  12:25 13:8
  14:10 15:1
members
  4:8 5:2,23
  6:19 8:13
  10:9 11:11
  12:13 13:12
Mich
  11:1
Michigan
  6:15 11:1
Mike
  7:6
Millwright
  12:1
minutes
  5:12,15,20
month
  14:18 15:4
months
  16:19
Moon
  7:15
motion
  4:18,21

move
  5:15 8:5 9:4
  10:3 11:5
  12:7 13:6
Moved
  4:23 5:19
  8:8 9:6 10:5
  11:7 12:9
  13:8

## N

Nation
  4:5
nominating
  15:22
North
  7:14 11:2
note
  7:9 15:22
notice
  7:18
November
  13:6 15:24
Number
  10:23

## O

officially
  13:24
online
  14:13
order
  4:3

## P

p.m.
  15:25
pa
  7:9
park
  6:13,17 7:4,
  5 17:3

parks
  7:7
part
  10:25
passed
  7:5
patient
  6:22
pay
  8:6,9
pen
  15:15
people
  14:12
petitions
  15:23,24
phonetic
  6:18
place
  16:19,22
  17:4
planted
  6:16
planting
  6:13,21
  14:23 17:3
pledge
  4:4
podium
  16:9
pounds
  6:25
prep
  6:20
present
  8:25 9:22
  10:21 11:23
  12:25
Preston
  6:18,21
previously
  12:4
Pride
  14:11,16
print
  7:11

Pro-tem
  4:16,19
process
  16:12
project
  7:20
Property
  10:24
proponent
  14:14
public
  7:20 9:21
  10:2 11:22
  12:2
published
  6:12 7:24
put
  7:2

## Q

quality
  7:10
questions
  4:25 5:21
  7:21,25 8:10
  9:8 10:6
  11:9 12:11
  13:10
quote
  11:22 12:1

## R

recording
  17:10
regular
  5:13,16
Releaf
  6:15
remain
  7:17
renovations
  7:22
repair
  9:21 10:1

Springfield City Council Meeting 6-01-2026

replace
  7:14
report
  6:9,13 7:10,
  24
Republic
  4:5
request
  9:3
requests
  7:12
residents
  7:18
resignation
  13:5
resolution
  8:23 9:3,8,
  20,24 10:7,
  19,23 11:9,
  21 12:11,23
  13:3,10
resolved
  9:24 10:23
  11:3,25 12:4
  13:3
retire
  15:15
return
  7:16
rezoning
  8:23 9:3
Road
  8:24 9:4
roads
  7:4
roll
  4:7 5:1,22
  8:12 9:9
  10:8 11:10
  12:12 13:11
roof
  9:21 10:1
running
  16:22
runs
  16:19

**S**

safety
  9:21 10:2
  11:22 12:2
SEAMAN
  16:7
seats
  15:23
seconded
  4:24 5:19
  8:8 9:6 10:5
  11:7 12:9
  13:9
section
  10:1
seriousness
  15:16
serve
  15:21 16:11
service
  7:16
Sherriff-
goslin
  9:25
shutdown
  7:13
sign
  11:4 12:5
  15:14
sir
  16:3,25
site
  6:20 7:19
Smith
  14:5 16:3,
  23,25
smoother
  16:20
solar
  7:20
South
  7:14
SPEAKER
  16:5

special
  6:19 15:3
Springfield
  4:2 7:3 9:25
  10:24 11:25
  13:4 14:16
  15:5
staff's
  15:8
stands
  4:5
started
  16:19
state
  16:9
statement
  15:14
States
  4:4
step
  16:9
Street
  11:2
streets
  7:7,16
subject
  5:16
surrounding
  14:17
swear
  15:1
sworn
  13:24 14:10

**T**

talk
  6:13 7:19
term
  13:6
Terrace
  7:15
That'll
  7:14
things
  6:12 7:8,9,

23 14:14
  15:20
time
  16:18
Tina
  16:6
title
  8:25
TJ
  6:21
today
  7:19 15:22
  16:2
tomorrow
  7:13
tonight's
  4:19
touch
  6:12
tree
  6:13,24
  14:23 17:3
trees
  6:16 17:3
Trust
  16:14
Tuesday
  15:25
Twenty-seven
  16:18

**U**

UNIDENTIFIED
  16:5
United
  4:4

**V**

vacancy
  12:24 13:4
Veregy
  7:19
Vogel
  4:8,10,12,

Springfield City Council Meeting 6-01-2026

14,16 5:2,4,
6,8,10,23,25
6:2,4,6
8:13,15,17,
19,21 9:10,
12,14,16,18
10:9,11,13,
15,17 11:11,
13,15,17,19
12:13,15,17,
19,21 13:12,
14,16,18,20
15:6,11,18,
19,20 16:17,
21

---

### W

**wanted**
  15:20,22
**watch**
  17:6
**water**
  7:8,10,12,
  16,17
**website**
  7:11
**weighed**
  6:25
**Well-deserved**
  17:1
**Wells**
  4:14,15 5:8,
  9 6:4,5
  8:19,20,25
  9:2,6,10,11
  10:15,16
  11:11,12,23,
  24 12:9,21,
  22 13:16,17
  14:21,22
**West**
  8:24 9:4
**willingness**
  15:21 16:11
**wonderful**
  7:7

**work**
  6:20,22
  14:22
**works**
  7:21 15:15
**worry**
  14:14

---

### Y

**year**
  10:3 15:4,10
**years**
  15:17 16:18

# Exhibit 10

# SPRINGFIELD CITY COUNCIL MEETING

## June 1, 2026

TRANSCRIBED BY:   JANENE CLEARY, Michigan CSR No. 16359

Springfield City Council Meeting 6-01-2026

APPEARANCES


COUNCIL MEMBERS:
Harry Burdett, Mayor
Christy Kincaid, Mayor Pro-tem
Tracey Cummings
Brad Francis
Adam Gregory
Ron Wells
Bernice Klein


Tina Seaman
Aaron Edelfson
Kris Vogel
APPEARED IN PERSON




        (OTHERS AS MAY APPEAR IN THE TRANSCRIPT.)

Springfield City Council Meeting 6-01-2026

INDEX OF PROCEEDINGS

|                                  | PAGE |
|----------------------------------|------|
| Proceedings                      | 4    |
| Certificate of Transcriptionist  | 18   |

Springfield City Council Meeting 6-01-2026

PROCEEDINGS

MR. BURDETT:  All right.  I call the Springfield City Council to order.  All eyes above you.

I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all.

City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings?

MS. CUMMINGS:  Here.

MS. VOGEL:  Francis?

MR. FRANCIS:  Here.

MS. VOGEL:  Gregory?

MR. GREGORY:  Here.

MS. VOGEL:  Wells?

MR. WELLS:  Here.

MS. VOGEL:  Mayor Pro-tem Kincaid?

And Mayor Burdett?

MR. BURDETT:  I'll entertain a motion to excuse Pro-tem Kincaid from tonight's meeting.

MS. KLEIN:  Second.

MR. BURDETT:  That -- that's a motion.  It needs --

MR. GREGORY:  Oh, second.

MR. BURDETT:  Okay.  Moved by Council Member Cummings, seconded by Councilman Francis.

Any questions or comments.

Springfield City Council Meeting 6-01-2026

Okay.  City -- City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  And Mayor Burdett?

MR. BURDETT:  Yes.

Okay.  Next we'll go to approve the minutes of the regular meeting on May 18, 2026.

Councilman Gregory, please.

MR. GREGORY:  I move to approve the minutes of the regular meeting on May 18, subject to any additions or corrections.

MR. FRANCIS:  Second.

MR. BURDETT:  Moved by Councilman Gregory, seconded by Councilman Francis to approve the minutes from the last meeting.

Any questions or comments (indiscernible).

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Francis?

Springfield City Council Meeting 6-01-2026

MR. FRANCIS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  And Mayor Burdett?

MR. BURDETT:  Yes.

Next up we have citizen's comments.  It is to be on agenda items only.  Next, City Manager report.

City Manager Edelfson.

MR. EDELFSON:  Good evening, ladies and gentlemen.  So just to touch on a couple of things outside of my published report, I want to talk about our tree planting at Begg Park.  So there's the group, myself, the mayor, our DPW crews in the back there.  So coming alongside CHEP and Mars, ReLeaf Michigan and the Arbor Day Foundation to get 40 trees planted out there at Begg Park.

There's Preston (phonetic) on the left there.  He's one of our firefighters and one of our DPW members.  So special thanks to our DPW and all the work they did to prep the site.  Both Preston and TJ were out there planting with myself and were very patient and willing to do a lot of work that others might not have been able to or willing to, so hats off to them.

So there's the tree.  Once it gets in the ground, each one of these balls weighed about 200 to 300 pounds.  So it --

Springfield City Council Meeting 6-01-2026

they were -- they were heavy.  It was hot.  But -- and I just put this one up there because of the comments that we got on Facebook about Springfield being best-run cities that ever lived, the care and maintenance at Begg Park and the roads, and then that Begg Park is the best park in our area.  So I passed those along to Mike and Chaz to let them know that their guys are doing a wonderful job maintaining our parks and our streets and water and all the things that they do.

And then a couple other things of note not in my pa -- or not my report.  The 2025 water quality report is available on our website.  It's also available for print, and we can mail that if a citizen calls and requests that.  We also have a water shutdown and boil advisory going into effect tomorrow so we can replace some fire hydrants.  That'll happen at North and South New Moon Terrace and Frisbie Boulevard between 22nd and 27th Streets, with an anticipated return of water service at 4 o'clock, even though the boil of water advisory will remain in effect until we give further notice to the residents.

And then lastly, Veregy was on site today to talk with some contractors about the solar project in the back of public works as well as to answer some questions or get some questions answered about the back hallway and the renovations that we're looking at doing back there.  So that concludes the things that are not in my published report.

MR. BURDETT:  Okay.  Any questions or comments for the

Springfield City Council Meeting 6-01-2026

City Manager?  All right.

Next up we have bills in line.

MR. GREGORY:  Mayor?

MR. BURDETT:  Councilman Gregory.

MR. GREGORY:  I move that checks be drawn from various accounts and pay the bills.

MR. FRANCIS:  Second.

MR. BURDETT:  Moved by Councilman Gregory and seconded by Councilman Francis to pay our bills.

Any questions or comments for the bills in line this evening.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings?

MS. KINCAID:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  And Mayor Burdett?

MR. BURDETT:  Yes.

Next up, we have a resolution of denial of rezoning of 4100 West Dickman Road.

Councilman Wells, would you present this by title

Springfield City Council Meeting 6-01-2026

only, please?

MR. WELLS:  Yes, Mr. Mayor.

Resolution of denial of a request for rezoning for 4100 West Dickman Road, and I so move.

MS. CUMMINGS:  Second.

MR. BURDETT:  Moved by Councilman Wells and seconded by Councilman Cummings.

Any questions or comments on this resolution.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Member Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  And Cummings?

MS. CUMMINGS:  Yes.

MR. BURDETT:  Okay.  Next up we have a resolution to approve roof repair of the public safety building.

Councilman Gregory, would you present this, please?

MR. GREGORY:  Yes.

Resolution 37-26 resolved by the Council of the city of Springfield to approve the bid of Sherriff-Goslin Company, in

Springfield City Council Meeting 6-01-2026

an amount not to exceed 19,980, to repair a section of the roof on the Public Safety Building; said expenditure to be made from the fiscal year '25/'26 budget, and I so move.

MR. FRANCIS:  Second.

MR. BURDETT:  Moved by Councilman Gregory, seconded by Councilman Francis.  Any questions or comments on this resolution?

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  And Burdett?

MR. BURDETT:  Yes.

Next up, a resolution to award the bid for Environmental Justice Impact Grant.

Councilman Francis, would you present this, please?

MR. FRANCIS:  I will, Mayor.

Resolution Number 38-26 resolved by the Council Of the city of Springfield to award a bid to Dynamix Complete Property Maintenance, LLC, as part of an Environmental Justice Impact

Springfield City Council Meeting 6-01-2026

Grant from the Mich -- Michigan Department, Great Lakes, and Energy for 525 North 24th Street, in an amount not to exceed $484,734; and be it further resolved to authorize Aaron Edlefson, City Manager, to sign said agreement, and I so move.

MR. GREGORY:  Second.

MR. BURDETT:  Moved by Councilman Francis, seconded by Councilman Gregory.

Any questions or comments on this resolution.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  And Gregory?

MR. GREGORY:  Yes.

MR. BURDETT:  Next up, we have a resolution to approve a quote for public safety carport.

Councilman Wells, would you present this, please?

MR. WELLS:  Yes.

Resolved by the Council of the city of Springfield to

Springfield City Council Meeting 6-01-2026

approve the quote from Hackett Construction & Millwright for the construction of the Public Safety carport, in an amount not to exceed $99,870.  Said funds will be expended from a grant previously authorized.  Be it further resolved to authorize Aaron Edlefson, City Manager, to sign all contracts, agreements and necessary documents to administer and complete the grant, and I so move.

MS. CUMMINGS:  Second.

MR. BURDETT:  Moved by Councilman Wells and seconded by Councilman Cummings.

Any questions or comments on this resolution.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  Burdett?

MR. BURDETT:  Yes.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  And Wells?

MR. WELLS:  Yes.

MR. BURDETT:  Next up, a resolution to appoint as new City Council to fill a vacancy.

Council Member Cummings, would you present this,

Springfield City Council Meeting 6-01-2026

please?

MS. CUMMINGS:  Yes.

Resolution 40-26, resolved by the Council of the city of Springfield appoint Bernice Klein to fill the vacancy on the City Council created by the resignation of Bruce Holcomb; said term to expire November 15, 2026, and I so move.

MR. GREGORY:  Second.

MR. BURDETT:  Moved by Council Member Cummings, seconded by Councilman Gregory.

Any questions or comments on this resolution.

Hearing none, City Clerk, call the roll, please.

MS. VOGEL:  Council Members Gregory?

MR. GREGORY:  Yes.

MS. VOGEL:  Cummings?

MS. CUMMINGS:  Yes.

MS. VOGEL:  Wells?

MR. WELLS:  Yes.

MS. VOGEL:  Francis?

MR. FRANCIS:  Yes.

MS. VOGEL:  And Burdett?

MR. BURDETT:  Yes.

Welcome aboard.

MS. KLEIN:  Thank you.

MR. BURDETT:  You need to get officially sworn in, but welcome.

Springfield City Council Meeting 6-01-2026

Next up we have Councilman Cummings -- (indiscernible) Councilman Gregory this evening.

MR. GREGORY:  So since Lieutenant's here, I'd like to congratulate him on getting his award --

MR. SMITH:  Thank you.

MR. GREGORY:  -- that he didn't want to tell anybody about, but he got it anyway.  That's it for me.

MR. BURDETT:  Councilman Francis?

MR. FRANCIS:  I want to congratulate and welcome Council Member Klein when -- when she gets sworn in.  I also want to wish everyone here in June a happy Pride.  I know some people say, "Is this really still necessary?"  I cannot go online without seeing why it's necessary, and I'm a big proponent of the idea that we have a lot bigger things to worry about than boys who like boys and girls who like girls.

So happy Pride to everyone in Springfield and surrounding communities.  Be able to celebrate with Battle Creek in July, but there's a -- going to -- Marshall this month if you -- if you want to go not too far, and, yeah.

MR. BURDETT:  Because we're coming.

Okay.  Councilman Wells?

MR. WELLS:  After seeing all the hard work about the tree planting, I'm glad I did not go.  That's all.

MR. BURDETT:  City Manager Edelfson.

MR. EDELFSON:  I just -- first of all, congrats to

Springfield City Council Meeting 6-01-2026

Council Member Klein, again, once you swear in.

MS. KLEIN:  Thank you.

MR. EDELFSON:  And then, secondly, special thanks to Kris, because this month, Kris is celebrating her 27th year with the city of Springfield.  So well deserved.

MS. VOGEL:  Thank you.

MR. EDELFSON:  Of course, I've said it before.  I appreciate all my staff's input, but, in particular, Kris is -- she keeps me in line and has given me an incredible amount of knowledge over the last year, so thank you.

MS. VOGEL:  You're welcome.  Thank you.

MR. EDELFSON:  I would like to say I hope we have at least 10 more, but I don't know if that would be an accurate statement, even though I have to re -- I'm sure I have to sign something for her to retire, so we'll see if my pen works that day.  But, in all seriousness, just thank you to her and her 27 years here.

MS. VOGEL:  You're welcome.  Thank you.

MR. BURDETT:  City Clerk Vogel.

MS. VOGEL:  A couple of things.  I wanted to thank -- thank Bernice for her willingness to serve the City.  Also wanted to note that today is the first day that nominating petitions are available for the three council seats that will be on the ballot in November.  So those petitions are now available, and they're due back no later than 4 p.m. on Tuesday,

Springfield City Council Meeting 6-01-2026

July 21st.  And that's all I have.

MR. BURDETT:  Chief, anything for us today?

MR. SMITH:  No, sir.

MR. BURDETT:  Okay.  Mr. Burdett?

UNIDENTIFIED SPEAKER 2:  Nothing from me.

MR. BURDETT:  Tina?

MS. SEAMAN:  Nothing.

MR. BURDETT:  Next up, we have citizen's comments.  If you have anything to say, please step up to the podium, state your name and address.  I do want to thank Bernice for her willingness to serve the City and --

MS. KLEIN:  It will be a learning process.

MS. CUMMINGS:  Yes.

MR. BURDETT:  It still is.  Trust me, it still is.

MS. CUMMINGS:  Yes.

MR. BURDETT:  Congrats (indiscernible) Kris.

MS. VOGEL:  Thank you.

MR. BURDETT:  Twenty-seven years, long time.  You started a few months after I did, so -- and this place runs so much smoother because of you.

MS. VOGEL:  Thank you.

MR. BURDETT:  You keep the place running.

And Lieutenant Smith, for your excellence award. Congratulations.

MR. SMITH:  Thank you, sir.

Springfield City Council Meeting 6-01-2026

MR. BURDETT:  Well-deserved.

I want to thank everybody that was involved in the tree planting out at Begg Park, and -- a lot of trees out there hopefully they can -- you know, will just make the place, you know, more beautiful, even than it already is.  And I don't think I -- I know I won't be around to watch them grow full, but, you know, a lot of kids in the area will enjoy that.

Anybody else have anything else to add?  Okay.

With that, this meeting's adjourned.

(End of recording.)

Springfield City Council Meeting 6-01-2026

CERTIFICATE OF TRANSCRIBER

I, JANENE CLEARY, do hereby certify that I was authorized to transcribe the foregoing recorded proceeding; and that the transcript is a true and accurate transcription, to the best of my ability, taken while listening to the provided recording.

I FURTHER CERTIFY that I am not of Council or attorney for either or any of the parties to said proceedings, nor in any way interested in the events of this cause, and that I am not related to any of the parties thereto.

DATED this 16th day of JUNE, 2026

JANENE CLEARY, Michigan CSR No. 16359

Springfield City Council Meeting 6-01-2026

**$**

**$484,734**
 11:3
**$99,870**
 12:3

**1**

**10**
 15:13
**15**
 13:6
**18**
 5:13,16
**19,980**
 10:1

**2**

**2**
 16:5
**200**
 6:25
**2025**
 7:10
**2026**
 5:13 13:6
**21st**
 16:1
**22nd**
 7:15
**24th**
 11:2
**25/'26**
 10:3
**27**
 15:16
**27th**
 7:15 15:4

**3**

**300**
 6:25

**37-26**
 9:24
**38-26**
 10:23

**4**

**4**
 7:16 15:25
**40**
 6:16
**40-26**
 13:3
**4100**
 8:24 9:4

**5**

**525**
 11:2

**A**

**Aaron**
 11:4 12:5
**aboard**
 13:22
**accounts**
 8:6
**accurate**
 15:13
**add**
 17:8
**additions**
 5:16
**address**
 16:10
**adjourned**
 17:9
**administer**
 12:6
**advisory**
 7:13,17
**agenda**
 6:9

**agreement**
 11:4
**agreements**
 12:5
**allegiance**
 4:4
**alongside**
 6:15
**America**
 4:5
**amount**
 10:1 11:2
 12:2 15:9
**anticipated**
 7:16
**appoint**
 12:23 13:4
**approve**
 5:12,15,20
 9:21,25
 11:21 12:1
**Arbor**
 6:16
**area**
 7:5 17:7
**authorize**
 11:3 12:4
**authorized**
 12:4
**award**
 10:19,24
 14:4 16:23

**B**

**back**
 6:14 7:20,
 22,23 15:25
**ballot**
 15:24
**balls**
 6:25
**Battle**
 14:17
**beautiful**
 17:5

**Begg**
 6:13,17 7:4,
 5 17:3
**Bernice**
 13:4 15:21
 16:10
**best-run**
 7:3
**bid**
 9:25 10:19,
 24
**big**
 14:13
**bigger**
 14:14
**bills**
 8:2,6,9,10
**boil**
 7:13,17
**Boulevard**
 7:15
**boys**
 14:15
**Bruce**
 13:5
**budget**
 10:3
**building**
 9:21 10:2
**Burdett**
 4:2,17,18,
 21,23 5:10,
 11,19 6:6,7
 7:25 8:4,8,
 21,22 9:6,
 14,15,20
 10:5,17,18
 11:7,15,16,
 21 12:9,15,
 16,23 13:8,
 20,21,24
 14:8,20,24
 15:19 16:2,
 4,6,8,14,16,
 18,22 17:1

Springfield City Council Meeting 6-01-2026

## C

**call**
4:2,7 5:1,22
8:12 9:9
10:8 11:10
12:12 13:11

**calls**
7:12

**care**
7:4

**carport**
11:22 12:2

**celebrate**
14:17

**celebrating**
15:4

**Chaz**
7:6

**checks**
8:5

**CHEP**
6:15

**Chief**
16:2

**cities**
7:3

**citizen**
7:12

**citizen's**
6:8 16:8

**city**
4:2,7 5:1,22
6:9,10 8:1,
12 9:9,24
10:8,24
11:4,10,25
12:5,12,24
13:3,5,11
14:24 15:5,
19,21 16:11

**Clerk**
4:7 5:1,22
8:12 9:9
10:8 11:10
12:12 13:11

15:19

**comments**
4:25 5:21
6:8 7:2,25
8:10 9:8
10:6 11:9
12:11 13:10
16:8

**communities**
14:17

**Company**
9:25

**complete**
10:24 12:6

**concludes**
7:23

**congrats**
14:25 16:16

**congratulate**
14:4,9

**Congratulations**
16:24

**construction**
12:1,2

**contractors**
7:20

**contracts**
12:5

**corrections**
5:17

**council**
4:3,8,23
5:2,23 8:13
9:10,24
10:9,23
11:11,25
12:13,24,25
13:3,5,8,12
14:10 15:1,
23

**Councilman**
4:24 5:14,
19,20 8:4,8,
9,25 9:6,7,
22 10:5,6,21
11:7,8,23

12:9,10 13:9
14:1,2,8,21

**couple**
6:12 7:9
15:20

**created**
13:5

**Creek**
14:17

**crews**
6:14

**Cummings**
4:8,9,23
5:2,3,23,24
8:13 9:5,7,
18,19 10:9,
10 11:17,18
12:8,10,17,
18,25 13:2,
8,14,15 14:1
16:13,15

## D

**day**
6:16 15:16,
22

**denial**
8:23 9:3

**Department**
11:1

**deserved**
15:5

**Dickman**
8:24 9:4

**documents**
12:6

**DPW**
6:14,19,20

**drawn**
8:5

**due**
15:25

**Dynamix**
10:24

## E

**Edelfson**
6:10,11
14:24,25
15:3,7,12

**Edlefson**
11:4 12:5

**effect**
7:13,18

**end**
17:10

**Energy**
11:2

**enjoy**
17:7

**entertain**
4:18

**Environmental**
10:20,25

**evening**
6:11 8:11
14:2

**exceed**
10:1 11:2
12:3

**excellence**
16:23

**excuse**
4:18

**expended**
12:3

**expenditure**
10:2

**expire**
13:6

**eyes**
4:3

## F

**Facebook**
7:3

**fill**
12:24 13:4

Springfield City Council Meeting 6-01-2026

fire
  7:14
firefighters
  6:19
fiscal
  10:3
Flag
  4:4
Foundation
  6:16
Francis
  4:10,11,24
  5:4,5,18,20,
  25 6:1 8:7,
  9,15,16
  9:12,13
  10:4,6,13,
  14,21,22
  11:7,13,14
  12:13,14
  13:18,19
  14:8,9
Frisbie
  7:15
full
  17:6
funds
  12:3

**G**

gentlemen
  6:11
girls
  14:15
give
  7:18
glad
  14:23
God
  4:6
Good
  6:11
grant
  10:20 11:1
  12:3,6

Great
  11:1
Gregory
  4:12,13,22
  5:6,7,14,15,
  19 6:2,3
  8:3,4,5,8,
  17,18 9:16,
  17,22,23
  10:5,11,12
  11:6,8,19,20
  12:19,20
  13:7,9,12,13
  14:2,3,6
ground
  6:24
group
  6:14
grow
  17:6
guys
  7:6

**H**

Hackett
  12:1
hallway
  7:22
happen
  7:14
happy
  14:11,16
hard
  14:22
hats
  6:23
Hearing
  5:22 8:12
  9:9 10:8
  11:10 12:12
  13:11
heavy
  7:1
Holcomb
  13:5

hope
  15:12
hot
  7:1
hydrants
  7:14

**I**

idea
  14:14
Impact
  10:20,25
incredible
  15:9
indiscernible
  5:21 14:1
  16:16
indivisible
  4:6
input
  15:8
involved
  17:2
items
  6:9

**J**

job
  7:7
July
  14:18 16:1
June
  14:11
justice
  4:6 10:20,25

**K**

kids
  17:7
Kincaid
  4:16,19 8:14
Klein
  4:20 13:4,23

14:10 15:1,2
16:12
knowledge
  15:10
Kris
  15:4,8 16:16

**L**

ladies
  6:11
Lakes
  11:1
lastly
  7:19
learning
  16:12
left
  6:18
liberty
  4:6
Lieutenant
  16:23
Lieutenant's
  14:3
lived
  7:4
LLC
  10:25
long
  16:18
lot
  6:22 14:14
  17:3,7

**M**

made
  10:2
mail
  7:11
maintaining
  7:7
maintenance
  7:4 10:25

Springfield City Council Meeting 6-01-2025

make
  17:4
Manager
  6:9,10 8:1
  11:4 12:5
  14:24
Mars
  6:15
Marshall
  14:18
mayor
  4:16,17 5:10
  6:6,14 8:3,
  21 9:2 10:22
meeting
  4:19 5:13,
  16,20
meeting's
  17:9
Member
  4:23 9:10
  12:25 13:8
  14:10 15:1
members
  4:8 5:2,23
  6:19 8:13
  10:9 11:11
  12:13 13:12
Mich
  11:1
Michigan
  6:15 11:1
Mike
  7:6
Millwright
  12:1
minutes
  5:12,15,20
month
  14:18 15:4
months
  16:19
Moon
  7:15
motion
  4:18,21

move
  5:15 8:5 9:4
  10:3 11:5
  12:7 13:6
Moved
  4:23 5:19
  8:8 9:6 10:5
  11:7 12:9
  13:8

**N**

Nation
  4:5
nominating
  15:22
North
  7:14 11:2
note
  7:9 15:22
notice
  7:18
November
  13:6 15:24
Number
  10:23

**O**

officially
  13:24
online
  14:13
order
  4:3

**P**

p.m.
  15:25
pa
  7:9
park
  6:13,17 7:4,
  5 17:3

parks
  7:7
part
  10:25
passed
  7:5
patient
  6:22
pay
  8:6,9
pen
  15:15
people
  14:12
petitions
  15:23,24
phonetic
  6:18
place
  16:19,22
  17:4
planted
  6:16
planting
  6:13,21
  14:23 17:3
pledge
  4:4
podium
  16:9
pounds
  6:25
prep
  6:20
present
  8:25 9:22
  10:21 11:23
  12:25
Preston
  6:18,21
previously
  12:4
Pride
  14:11,16
print
  7:11

Pro-tem
  4:16,19
process
  16:12
project
  7:20
Property
  10:24
proponent
  14:14
public
  7:20 9:21
  10:2 11:22
  12:2
published
  6:12 7:24
put
  7:2

**Q**

quality
  7:10
questions
  4:25 5:21
  7:21,25 8:10
  9:8 10:6
  11:9 12:11
  13:10
quote
  11:22 12:1

**R**

recording
  17:10
regular
  5:13,16
Releaf
  6:15
remain
  7:17
renovations
  7:22
repair
  9:21 10:1

Springfield City Council Meeting 6-01-2026

replace
  7:14
report
  6:9,13 7:10,
  24
Republic
  4:5
request
  9:3
requests
  7:12
residents
  7:18
resignation
  13:5
resolution
  8:23 9:3,8,
  20,24 10:7,
  19,23 11:9,
  21 12:11,23
  13:3,10
resolved
  9:24 10:23
  11:3,25 12:4
  13:3
retire
  15:15
return
  7:16
rezoning
  8:23 9:3
Road
  8:24 9:4
roads
  7:4
roll
  4:7 5:1,22
  8:12 9:9
  10:8 11:10
  12:12 13:11
roof
  9:21 10:1
running
  16:22
runs
  16:19

## S

safety
  9:21 10:2
  11:22 12:2
SEAMAN
  16:7
seats
  15:23
seconded
  4:24 5:19
  8:8 9:6 10:5
  11:7 12:9
  13:9
section
  10:1
seriousness
  15:16
serve
  15:21 16:11
service
  7:16
Sherriff-
goslin
  9:25
shutdown
  7:13
sign
  11:4 12:5
  15:14
sir
  16:3,25
site
  6:20 7:19
Smith
  14:5 16:3,
  23,25
smoother
  16:20
solar
  7:20
South
  7:14
SPEAKER
  16:5

special
  6:19 15:3
Springfield
  4:2 7:3 9:25
  10:24 11:25
  13:4 14:16
  15:5
staff's
  15:8
stands
  4:5
started
  16:19
state
  16:9
statement
  15:14
States
  4:4
step
  16:9
Street
  11:2
streets
  7:7,16
subject
  5:16
surrounding
  14:17
swear
  15:1
sworn
  13:24 14:10

## T

talk
  6:13 7:19
term
  13:6
Terrace
  7:15
That'll
  7:14
things
  6:12 7:8,9,

23 14:14
  15:20
time
  16:18
Tina
  16:6
title
  8:25
TJ
  6:21
today
  7:19 15:22
  16:2
tomorrow
  7:13
tonight's
  4:19
touch
  6:12
tree
  6:13,24
  14:23 17:3
trees
  6:16 17:3
Trust
  16:14
Tuesday
  15:25
Twenty-seven
  16:18

## U

UNIDENTIFIED
  16:5
United
  4:4

## V

vacancy
  12:24 13:4
Veregy
  7:19
Vogel
  4:8,10,12,

Springfield City Council Meeting 6-01-2026

```
14,16 5:2,4,          work
6,8,10,23,25            6:20,22
6:2,4,6                 14:22
8:13,15,17,           works
19,21 9:10,             7:21 15:15
12,14,16,18           worry
10:9,11,13,             14:14
15,17 11:11,
13,15,17,19           ─────────────
12:13,15,17,                 Y
19,21 13:12,          ─────────────
14,16,18,20
15:6,11,18,           year
19,20 16:17,            10:3 15:4,10
21                    years
                        15:17 16:18
─────────────
       W
─────────────

wanted
  15:20,22
watch
  17:6
water
  7:8,10,12,
  16,17
website
  7:11
weighed
  6:25
Well-deserved
  17:1
Wells
  4:14,15 5:8,
  9 6:4,5
  8:19,20,25
  9:2,6,10,11
  10:15,16
  11:11,12,23,
  24 12:9,21,
  22 13:16,17
  14:21,22
West
  8:24 9:4
willingness
  15:21 16:11
wonderful
  7:7
```

# Exhibit 11

Case 1:26-cv-02096-HYJ-SJB   ECF No. 1-1,  PageID.235   Filed 07/16/26   Page 232 of 245

# CITY COUNCIL PACKET

## MONDAY, JUNE 1, 2026

Prepared By:
Kris Vogel, MMC/MiPMC, City Clerk



CITY COUNCIL
REGULAR MEETING
MONDAY, JUNE 1, 2026, 6:30 PM
AGENDA

I.    CALL TO ORDER

II.   PLEDGE OF ALLEGIANCE

III.  ROLL CALL:
Council Members Cummings, Francis, Gregory, Wells, Mayor Pro-tem Kincaid, and Mayor Burdett

IV.   APPROVAL OF MINUTES
1.    Regular Meeting Minutes – May 18, 2026
*cc.min.5.18.26*

V.    CITIZEN COMMENTS - AGENDA ITEMS ONLY

VI.   CITY MANAGER'S REPORT (INFORMATIONAL ONLY)
1.    City Manager's Report
*City Manager's Report*

VII.  BUSINESS
1.    BILLS IN LINE
*BIL May 10_2026 to May 23_2026*
2.    Deny - Rezoning of 4100 W. Dickman Road – (Res. #36-26)
*CCRES.36.26*
3.    Approve - Roof Repair for Public Safety Building – (Res. #37-26)
*Roof Repair Springfield Fire Stations*
*CCRES.37.26*
4.    Award - Bid for Environmental Justice Impact Grant – (Res. #38-26)
*Bid Comparison*
*Springfield and Dynamix Grant Agreement*
*CCRES.38.26*
5.    Approve - Quote for Public Safety Carport – (Res. #39-26)
*Hackett Carport Quote - $99,870.00*
*Schweitzer Carport Quote - $134,035.00*
*CCRES 39.26*
6.    Appoint - City Council Member to Fill Vacancy – (Res. #40-26)

*Bernice Klein*
*CCRES 40 26*

VIII.   COUNCIL COMMENTS

IX.   CITIZEN COMMENTS

X.   ADJOURNMENT

NEXT MEETING:              Monday, June 15, 2026
NEXT RESOLUTION:           41-26
NEXT PROCLAMATION:         02-26
NEXT ORDINANCE:            05-26
NEXT TRAFFIC CONTROL
ORDER:                     2026-1

# Exhibit 12



## MINUTES OF THE REGULAR MEETING OF
## THE COUNCIL OF THE CITY OF SPRINGFIELD
## JUNE 1, 2026

I.   CALL TO ORDER
Mayor Burdett called the regular meeting of the Council of the City of Springfield to order at 6:30 p.m.

II.  PLEDGE OF ALLEGIANCE
Mayor Burdett led the Pledge of Allegiance.

III. ROLL CALL
Present: Council Members Cummings, Francis, Gregory, Wells, and Mayor Burdett.

Also Present:  Aaron Edlefson – City Manager, Kris Vogel – City Clerk, and Tina Seaman – Code Enforcement/Building Official/Deputy Zoning Administrator, Scott Cipcic – Fire Chief, and Lt. Curtis Smith – Calhoun County Sherriff's Office.

Absent.  Mayor Pro-tem Kincaid

It was moved by Cummings, seconded by Francis and unanimous to excuse Mayor Pro-tem Kincaid from the regular meeting of June 1, 2026.

IV. APPROVAL OF MINUTES – May 18, 2026
It was moved by Gregory, seconded by Francis and unanimous that the minutes of the May 18, 2026, regular meeting, be approved subject to any additions or corrections

V.   CITIZEN COMMENTS – AGENDA ITEMS ONLY
None.

VI. CITY MANAGER'S REPORT
Aaron Edlefson, City Manager, included his report in the packet for the Council's review and went over the highlights of it.

VII. BUSINESS
    1.  Bills In Line
It was moved by Council Member Gregory, seconded by Council Member Francis, and unanimously approved that the checks be drawn from the various accounts and the bills be paid.

    2.  Deny Rezoning of 4100 W. Dickman Road
Mayor Burdett stated this resolution would deny the rezoning of 4100 W. Dickman Road.

It was moved by Council Member Wells seconded by Council Member Cummings that the following resolution be adopted by title only (a complete copy of the resolution is on file in the City Clerk's office):

City Council Minutes
June 1, 2026
Page 2

**Resolution #36-26**
RESOLUTION OF DENIAL OF A REQUEST FOR REZONING FOR 4100 WEST DICKMAN ROAD.

All ayes   Resolution adopted.

    3.  Approve – Roof Repair for Public Safety Building
Mayor Burdett stated this resolution would approve a roof repair for the Public Safety building.

It was moved by Council Member Gregory seconded by Council Member Francis that the following resolution be adopted:

**Resolution #37-26**
RESOLVED BY THE COUNCIL OF THE CITY OF SPRINGFIELD to approve the bid of Sherriff-Goslin Company, in an amount not to exceed $19,980, to repair a section of the roof on the Public Safety Building, said expenditure to be made from the FY 25/26 budget.

All ayes.  Resolution adopted.

    4.  Award – Bid for Environmental Justice Impact Grant
Mayor Burdett stated this resolution would award a bid for an Environmental Justice Impact Grant

It was moved by Council Member Francis seconded by Council Member Gregory that the following resolution be adopted:

**Resolution #38-26**
RESOLVED BY THE COUNCIL OF THE CITY OF SPRINGFIELD to award a bid to Dynamix Complete Property Maintenance LLC as part of an Environmental Justice Impact Grant from the Michigan Department, Great Lakes, and Energy for 525 N. 24th Street, in an amount not to exceed $484,734; and

BE IT FURTHER RESOLVED to authorize Aaron Edlefson, City Manager, to sign said agreement.

All ayes.  Resolution adopted.

    5.  Approve – Quote for Public Safety Carport
Mayor Burdett stated this resolution would approve a quote for the Public Safety carport.

It was moved by Council Member Wells seconded by Council Member Cummings that the following ordinance be adopted:

**Resolution #39-26**
RESOLVED BY THE COUNCIL OF THE CITY OF SPRINGFIELD to approve the quote from Hackett Construction & Millwright for the construction of the Public Safety carport, in an amount not to exceed $99,870; said funds will be expended from a grant previously authorized.

BE IT FURTHER RESOLVED to authorize Aaron Edlefson, City Manager, to sign all contracts, agreements and necessary documents to administer and complete the grant

City Council Minutes
June 1, 2026
Page 3

All ayes.  Resolution adopted

6.  Appoint – City Council Member to Fill Vacancy
Mayor Burdett stated this resolution would appoint a City Council Member to fill the vacancy created by Bruce Holcomb's resignation.

It was moved by Council Member Cummings seconded by Council Member Gregory that the following resolution be adopted:

**Resolution #40-26**
RESOLVED BY THE COUNCIL OF THE CITY OF SPRINGFIELD to appoint Bernice Klein to fill the vacancy on the City Council created by the resignation of Bruce Holcomb; said term to expire November 15, 2026

All ayes.  Resolution adopted.

VIII. COUNCIL COMMENTS
Council Member Gregory congratulated Lt. Smith for the Professional Excellence award he recently received.

Council Member Francis congratulated and welcomed Council Member Klein on her appointment to the City Council.  He also wished everyone a happy Pride month.

Mayor Burdett thanked everyone who was involved in the tree planting at Begg Park

IX.  CITIZEN COMMENTS
City Manager Edlefson congratulated Council Member Klein for her appointment to the City Council.  He also said a special thank you to City Clerk Vogel as she marks her 27th anniversary with the City of Springfield.

City Clerk Vogel thanked Bernice Klein for her willingness to serve as a City Council Member.  City Clerk Vogel also noted that nominating petitions for anyone interested in running for a City Council seat are now available and are due back by Tuesday, July 21, 2026, at 4:00 p.m.

X.  ADJOURNMENT
Mayor Burdett adjourned the regular meeting at 6:42 p.m

_____          _____
Kris Vogel, MMC/MiPMC                 Harry Burdett
City Clerk                            Mayor

Exhibit 13

**3:13** 🔕                            .ıl 🛜 ▬

<  **brad francis**
Active 22m ago

> All the things that I want to see there, are covered under the current zoning

 Although I don't like the nearby business owners who want to see it denied out of spite either.

> I agree. I've had other run ins with them, chip particularly and they are spiteful people

 If only we could grant a zoning change...but ALSO not get another bloody storage facility. Piss everyone off. (But I mean do the best for the city.)

> I actually asked about that! If we could pass the zoning request but put the moratorium in place before they could get their project approved. Aaron said no since they've already submitted stuff 😅

> I as  y if she would have approved the request if they

      Aa



3:14

**brad francis**
Active 24m ago

> So I think if they had just left off what they were planning on doing, it would have gotten passed

MAY 10 AT 10 13PM

Oh. They don't have to specify?

> I think it's preferred, but I don't think it's required. I could be wrong

Huh. Interesting.

> I feel like we just approved another one that didn't have a project specified, but now I can't remember which one

Maybe a moratorium would be a good thing. I thought we agreed to that about storage units and data centers like last month.

> Yeah. I think the lawyer is going over verbiage

I laughed at the idea of all these

     Aa

Exhibit 14

**STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF CALHOUN**

AVENUE A HOLDINGS, INC.,

    Plaintiff-Appellant,

v.

CITY OF SPRINGFIELD,
a Michigan municipal corporation,

    Defendant-Appellee.

Case No. 2026-    -AA

Hon.

**PROOF OF SERVICE**

---

BODMAN PLC
By: Floyd E. Gates, Jr. (P54234)
    Debani T. Gordon Lehman (P83909)
99 Monroe Ave. NW, Suite 506
Grand Rapids, MI 49503
(616) 205-1960
fgates@bodmanlaw.com
dgordon@bodmanlaw.com
*Attorneys for Plaintiff-Appellant*

---

**PROOF OF SERVICE**

The undersigned states that on June 22, 2026 I filed the foregoing paper and the attached

exhibits with the Clerk of the Court and that a copy of the Appellant's Claim of Appeal and other

required documents was served upon the following through U.S. First-Class Mail:

    City of Springfield City Clerk, Kris Vogel
    Susan L. Anderson Municipal Building
    601 Avenue A, Springfield, MI 49037

    City of Springfield City Council
    Attn: Aaron Edlefson, City Manager
    Susan L. Anderson Municipal Building
    601 Avenue A, Springfield, MI 49037

                        /s/ Debani T. Gordon Lehman
                        Debani T. Gordon Lehman (P83909)
                        *Attorneys for Plaintiff-Appellant*

1

# Exhibit 15

**FLOYD E. GATES JR.**
FGATES@BODMANLAW.COM
(616) 205-1860

June 22, 2026

BODMAN PLC
99 MONROE AVENUE NW
SUITE 300
GRAND RAPIDS, MICHIGAN 49503
616-205-4399 FAX
616-205-4330

*Via U.S. First Class Mail*
City of Springfield City Clerk, Kris Vogel
Susan L. Anderson Municipal Building
601 Avenue A, Springfield, MI 49037

City of Springfield City Council
Attn: Aaron Edlefson, City Manager
Susan L. Anderson Municipal Building
601 Avenue A, Springfield, MI 49037



Re: Claim of Appeal and Complaint to Calhoun County Circuit Court re
    Rezoning Request Parcel No. 54-005-070-60 (4100 W. Dickman Road)

Dear City Clerk Vogel and City Council:

Our firm represents Avenue A Holdings, Inc., the owner of Parcel No. 54-005-070-60, commonly known as 4100 W. Dickman Road, in connection with its application to rezone the property from B-2 General Commercial ("B-2") to IRT Industrial/Research/Technology ("IRT").

Please be advised that Avenue A Holdings, Inc. has filed a Claim of Appeal and Complaint in the Calhoun County Circuit Court challenging the City of Springfield's denial of the rezoning application.

Pursuant to MCR 7.122, MCR 7.123, and MCR 7.104(D), the City Clerk is required to file a certified record of the proceedings with the Calhoun County Circuit Court within 28 days after service of the Claim of Appeal.

Accordingly, enclosed please find a copy of the Claim of Appeal and Complaint for your records and to facilitate preparation of the certified record.

Very truly yours,

Floyd E. Gates Jr.

*FEG:dtgl*

cc: *Debani T. Gordon Lehman, dgordon@bodmanlaw.com*

DETROIT | TROY | ANN ARBOR | GRAND RAPIDS