UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AVENUE A HOLDINGS, INC.,

Plaintiff,

v.

CITY OF SPRINGFIELD,

Defendant.
______________________________/

Case No. 1:26-cv-2096

Hon. Hala Y. Jarbou

**OPINION**

Plaintiff Avenue A Holdings, Inc., brings this lawsuit against the City of Springfield, Michigan, alleging that the City violated the Fifth Amendment's Takings Clause, the Fourteenth Amendment's Due Process Clause, and state law by unjustifiably denying its application to rezone its property. Before the Court is the City's motion to dismiss for lack of ripeness and failure to state a claim (ECF No. 10). As explained below, the Court finds that Avenue A's claims are ripe, but that Avenue A fails to state a claim for violation of any constitutional provision. In the absence of a cognizable federal claim, the Court declines to exercise supplemental jurisdiction over any state claim. Accordingly, the Court will grant the motion to dismiss.

## I. BACKGROUND

For the purposes of this motion, the Court accepts the following allegations from Avenue A's amended complaint as true. Avenue A owns a vacant ten-acre lot in Springfield that it has been trying to sell for about a decade. (Am. Compl. ¶¶ 7, 11, ECF No. 7.) Avenue A finally secured a buyer in 2026. (*Id.* ¶¶ 11–14.) The buyer planned to develop the property into a storage facility for recreational vehicles and boats. (*Id.* ¶ 16.) The buyer agreed to buy the property on the condition that it be rezoned. (*Id.* ¶ 18.) The property was zoned as B-2 General Commercial,

but it needed to be zoned as Industrial/Research/Technology ("IRT") to accommodate the proposed storage facility. (*See id.* ¶¶ 8, 21.)

Springfield's City Code gives the City Council the power to rezone properties. (Springfield, Mich., City Code § 50-7.5B, ECF No. 7-3 ("The City Council may, from time to time, amend, modify, supplement or revise the zoning district boundaries . . . .").) When deciding whether to rezone a property, the "City Council shall consider the following criteria":

> 1. Consistency with the goals, policies and Future Land Use Map of the Springfield Master Plan. If conditions have changed since the Master Plan was adopted, the consistency with recent development trends in the area.
>
> 2. Compatibility of the site's physical, geological, hydrological and other environmental features with the host of uses permitted in the proposed zoning district.
>
> 3. Evidence from the applicant that it cannot receive a reasonable return on investment through developing the property with the uses permitted under the current zoning.
>
> 4. The compatibility of all the potential uses allowed in the proposed zoning district with surrounding uses and zoning in terms of land suitability, impacts on the environment, density, nature of use, traffic impacts, aesthetics, infrastructure and potential influence on property values.
>
> 5. The capacity of utilities and services sufficient to accommodate the uses permitted in the requested district without compromising the health, safety and welfare of the city.
>
> 6. The capability of the street system to safely and efficiently accommodate the expected traffic generated by uses permitted in the requested zoning district.
>
> 7. The apparent demand for the types of uses permitted in the requested zoning district relative to the amount of land in the city currently zoned and available to accommodate the demand.
>
> 8. The boundaries of the requested rezoning district are reasonable in relationship to surroundings and construction on the site will be able to meet the dimensional regulations for the zoning district.
>
> 9. The requested rezoning is to the most appropriate district.

> 10. If the request is for a specific use, is rezoning the land more appropriate than amending the list of permitted or special land uses in the current zoning district to allow the use?
>
> 11. The requested rezoning will not create an isolated and unplanned spot zone.
>
> 12. The request has not previously been submitted within the past one (1) year, unless conditions have changed or new information has been provided.
>
> 13. An offer of conditions submitted as part of a conditional rezoning request shall bear a reasonable and rational relationship to the property for which rezoning is requested.
>
> 14. Other factors as appropriate.

(*Id.* § 50-7.5.E.)

Avenue A submitted its application for rezoning in February of 2026. (Rezoning Application, ECF No. 7-1, PageID.350.) In April of 2026, the zoning administrator issued a report regarding the application. (Zoning Administrator Report, ECF No. 7-4.) The zoning administrator found that all of the applicable criteria listed above supported granting the application except for number seven: "[t]he apparent demand for the types of uses permitted in the requested zoning district relative to the amount of land in the city currently zoned and available to accommodate the demand." (Springfield, Mich., City Code § 50-7.5.E.) The report noted that the City already had self-storage facilities and that the supply could be oversaturated. (Zoning Administrator Report, PageID.413.) However, the zoning administrator ultimately recommended that the City Council grant the rezoning application. (*Id.*, PageID.417.)

The City Council held a public hearing on the rezoning application on May 18, 2026. (Am. Compl. ¶ 45.) Before the hearing, Avenue A sent a letter to the City Council addressing the zoning administrator's concern about the oversaturation issue. The letter explained that the proposed storage facility was distinct from existing self-storage facilities because it was specifically for vehicles and boats. (*Id.* ¶¶ 45–49.) In advance of the hearing, two members of the City Council

texted each other about the rezoning application. (Text Messages, ECF No. 7-7.) One councilmember explained that they did not want to grant the application because "[a]ll the things that I want to see there, are covered under the current zoning." (*Id.*, PageID.445.) The councilmembers discussed the possibility of rezoning the property without allowing the proposed storage facility, but they concluded it was not feasible to "pass the zoning request but put [a] moratorium in place before [the buyer] could get their project approved." (*Id.*) One councilmember noted that Avenue A's application would have been approved if it had not specified what the buyer intended to do with the property. (*Id.*, PageID.446.)

At the May 18 meeting, after hearing public comments, the City Council denied the rezoning application without explanation. (City Council Meeting Tr. 32, ECF No. 7-9.)[1] The City Council directed the zoning administrator and City Attorney to draft a resolution setting out the reasons for the denial. (*Id.* at 32–33.) At a meeting on June 1, 2026, the City Council adopted the resolution. (6/1/2026 Meeting Minutes, ECF No. 7-11.) The resolution stated that eight of the factors in § 50-7.5.E weighed against granting the rezoning application. In particular, the resolution explained that: the proposed rezoning was less consistent with the City's goals than the current zoning; the proposed rezoning was less compatible with the area's environmental features and had a greater potential to create a nuisance than the current zoning; Avenue A had not established that the lot was unprofitable under its current zoning; the proposed rezoning was less compatible with surrounding uses and more likely to reduce property values than the current zoning; there was other land in the area that could support the proposed project without a need for rezoning; the proposed rezoning was less appropriate for the area than the current zoning; rezoning

[1] It is unclear exactly how many councilmembers voted for and against the proposal. The minutes state that the vote was five to one against the proposal (5/18/2026 Meeting Minutes, ECF No. 7-8, PageID.452), whereas the transcript indicates that it was four to two (City Council Meeting Tr. 32).

was not more appropriate than a specific variance allowing for the proposed project; and rezoning would create an isolated spot zone. (*Id.* at 2–5.) Avenue A was not given advance notice that the City Council would adopt this resolution at the June 1 meeting or provided a further opportunity to address the City Council's concerns about the proposed development. (*See* Am. Compl. ¶ 107.)

Following the denial of the rezoning application, the prospective buyer terminated the sale of the property. (*Id.* ¶ 108.) Avenue A subsequently filed this lawsuit in Calhoun County Circuit Court; the City then removed the suit to this Court based on federal question jurisdiction.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

## III. ANALYSIS

The City seeks dismissal on the grounds that Avenue A's constitutional claims are unripe and Avenue A's complaint fails to state a claim. As set out below, the Court finds that Avenue

A's claims are ripe but that it has failed to state a federal claim. The Court will also decline to exercise supplemental jurisdiction over Avenue A's state law claims.

**A. Ripeness**

"[T]he ripeness doctrine arises 'both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *In re Cassim*, 594 F.3d 432, 437 (6th Cir. 2010) (quoting *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n.18 (1993)). The doctrine "prevent[s] the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Id.* Thus, a claim is only ripe when it involves "existing, substantial controversies, not hypothetical questions or possibilities." *Id.*

The City argues that Avenue A's constitutional claims are unripe because the City has not yet made a final decision regarding what uses of the property in question are permissible. This argument rests on prudential, rather than jurisdictional, ripeness. *See A Forever Recovery, Inc. v. Township of Pennfield*, 606 F. App'x 279, 282 (6th Cir. 2015) (citing *Horne v. Dep't of Agric.*, 569 U.S. 513, 526 (2013)). The seminal Supreme Court case regarding the final decision rule is *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). There, the Court held that a takings claim based on a zoning decision is unripe unless two conditions are met: the government has made a final decision on the issue, and the plaintiff has sought compensation through any available state procedures. *Williamson Cnty.*, 473 U.S. at 186, 194. In a subsequent decision, the Court partially overruled *Williamson County* and eliminated the second condition (the need to exhaust state procedures). *Knick v. Township of Scott*, 588 U.S. 180, 185 (2019). But the Court left in place the first condition (the finality requirement). *Id.* at 188.

The finality requirement has several justifications: it "aids in the development of a full record," it allows the court to see "precisely how a regulation will be applied to a particular parcel,"

it increases the chance that a property owner will obtain relief without any "judicial entanglement in constitutional disputes," and it "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Insomnia Inc. v. City of Memphis*, 278 F. App'x 609, 613 (6th Cir. 2008) (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005)). As the Supreme Court has explained, the finality requirement "responds to the high degree of discretion characteristically possessed by land–use boards in softening the strictures of the general regulations they administer." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001) (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 738 (1997)). Thus, before seeking a judicial remedy, "a landowner must give a land-use authority an opportunity to exercise its discretion" in the landowner's favor. *Id.*

In the context of zoning, a final decision usually means the denial of a request for a variance. A variance allows a property to be used for some previously unpermitted purpose without changing the underlying zoning classification. In *Williamson County*, the government had determined that the plaintiff's proposed development did not comply with existing zoning regulations, but the plaintiff had an additional available avenue for relief: it could have sought a variance from the board of zoning appeals. 473 U.S. at 188. The Court held that because the plaintiff had not sought a variance, the government had made no final decision, and the plaintiff's claim was unripe. *Id.* at 194. The Supreme Court has since reiterated that a takings claim "depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to . . . grant any variances or waivers allowed by law." *Palazzolo*, 533 U.S. at 620–21. Similarly, the Sixth Circuit has explained "that 'a zoning determination cannot be deemed final until the plaintiffs have applied for, and been denied, a variance.'" *Crosby v. Pickaway Cnty. Gen.*

*Health Dist.*, 303 F. App'x 251, 261 (6th Cir. 2008) (quoting *Seguin v. City of Sterling Heights*, 968 F.2d 584, 587 (6th Cir. 1992)).

Here, a variance request would be addressed to the City Council sitting as the Board of Appeals. (Springfield, Mich., City Code § 50-7.4.C.) Avenue A contends that because the Council has denied its rezoning application, seeking a variance from the same governmental body would be futile; thus, the denial is effectively a final decision. Finality is "a factual determination" that depends on the procedures available to the plaintiff and the government's past actions. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 525 (6th Cir. 2004). "The finality requirement is relatively modest," *Pakdel v. City & County of San Francisco*, 594 U.S. 474, 478 (2021), and "nothing more than *de facto* finality is necessary," *id.* at 478. If the government's prior decisions have made it clear that further efforts by the plaintiff would be futile, the decision is considered final. *DLX*, 381 F.3d at 525; *see also Bannum, Inc. v. City of Louisville*, 958 F.2d 1354, 1362–63 (6th Cir. 1992) ("By finality we mean that the actions of the city were such that further administrative action by [the plaintiff] would not be productive.").

In principle, the City Council's denial of the rezoning application does not necessarily foreclose a variance request. Many of the cited reasons for that denial relate to the relative costs and benefits of an IRT district versus a B-2 district. It is possible, then, that the Council would be willing to grant a variance as long as the property stays zoned as B-2. But Avenue A also points to text messages in which a councilmember stated that if Avenue A's application had not specified that its property would be used for a storage facility, the Council would have approved Avenue A's rezoning application. (Text Messages, PageID.446.) This message suggests that the Council did not reject the application based on the general downsides of rezoning to IRT, but that the

Council was opposed to the specific proposed development. And if the Council is opposed to the development, requesting a variance would be futile.

In response, the City asserts that the opinion of one member of the Council does not indicate how the other members would vote. But the texts in question contain the councilmember's assessment of how the entire Council viewed the application—not just the member's representation as to their own position. And it is not surprising that one councilmember would know how the others planned to vote. So while the City is correct that the motives of one member cannot be imputed to the others, if the Court draws all reasonable inferences for Avenue A, the texts establish that a majority of the Council was set against allowing a storage facility to be built. Insofar as the Council's report suggests the opposite—that the Council was more concerned about rezoning the property to IRT than about allowing a particular development—the report creates a factual dispute that is unresolvable at this stage. Thus, based on the allegations in the complaint, the finality requirement is satisfied and Avenue A's takings claim is ripe.

The finality requirement also applies to some (but not all) procedural and substantive due process claims. *See, e.g.*, *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 160 (6th Cir. 1992) (procedural due process); *Smithfield Concerned Citizens v. Town of Smithfield*, 907 F.2d 239 (1st Cir. 1990) (substantive due process). Because the Court finds that the finality requirement is met, it is unnecessary to determine whether Avenue A's due process claims are subject to that requirement. Therefore, the Court will proceed to the merits of Avenue A's claims.

**B. Merits**

**1. Takings Clause**

"The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.'" *Andrews v. City of Mentor*, 11 F.4th 462, 468 (6th Cir. 2021). The "quintessential takings claim" is "based on 'direct government appropriation

or physical invasion of private property.'" *Id.* (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005)). Avenue A's takings claim, on the other hand, is a "regulatory taking," where a government regulation reduces the value of a property. *Id.* One type of regulatory taking is "a total regulatory taking," which "occurs where a land-use regulation deprives the land of all economically beneficial use." *Id.* (cleaned up). But Avenue A does not allege that its property has no economically beneficial use. Instead, it argues that a less-than-total taking can be found based on the *Penn Central* factors, which "includ[e] (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* (citing *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017)).

In order to state a takings claim, Avenue A must allege an underlying property interest impacted by the challenged governmental action. *Id.* at 469. The Sixth Circuit has acknowledged that the definition of a property interest for purposes of a takings claim is subject to some debate. *See id.* at 470. Although there is significant case law regarding what constitutes a property interest in the due process context, it appears "that the property rights protected by takings law are broader [than] (or at least not coextensive with) the property rights protected by due process." *Id.* at 469. To determine whether a given use of land fits within the titleholder's bundle of rights—and thus can be subject to a taking—the Court must conduct "a searching inquiry into 'background principles of the State's law of property and nuisance already placed on land ownership,' and 'objective factors, such as the nature of the land use proscribed.'" *Id.* at 472 (cleaned up) (first quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029 (1992), then quoting *Palazzolo*, 533 U.S. at 630). Here, the parties do not address the issue of background state law, and it is

unnecessary to resolve it. Even if Avenue A has a property interest in the proposed development, the *Penn Central* factors do not indicate that a taking has occurred.

*Economic impact.* Avenue A argues that the denial of its amendment had significant economic impact because it is unable to sell the property as currently zoned. Although Avenue A does not specify the value of the contract with the prospective buyer or the loss in property value caused by the amendment denial, the Court accepts that Avenue A has plausibly alleged some diminution in economic value, and thus that this factor weighs slightly in its favor. However, note that "even a significant loss of property value, absent more, will not suffice to prove a taking." *Lifestyle Cmtys., Ltd. v. City of Worthington*, 165 F.4th 1013, 1023 (6th Cir. 2026) (finding no taking despite loss of 94% of property value); *see also Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 687 n.8 (6th Cir. 2004) ("[D]iminution in the value of property is insufficient to demonstrate a taking."); *Penn Cent.*, 438 U.S. at 125 ("Zoning laws . . . have been viewed as permissible governmental action even when prohibiting the most beneficial use of the property.").

*Investment-backed expectations.* Avenue A contends that its contract with the proposed developer created investment-backed expectations. However, "to establish 'a reasonable investment-backed expectation,' [Avenue A] needs to show 'more than a unilateral expectation or an abstract need.'" *Lifestyle Cmtys.*, 165 F.4th at 1024 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984)). Thus, it is not enough that Avenue A executed a sale contingent on approval of the application; it must also have had reason to believe the application would be approved.

Avenue A contends that it reasonably expected its application would be granted because the application complied with the criteria set out in the municipal code. But the code does not create reasonable expectations because it provides significant discretion to the Council. The code

requires the Council to "consider" a set of criteria and make a decision "based on" that consideration, but it does not specify how much weight to give each criterion. (Springfield, Mich., City Code §§ 50-7.5.C.3, 50-7.5.E.) Many of the criteria require the Council to consider complex factors such as "[t]he compatibility of all the potential uses allowed in the proposed zoning district with surrounding uses," which could plainly be the subject of reasonable disagreement. (*Id.* § 50-7.5.E.4.) Thus, even if Avenue A believed the proposed development was supported by the code's criteria, it should not have expected that the Council would necessarily agree.

Avenue A also notes that the zoning administrator recommended approval of its application. But that recommendation could not create a reasonable expectation because it was not binding on the Council. *Cf. id.* (rules binding planning commission could not create reasonable investment-backed expectation where the city council "is always free to depart from the [commission]'s recommendations"). Avenue A also asserts, based on the zoning administrator's recommendation, that "the City subjected this particular application to its prescribed criteria based review and determined that eleven of the twelve applicable criteria supported approval." (Pl.'s Opp'n Br. 23, ECF No. 17.) But the City did not make any such determination; rather, one City official (the zoning administrator) concluded that most of the criteria supported approval, and made a recommendation that the City Council was free to disagree with. Again, regardless of what the zoning administrator said, Avenue A was aware that the City Council could reach its own contrary conclusions, so it should not have formed any expectations of success. Ultimately, Avenue A "cannot establish a taking 'simply by showing that [it has] been denied the ability to exploit a property interest that [it] heretofore had believed was available for development.'" *Id.* (quoting *Penn Cent.*, 438 U.S. at 130).

*Character of government action.* "[A] taking is more likely to occur when the interference with property can be characterized as a physical invasion by government, or when the government action lacks a legitimate public purpose." *Id.* (cleaned up). Here, denial of the rezoning application was not akin to a physical invasion of Avenue A's property. Avenue A notes that the City Council's decision was specific to the property in question—in contrast to a generally applicable zoning ordinance—but it provides no authority for the notion that individualized property determinations are inherently a form of physical invasion. Avenue A also contends that the City Council had no legitimate public purpose for denying its request. In support of this contention, it notes that the zoning administrator found the application to be supported by various public interest factors. But as discussed above, there is no reason to treat the zoning administrator's opinion as conclusive on the matter, and the City Council was free to disagree. Avenue A fails to engage with most of the reasons cited in the Council's report justifying the denial of its application, so it cannot establish that the Council acted without a public purpose.

Avenue A also asserts that the public interest factors cited in the Council's report were not the true basis for its decision, and that the Council's real motive was to "prevent[] this purchaser's particular project from proceeding." (Pl.'s Opp'n Br. 26.) But it was within the Council's authority to deny the zoning application in order to prevent a particular project from proceeding, as long as its opposition to that project was grounded in a legitimate public purpose. Even the zoning administrator's report, which Avenue A heavily relies on, provides some reasons why allowing a storage facility would not be in the public interest: "storage units are generally not considered to be drivers of economic development, nor do they create a significant amount of employment opportunities." (Zoning Administrator Report, PageID.409.) Avenue A provides no basis to think that these reasons are illegitimate.

In sum, the first *Penn Central* factor weighs slightly in Avenue A's favor, but the second and third weigh against Avenue A. Putting everything together, Avenue A has not established that the City committed a taking.

**2. Procedural Due Process**

"The Fourteenth Amendment's Due Process Clause bars 'any State' from "depriv[ing] any person of life, liberty, or property, without due process of law.'" *Lifestyle Cmtys.,* 165 F.4th at 1026 (quoting U.S. Const. Amend. XIV, § 1). "To succeed on a procedural-due-process claim, a plaintiff must show: (1) deprivation by state action of a protected interest in life, liberty, or property, and (2) inadequate state process." *Id.* (internal quotation marks omitted). Avenue A's procedural due process claim fails on the first prong, as it cannot establish the deprivation of a life, liberty, or property interest.[2]

Avenue A asserts that the City Council's decision deprived it of a property interest. "Property owners generally do not have a property interest in the expectation of rezoning" because "a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Id.* at 1027. A property interest may exist, however, where "a statute substantively limits official discretion" regarding zoning applications. *Callihan v. Sudimack*, No. 96-3711, 1997 WL 397212, at *5 (6th Cir. July 10, 1997) (citing *Simpson ex rel. Tony L. v. Childers*, 71 F.3d 1182, 1185 (6th Cir. 1995)); *see Coleman v. McGinnis*, 843 F. Supp. 320, 324 (E.D. Mich. 1994). In order to sufficiently limit discretion, state law must "establish[] substantive predicates to govern official decision making, and . . . mandate[] the

[2] Whether a zoning decision is subject to procedural due process depends on its character as a legislative or administrative action. Here, the decision appears administrative—and thus subject to due process—because it applied only to a single property. *See Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991).

outcome to be reached upon finding a certain required criteria." *Callihan*, 1997 WL 397212, at *5; *see also Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 462 (1989).

Avenue A contends that the City Council's rezoning decision was not discretionary because the city code uses mandatory language when it states that "the City Council *shall* approve or deny [a zoning] amendment, based on its consideration of the [listed] criteria." (Springfield, Mich., City Code § 50-7.5.C.3 (emphasis added).) The problem with this argument is that the code does not dictate how the City Council should reach a decision from its consideration of those criteria. The code is silent on how much weight each criterion should be given, or how many of the criteria must be satisfied before approval is required. In other words, the code does not "mandate[] the outcome to be reached upon finding a certain required criteria." *Callihan*, 1997 WL 397212, at *5. Thus, the Council's decision regarding Avenue A's zoning application was discretionary, and Avenue A has no property interest in approval of the application. Accordingly, Avenue A cannot state a procedural due process claim.

**3. Substantive Due Process**

"Property owners 'have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions.'" *Lifestyle Cmtys.*, 165 F.4th at 1028 (quoting *White Oak Prop. Dev., LLC v. Washington Township*, 606 F.3d 842, 853 (6th Cir. 2010)). The Sixth Circuit has sometimes suggested that a plaintiff may establish a substantive due process claim based on a defendant's arbitrary actions—i.e., actions that "shock the conscience"— regardless of whether the plaintiff has an underlying life, liberty, or property interest. *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) ("Our case law on substantive due process is somewhat conflicted as to whether an underlying constitutionally-protected right must be established in order for a government action to violate one's rights by shocking the conscience."). But more recent case law appears to reject this view. *See Guertin v. State*, 912 F.3d 907, 922 n.5 (6th Cir. 2019). More importantly, the Sixth

Circuit has repeatedly indicated that regardless of how substantive due process claims may arise in other contexts, when it comes to zoning, "government action will not shock the conscience unless it touches on a protectable interest." *Range*, 763 F.3d at 589; *see also Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("[B]efore Silver can establish a violation of substantive due process he must demonstrate that he had a property interest in the use of the undeveloped parcel as a condominium complex."); *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012); *Braun v. Ann Arbor Charter Township*, 519 F.3d 564, 573 (6th Cir. 2008); *Andreano v. City of Westlake*, 136 F. App'x 865, 870–71 (6th Cir. 2005); *Siefert v. Hamilton County*, 951 F.3d 753, 765 (6th Cir. 2020). Thus, because Avenue A lacks a property interest in the proposed development, it cannot state a substantive due process claim.

Even if a property interest is not required for a shocks-the-conscience claim, Avenue A has not alleged behavior that shocks the conscience. Conscience-shocking behavior is that which involves "extreme irrationality," *Pearson*, 961 F.2d at 1222, and which "shake[s] the foundations of this country," *EJS Props.*, 698 F.3d at 862.

Contrary to what Avenue A argues, the fact that the zoning administrator recommended granting the application does not make the City Council's decision to reject it irrational. The City Council is entitled to reach its own independent conclusion on the merits of a rezoning application. The zoning administrator's recommendation may establish that reasonable minds can disagree on the merits of the zoning application, but it does not show that the Council's countervailing determination was incorrect.

Avenue A also contends that the zoning administrator's report caused Avenue A to focus its advocacy on the one criterion the administrator had found lacking (the oversaturation issue) rather than on the criteria ultimately used by the City to justify denying the application.

Essentially, Avenue A's view is that the Council was obligated to warn it beforehand about each specific concern the Counsel had with the application. This objection seems like a procedural due process issue, and thus is misplaced in an argument regarding substantive due process. More importantly, the objection is meritless. Avenue A was on notice from the beginning that the City Council would consider a specific set of criteria set out in the city code, and those were ultimately the criteria that the Council cited in its final decision. The zoning administrator's report changed nothing; if the report caused Avenue A to focus only on the oversaturation criterion, and to assume that the other criteria were a foregone conclusion, that was Avenue A's mistake.

Avenue A also takes issue with the fact that the City Council did not explain its reasoning until June 1, several weeks after the initial denial of Avenue A's application. Again, this objection seems more procedural than substantive; a failure to explicitly state one's reasons when making a decision does not entail that one has no reasons to speak of. Moreover, Avenue A cites no authority for the proposition that a decisionmaker is required to fully explain its reasoning at the moment of making a decision, rather than two weeks later. If anything, a decisionmaker who takes additional time to carefully formulate their reasoning is acting *more* rationally. The Council acted no differently from a judge who makes an oral ruling at a hearing and then sets out their reasoning in a subsequent written opinion.

Avenue A attempts to infer from the timing of events that the reasons set out in the June 1 report must have been fabricated after the fact, and that the May 18 vote must have been the product of other (presumably illicit) motivations. But this inference does not follow from the facts alleged. Avenue A asserts that the inference does not *need* to follow from the alleged facts because "[w]hether the Resolution memorialized Council's preexisting reasoning or supplied new reasons after the May 18 vote presents a factual dispute that cannot be resolved against Plaintiff on a

motion to dismiss." (Plaintiff's Opp'n Br. 19.) But this contention overreads the liberality of notice pleading. A plaintiff cannot premise a substantive due process claim on the bare allegation that a decisionmaker had secret (unspecified) motives for acting. Rather, the plaintiff must allege facts from which one can reasonably infer that the defendant acted in an unconstitutional manner. And Avenue A alleges no such facts.

Avenue A does point to a text chain between councilmembers that, it argues, reveals that the Council's explanations for denying the application were pretextual. Even assuming that a decision justified by pretext is necessarily an irrational one, Avenue A has not shown pretext. The texts indicate that the Council would have accepted the application if it did not know about the proposed development. But this fact does not undermine the Council's stated reasons for denying the application; those reasons—such as the fact that a B-2 zone accords more with the surrounding properties—are entirely consistent with the idea that the Council wanted to prevent the proposed storage facility. Avenue A apparently thinks it improper for the Council to make a zoning decision based on its desire to stop a specific development from being built, but the Court does not share this intuition, and Avenue A cites no authority supporting its view. Nor does the Court find suspicious a councilmember's statement that "[a]ll the things that [they] want[ed] to see [on the property], are covered under the current zoning." (Text Messages, PageID.445.) The Council is entitled to deny a zoning request because the present zoning category is preferable to any other; indeed, that is the exact basis on which it *should* make such a decision. Thus, these texts do not establish that the Council acted irrationally or that its proffered reasons for denying the application were pretextual.

In sum, Avenue A has not stated a substantive due process claim.

#### 4. State Law Claims

Avenue A also brings claims under state law. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal law claim is dismissed before trial, the court will dismiss the remaining state law claims. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ."); *see* 28 U.S.C. § 1367(c)(3) (court "may decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction"). "In determining whether to exercise supplemental jurisdiction, the district court should balance several factors, including judicial economy, convenience, fairness, and comity." *Williams v. Addison Cmty. Schs.*, 168 F.4th 791, 794–95 (6th Cir. 2026). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Jonny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction, so the Court will dismiss Avenue A's state law claims.

## IV. CONCLUSION

As explained above, Avenue A's constitutional claims are ripe for decision, but it has failed to state a claim under the Takings Clause or the Due Process Clause. Accordingly, the Court will dismiss Avenue A's federal claims and decline to exercise supplemental jurisdiction over its state law claims.

An order and judgment will enter in accordance with this Opinion.

Dated: October 13, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE